# Exhibit 1

### Declaration of Vanessa R. Brinkmann

Defendants' Motion for Summary Judgment

*Reporters Committee for Freedom of the Press v. OAG*,
No. 21-cv-1294 (D.D.C.)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, | ) ) ) ) ) ) | |
| *Plaintiff,* | ) | |
| v. | ) | Civil Action No. 21-1294 |
| OFFICE OF THE ATTORNEY GENERAL, et al., | ) ) ) | |
| *Defendants.* | ) ) ) | |

**DECLARATION OF VANESSA R. BRINKMANN**

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1)      I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (DOJ or the Department).  In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP – a role I have served in some form since 2008.  Prior to becoming Senior Counsel, I served as Counsel to the IR Staff, as an Attorney-Advisor and, from 2003-2008, as a Government Information Specialist (formerly FOIA Specialist) on the IR Staff.  The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from six senior leadership offices of the DOJ, specifically the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (OPA).

2)      The IR Staff devises appropriate records searches for each FOIA request it processes on behalf of itself and the Department's senior leadership offices, and determines

1

whether records are appropriate for release in accordance with the FOIA.  In processing such requests, the IR Staff consults with personnel in the Department's senior leadership offices and, when appropriate, with other components within the DOJ, as well as with others in the Executive Branch.

3)    I make the statements herein on the basis of personal knowledge, including my extensive experience with the FOIA, with OIP, and in handling FOIA requests for senior leadership office records, as well as on information acquired by me in the course of performing my official duties, including my review of the records at issue and information provided to me by others within the Department with knowledge of the types of records at issue in this case.

**Plaintiff's FOIA Requests**

4)    By letters dated January 29, 2021, Reporters Committee for Freedom of the Press (RCFP or Plaintiff) submitted two FOIA requests to OIP seeking various records relating to DOJ's "Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media."  28 C.F.R. § 50.10.  The first request [hereinafter "the OAG Request"] sought four categories of records from OAG, while the second request [hereinafter "the ODAG Request"] sought three categories of the same or similar records from ODAG.  Copies of Plaintiff's FOIA requests are attached hereto as Exhibit A.

5)    By letter dated February 19, 2021, OIP acknowledged receipt of Plaintiff's January 29, 2021 FOIA requests.  Plaintiff's OAG Request was initially assigned OIP administrative tracking number FOIA-2021-00670, and the ODAG Request was initially assigned FOIA-2021-00671.  However, OIP's February 19, 2021 acknowledgment letter advised that, as a matter of administrative efficiency, it was aggregating Plaintiff's two FOIA requests

2

under tracking number FOIA-2021-00670.  A copy of OIP's February 19, 2021 acknowledgment letter is attached hereto as Exhibit B.

6)      On May 11, 2021, Plaintiff filed suit in connection with the above-referenced FOIA requests.  See Complaint, ECF No. 1.

### OIP's Responses to Plaintiff's FOIA Request

7)      By letter dated July 16, 2021, OIP sent an interim response to Plaintiff's FOIA requests intended to satisfy subparts 1 and 3 of the OAG and ODAG Requests.  Pursuant to this response, OIP advised that the policy sought in subpart 1 of the OAG and ODAG requests was codified in DOJ's regulations at 28 C.F.R. § 50.10 and directed Plaintiff to the Electronic Code of Federal Regulations posted online.  In this response, OIP also released in full nine pages.  A copy of OIP's interim response letter, dated July 16, 2021, and corresponding production, is attached hereto as Exhibit C.

8)      By letter dated October 5, 2021, OIP sent a second interim response to Plaintiff's FOIA requests.  Pursuant to this response, OIP advised, inter alia, that no records responsive to subpart 4 of the OAG Request were located.  A copy of OIP's second interim response letter, dated October 5, 2021, is attached hereto as Exhibit D.

9)      Finally, by letter dated June 2, 2022, OIP sent its final response to the remaining subparts of Plaintiff's FOIA requests.  Pursuant to this response, OIP advised that 131 pages containing records responsive to Plaintiff's requests were appropriate for release with certain information withheld pursuant to Exemptions 5, 6, 7(C), and 7(E) of the FOIA.  OIP additionally advised that it was withholding in full 448 pages containing records responsive to Plaintiff's requests pursuant to Exemption 5 of the FOIA.  A copy of OIP's final response letter, dated June 2, 2022, and corresponding production, is attached hereto as Exhibit E.

**Adequacy of OIP's Records Search**

Description of OIP's Standard Search Methods

10)    As noted in paragraph 1 above, OIP processes FOIA requests on behalf of itself and six senior leadership offices within the Department.  OIP makes determinations upon receipt of a FOIA request, both as to the appropriate senior leadership office(s) in which to conduct initial records searches, as well as the records repositories and search methods to use in conducting records searches on behalf of the designated senior leadership offices.  Assessments of the relevant custodians to search as well as where responsive records are likely maintained are based on a review of the content of the request itself and the nature of the records sought therein, as well as OIP staff's familiarity with the types and location of records that each senior leadership office maintains discussions with knowledgeable personnel in the senior leadership offices, and any research that OIP staff may conduct on the topic of the request.  Potentially responsive records may be located in various records systems, including email, computer files or other electronic documents, and/or paper files.

11)    When processing a FOIA request implicating records maintained by one or more of the senior leadership offices, OIP typically initiates records searches by sending a search notification email to the specific office(s), which notifies the office(s) of the receipt of the request and that OIP will conduct an electronic search of certain office staff members.  Once the search notification has been issued to the appropriate office, individual staff members, as the custodians of their own records, advise OIP if they have potentially responsive records which would not otherwise be captured by OIP's electronic search.  OIP then commences a search that encompasses the email, electronic documents in a custodian's personal network "One Drive,",

4

and/or paper files maintained by appropriate staff in that office, using terms and date ranges relevant to the subject of the FOIA request.

12)     OIP's initial determination regarding relevant leadership offices, search methods, and/or records custodians is not always final.  In order to ensure that reasonably thorough records searches are conducted, during the course of processing a given FOIA request, OIP continually assesses whether additional (both current and former) staff members' records should be searched, or whether supplemental or alternative search methods (such as targeted inquiries to knowledgeable leadership office staff regarding the existence of records and not identified via "keyword" searches) should be used, and will initiate such additional searches as appropriate. This assessment is based on OIP's review of records located from the initial records searches, discussions with Department personnel, or other pertinent factors.  In sum, OIP records searches are conducted in a dynamic and comprehensive manner, and the various search steps undertaken by OIP staff in response to a given request work in tandem to achieve a complete records search.

<u>OIP's Records Search Conducted in Response to Plaintiff's Requests</u>

13)     OIP initiated its search on February 19, 2021 by sending search notifications to its points of contact in the relevant senior leadership offices, OAG and ODAG.  OIP provided these potential records custodians with Plaintiff's FOIA requests and instructions to identify any additional potentially responsive records that would otherwise not be captured by OIP's remote electronic searches, and to identify officials who would maintain records potentially responsive to the requests.

14)     Regarding subpart 1 of the OAG Request and the ODAG Request, each of which sought "[a]ll versions of DOJ's Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the

news media, that have been in effect since January 21, 2017," in its July 16, 2021 interim response, OIP noted that the policy was codified in DOJ's regulations at 28 C.F.R. § 50.10 and directed Plaintiff to the Electronic Code of Federal Regulations (eCFR) online.  OIP further noted that, as of the date of the interim response, the policy was last updated by DOJ on January 21, 2015.

15)    For the remaining subparts of Plaintiff's requests, OIP conducted searches using the date ranges and search terms keyed to locate records potentially responsive to each respective request subpart.  Regarding subpart 3 of the OAG Request, OIP conducted a search of former Acting Attorney General Matthew Whitaker's email account between November 7, 2018 and March 5, 2019 for the phrase "policy regarding obtaining information from, or records of, members of the news media."  The custodian to be searched, date range, and search phrase were specified verbatim by Plaintiff.

16)    Regarding subpart 4 of the OAG Request, OIP conducted a search of former Attorney General William Barr's email account since February 14, 2019 for the phrase "policy regarding obtaining information from, or records of, members of the news media."  The custodian to be searched, date range, and search phrase were specified verbatim by Plaintiff.

17)    Regarding subpart 3 of the ODAG Request, OIP conducted a search of former Deputy Attorney General Rod Rosenstein's email account between April 25, 2017 and May 12, 2019 for the phrase "policy regarding obtaining information from, or records of, members of the news media."  The custodian to be searched, date range, and search phrase were specified verbatim by Plaintiff.

18)    Regarding subpart 2 of the OAG Request and the ODAG Request, each of which sought "[a]ll emails sent or received since January 21, 2017 that include proposed or enacted

modifications to the Justice Department's Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media," OIP conducted a search of thirty-nine current and former administration OAG and ODAG custodians to locate potentially responsive emails. Prior to completing its search, OIP provided these lists of custodians to Plaintiff to indicate that these custodians were the officials that OIP expected to be most likely to have relevant information, but that to the extent that additional custodians were identified in the course of the search, OIP would add those custodians to the lists. Plaintiff indicated that it was amenable to these lists identified by OIP, reserving the possibility to expand these lists if search results indicated that additional custodians were involved but not initially searched. The date range employed by OIP was from January 21, 2017, as requested by Plaintiff, through February 19, 2021, reflecting the date that OIP initiated its search. Finally, OIP provided a list of proposed search terms to Plaintiff prior to search completion. In response, Plaintiff requested that OIP include an additional search term, which OIP subsequently agreed to. As such, the mutually agreed-upon search terms employed by OIP were as follows: (modif* OR edit* OR propos* OR amend* OR chang*) w/50 ("50.10" OR "media subpoena" OR "media subpoenas" OR "news media" OR "media guidelines" OR "media policy" OR "compulsory process"). Remote electronic searches of email accounts were conducted of the mutually agreed-upon DOJ personnel using these terms. The Office of the Chief Information Officer (OCIO) in DOJ's Justice Management Division (JMD), the office responsible for conducting searches of unclassified email systems for OIP, provided OIP with the results of the search described herein.

7

19)     To date, OIP understands that Plaintiff has not indicated that the search should have included additional custodians or search terms.  Moreover, nothing in OIP's search indicated leads to other custodians or search terms that were not included in the search.

20)     Based on my experience with the Department, my familiarity with the records maintained by DOJ leadership offices, OIP's discussions with knowledgeable staff, as well as my understanding of the scope of Plaintiff's requests and their agreement to search parameters as described above, as well as information gathered from OIP's review of the documents themselves, I aver that OIP's searches were reasonably calculated to uncover all potentially responsive records and that all files identified as likely to contain relevant documents were searched.

**<u>Explanation of Information Withheld by OIP Pursuant to Exemption 5</u>**

21)     This declaration is intended to be read in tandem with the corresponding <u>Vaughn</u> Index prepared by OIP and attached hereto as Exhibit F.  The <u>Vaughn</u> Index contains descriptions of the records withheld in part and records withheld in full pursuant to Exemption 5. This declaration provides context for the withheld records and explains why they are privileged as well as why release of the specific information withheld would result in reasonably foreseeable harm consistent with the applicable privilege.  Determinations regarding the applicability of an exemption and foreseeable harm are content- and context-specific.  However, for clarity of presentation and discussion, and in recognition of the overlapping and inter-related nature of the information in each record, each withholding or set of withholdings has been organized into a corresponding category which is noted in the index.  These categories are:

<u>Records Released in Part</u>

1. *Deliberative Memorandum Containing Proposed Options for Changing News Media Policy*

8

2. *Deliberative Briefing Slides Containing Proposed Options for Changing News Media Policy*
3. *Deliberative Discussions Regarding Drafting Memorandum*
4. *Deliberative Discussions Regarding Drafting Briefing Slides*
5. *Proposed Options Relating to Changing News Media Policy*
6. *References Which Would Disclose Withheld Deliberative Options*
7. *Deliberative Engagement Strategy*
8. *Potential Policy Modifications Being Pursued by Criminal Division*
9. *Deliberative Discussion Regarding Potential Response to Press Inquiry*
10. *Deliberative Legal Advice Regarding Potential Modification to News Media Policy*

<u>Records Withheld in Full</u>

11. *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy*
12. *Draft Deliberative Briefing Slides Containing Options for Changing News Media Policy*
13. *Proposed Options Relating to Changing News Media Policy*
14. *Draft Deliberative Engagement Strategy*

Each category of records is discussed below in turn, along with a description of the reasonably foreseeable harm that would result from disclosure of the information withheld in each category and OIP's release of reasonably segregable non-exempt information.  Because all information discussed herein is withheld pursuant to the deliberative process privilege and/or the attorney-client privilege of Exemption 5, the discussion of the foreseeable harm to interests protected by Exemption 5 necessarily involves some similarity and repetition among the categories of records.

<u>Exemption 5</u>

22)      Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  As discussed in detail below, all information withheld by OIP pursuant to Exemption 5 is withheld pursuant to the deliberative process privilege and/or the attorney-client privilege.  Because the content, context, and

9

reasonably foreseeable harm to interests protected by Exemption 5 of certain categories are extremely similar, several categories are grouped together in discussions below.

Exemption 5: Inter/Intra-Agency Threshold

23)     To withhold records from release pursuant to Exemption 5 of the FOIA, they must be inter- or intra-agency records.  Here, all information withheld from Plaintiff pursuant to this exemption consists of communications, working drafts, and other records generated by, exchanged within, and wholly internal to, DOJ.  As such, all information withheld pursuant to Exemption 5 is "intra-agency" and satisfies the threshold of this exemption.

Exemption 5: Deliberative Process Privilege

24)     The deliberative process privilege is intended to protect the decisionmaking process of government agencies from public scrutiny in order to enhance the quality of agency decisions.  To be protected by the deliberative process privilege, the information at issue must be both "predecisional" and "deliberative."

25)     Additionally, the FOIA provides that agencies shall withhold information "only if . . . the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in [the statute] . . ."  5 U.S.C. § 552(a)(8)(A)(i).  In assessing whether information should be withheld pursuant to the deliberative process privilege encompassed by Exemption 5 of the FOIA, OIP is mindful that three policy rationales have been recognized by this circuit as underpinning the deliberative process privilege:

> "First, [the privilege] protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions.  Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon.  And third, it protects the integrity of the decision-making process itself by confirming that

10

'officials should be judged by what they decided(,) not for matters they considered before making up their minds.'"[1]

26)     The release of the information withheld pursuant to Exemption 5 by OIP would harm one or more of these interests – by chilling the full and frank internal discussion of agency matters, by causing public confusion from releasing information that did not reflect final agency determinations, and by impairing the integrity of the decisionmaking process by revealing what Executive Branch officials considered before making up their minds.  Furthermore, if these predecisional, deliberative communications were to be publicly released, Department employees engaging in similar decisionmaking processes in the future would be much more cautious in their discussions with each other and in providing all pertinent information and viewpoints to agency decisionmakers in a timely manner.  This would seriously impair the Department's ability to foster forthright, internal discussions necessary for efficient and proper Departmental decisionmaking.  Finally, premature release of this predecisional, deliberative information would also cause public confusion as it would inaccurately suggest that these un-finalized discussions, drafts, or policy changes which are still undergoing internal review, debate, and editing actually reflect the Department's final positions or that the Department relied on this information in formulating its final decision.

*Background of the Department's Review of the News Media Policy*

27)     On August 4, 2017, then-Attorney General Jeff Sessions acknowledged in publicly delivered remarks that as a result of a "dramatic growth in the number of unauthorized disclosures of classified national security information," the Department was conducting a review of "policies affecting media subpoenas."  See Attorney General Jeff Sessions Delivers Remarks

---

[1] *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (quoting *Jordan v. U.S. Dep't. of Just.*, 591 F.2d 753, 772-73 (D.C. Cir. 1978)).

11

at Briefing on Leaks of Classified Materials Threatening National Security | OPA | Department

of Justice.  Thereafter, a working group was formed, consisting of officials from OLP, ODAG,

the National Security Division (NSD), the Criminal Division (CRM), the United States

Attorney's Office for the District of Columbia (USAO-DC), the United States Attorney's Office

for the Eastern District of Virginia (USAO-EDVA), OPA, and the Federal Bureau of

Investigation's Office of General Counsel (FBI OGC).  Ex. F at Bates 0405.  At the request and

direction of the Deputy Attorney General (DAG), officials in OLP, including the Deputy

Assistant Attorney General (DAAG), Principal Deputy Assistant Attorney General (PDAAG),

Assistant Attorney General (AAG), and Counsel, conducted an extensive review of the

Department's "[p]olicy regarding obtaining information from, or records of, members of the

news media; and regarding questioning, arresting, or charging members of the news media," 28

C.F.R. § 50.10  [hereinafter "News Media Policy"][2], as well as "internal procedures for

implementing the policy."  Id. at Bates 0366 and 0405.  After discussions with the working

group, OLP "identified five options for improving the Department's ability to effectively

investigate and prosecute unauthorized disclosure cases" for presentation to the DAG.  Id. at

Bates 0366.  After briefing the DAG as to the proposed options, OLP also prepared a proposed

engagement plan to develop an internal process and engagement strategy which sought to

finalize any proposed modifications related to the News Media Policy.  Id. at Bates 0522-0525.

Although the DAG was briefed as to the various proposed options for modifications related to

---

[2] This declaration refers to this policy as the News Media Policy.  Some of the documents
discussed infra or included in the accompanying Vaughn Index refer to the policy by other
names, including Media Subpoena Policy.

the News Media Policy, ultimately no changes relating to the News Media Policy were made during the deliberative process reflected in the documents at issue.[3]

Category 1: *Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* and Category 2: *Deliberative Briefing Slides Containing Proposed Options for Changing News Media Policy*

28)    The withholdings described as *Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* appear in OIP's June 2, 2022 final response between Bates numbers 0366 and 0379, and consist of the specific options identified and substantive discussions thereof in an internal DOJ memorandum entitled "Options for Changes to the DOJ Policy on Obtaining Information from Members of the Media" [hereinafter the "Options Memorandum"].  The Options Memorandum was prepared as a tool to brief the Deputy Attorney General (DAG) on the then-present status of the Department's News Media Policy and to provide, at the direct request of the DAG, "five options for improving the Department's ability to effectively investigate and prosecute unauthorized disclosure cases[.]"  Ex. F at Bates 0302 and 0366.  Similarly, the withholdings described as *Deliberative Briefing Slides Containing Proposed Options for Changing News Media Policy* appear in OIP's June 2, 2022 final response between Bates numbers 0403 and 0422, and consist of relevant considerations, specific options identified, and substantive discussions thereof distilled into a Power Point presentation used as a tool in a meeting held on September 29, 2017 to brief the DAG on the same.  Id. at 0403-0422. The withheld portions of the Options Memorandum and briefing slides consist of strategic and deliberative proposals relating to the Department's review of the News Media Policy, including

---

[3] The News Media Policy was most recently revised on October 26, 2022.  Prior to that, the last revision occurred on January 21, 2015.  OIP is not aware of any indication that this new policy explicitly incorporated or adopted the specific information withheld pursuant to Exemption 5 in this case, discussed in detail infra.

candid assessments concerning the need for review of the News Media Policy, and the five options proposed relating to the policy, including the perceived advantages and disadvantages of each. The Options Memorandum and corresponding briefing slides were prepared by officials in OLP, ODAG, and others in the internal DOJ working group, identified supra, for the benefit of the DAG for use in the decisionmaking process to identify the best approach for potential modifications relating to the News Media Policy.

29) The information withheld consists of predecisional, deliberative options within the decisional context described above. More specifically, in these documents, Department staff are providing the DAG the necessary background information regarding the history of the News Media Policy, sharing their candid assessments of existing policy, and suggestions and evaluations for how best to change processes related to the News Media Policy to accomplish the DAG's goal of improving the Department's important ability to effectively investigate and prosecute unauthorized disclosure cases. The withheld information within the Options Memorandum and briefing slides is thus predecisional because it consists of internal assessments and options provided by Department staff that took place prior to a potential final agency decision as to which, if any, option(s) to pursue, but which ultimately did not come to fruition during the deliberative process reflected in the documents at issue. The withheld information is deliberative because it contains the DOJ working group's assessment of how to improve the Department's ability to effectively investigate and prosecute unauthorized disclosure cases through its evaluation of the News Media Policy, the candid and forthright consideration of what aspects related to the policy should be modified, proposed suggestions and recommendations as to how to modify such aspects related to the policy, and how best to implement those modifications.

14

30)    The News Media Policy provides for the use of certain law enforcement tools, including subpoenas, to seek information from, or records of, non-consenting members of the news media.  As reflected in the Code of Federal Regulations, the Department considered this to be an "extraordinary measure[], not standard investigatory practice[]."  28 C.F.R. § 50.10(a)(3) (2015).  In practice, the Department vowed "to strike the proper balance among several vital interests: Protecting national security, ensuring public safety, promoting effective law enforcement and the fair administration of justice, and safeguarding the essential role of the free press in fostering government accountability and an open society."  Id. § 50.10(a)(2).  Historically, the application of the News Media Policy had potential to spark significant controversy with members of news media and the public.  Ex. F at Bates 0370; see also Justice Dept. says it'll no longer seize reporters' records | AP News.  However, in conducting the Department's review of the News Media Policy, the DAG sought to consider "options for potential changes to the policy and its implementation procedures to facilitate investigations and prosecutions of unauthorized disclosures of national defense information or of classified information," Ex. F at Bates 0366, an undertaking reflecting the concerns of the Department related to such offenses.  With this background and context, it is critical that the Department be able to engage in unfettered internal discussions on how to review, analyze, and potentially modify important policies related to significant, yet often controversial, techniques for use in these highly sensitive Departmental investigations of unauthorized disclosures of national defense information or classified information.  Otherwise, the Department's ability to effectively manage and consider these significant Departmental policies efficiently and effectively through accurate, informed, and thoroughly vetted options for modifications, would be compromised to its detriment.  As a result, any further release of the specific information withheld in these

15

records would cause reasonably foreseeable harm to the Department's ability to have a robust internal deliberative process in furtherance of its analysis to improve its ability to effectively investigate and prosecute unauthorized disclosure cases because the Department officials involved in this review would temper the internal presentations required to respond effectively and accurately to inquiries from their leadership, in this instance, the DAG.  It is imperative that these Department officials in OLP, ODAG, and the rest of the working group enjoy the ability to have productive and candid discussion, review, and analysis regarding the sensitive investigative function that is not otherwise impaired by release of this predecisional, deliberative information. When Department employees deliberate about whether and how best to modify and improve a significant and sometimes controversial Departmental policy, they must feel uninhibited to do so, and must be able to provide correct information and options for consideration to senior leadership, which is only possible with the knowledge that the deliberative work product of their review and corresponding open and frank assessments to improve such a significant and controversial Departmental policy will not be disclosed.  In other words, it is important that Department officials have the freedom to candidly analyze and contemplate the efficacy of Department policy and assess whether any modification of the status quo implemented in 2015 would create a more effective policy option to facilitate investigations and prosecutions of unauthorized disclosures of national defense information or of classified information.  Disclosure of these records would undermine the ability of Department staff to freely engage in the candid briefing process to ensure that the decisionmaker, the DAG, is adequately and fully informed and equipped with viable options for modification of these significant policies, which is critical to the continued analysis and potential modification of policies related to important and sensitive investigative techniques.  This is particularly important when such deliberative processes

16

intended to create more effective Departmental policies and practices are likely to reoccur to address changing environments and Department priorities, as with the News Media Policy. Were the records at issue here to be publicly disclosed, Department officials involved in similar deliberative processes would feel much more circumspect to engage freely and candidly in the creation of the revised policy. Additionally, disclosure of this information would harm the ability of Department leadership to be adequately and fully informed to make important decisions, assured that they have been provided the most candid, forthright, and fully vetted options and recommendations from their subordinates. Without an environment in which the decisionmaker is free to make the best and most informed decisions on significant issues of national security, the decisionmaking process, and therefore the quality of agency decisions and policies, would suffer. Additionally, there is reasonably foreseeable harm in release because disclosure of the withheld information would cause public confusion by releasing information considered internally, but not necessarily ultimately adopted or provided publicly.

31) In this instance, given that the information withheld in part by OIP pursuant to Exemption 5 consists of information that is part of the Department's deliberative process of evaluating whether and how to change processes related to the News Media Policy, recognizing the importance of fully vetted analysis of Departmental priorities and policies, in consideration of the context in which this review and analysis was taking place, and based on OIP's line-by-line review of the information withheld, I have determined that reasonably foreseeable harm would result from any further release of the information withheld by OIP.

32) Although the entirety of the Options Memorandum was intended as a deliberative briefing product, marked by its authors with the header "Predecisional," "Deliberative," and "Attorney Work Product," OIP endeavored to withhold only those portions that reflected the

17

most core elements of DOJ's deliberative decisionmaking process.[4]  The same is true of the

briefing slides, in that OIP endeavored to withhold only those portions of the slides that reflect

the most core elements of DOJ's deliberative decisionmaking process.  As such, OIP conducted a

thorough line-by-line review of each record in this category, and released all reasonably

segregable, non-exempt information contained within them.  OIP withheld from disclosure only

that information which would reveal and would harm with reasonable foreseeability the

Department's predecisional, deliberative decisionmaking process – specifically those portions of

the Options Memorandum and briefing slides that would reveal Department staff's internal

review, options for modifications for the News Media Policy, and the strengths and weaknesses

of these options – while still releasing the contextual introduction information and historical

information also provided to the former DAG as background to assist in his decisionmaking.

Through this review process, OIP took steps to ensure as much information as possible has been

segregated for release to Plaintiff.

> Category 3:  *Deliberative Discussions Regarding Drafting Memorandum* (in part), Category
> 4:  *Deliberative Discussions Regarding Drafting Briefing Slides* (in part), Category 11:  *Draft
> Deliberative Memorandum Containing Proposed Options for Changing News Media Policy*
> (in full), and Category 12:  *Draft Deliberative Briefing Slides Containing Proposed Options
> for Changing News Media Policy* (in full)

33)      The withholdings described as *Deliberative Discussions Regarding Drafting*

*Memorandum* consist of deliberative email communications that OIP withheld in part in which

DOJ officials suggest, recommend, or propose edits or modifications to the internal DOJ Options

Memorandum discussed in detail <u>supra</u>, or otherwise cite to edits being proposed in an attached

draft version of the memorandum.  The withholdings described as *Deliberative Discussions*

---

[4] Notwithstanding the header marked as "Attorney Work Product," OIP has not asserted any
withholdings pursuant to the attorney work-product privilege.

*Regarding Drafting Briefing Slides* similarly consist of deliberative email communications that OIP withheld in part in which DOJ officials suggest, recommend, or propose edits or modifications to the Power Point presentation used as a tool in a meeting to brief the DAG, also discussed <u>supra</u>. The latter category additionally consists of suggestions exchanged between officials within ODAG and OLP, not only on the content of the Power Point presentation, but also regarding the content to include in the oral briefing presentation to supplement the Power Point information. The category of withholdings described as *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* consists of twenty-five unique draft versions of the Options Memorandum that OIP withheld in full, which were circulated and shared among Department officials prior to its finalization. A substantial number of the withheld drafts contain a "DRAFT" watermark and a header containing the phrases "Predecisional," "Deliberative," and "Attorney Work Product," and contain edits, redlined track changes, comments, highlighting, modifications for consideration, and in one draft version, even handwritten notes and comments made during review, all made with the goal to produce the briefing memorandum for the DAG's consideration embodied in the final version referenced <u>supra</u>, and released in part in OIP's June 2, 2022 response. Finally, the category of withholdings described as *Draft Deliberative Briefing Slides Containing Proposed Options for Changing News Media Policy* similarly consists of a draft version of the Power Point presentation used as a tool in a meeting to brief the DAG, also discussed <u>supra</u>, that OIP withheld in full and which was edited prior to its finalization for use in the DAG's briefing. The drafts and emails shared in preparation of the Options Memorandum were circulated between and among OLP's DAAG, OLP's PDAAG, the Chief of the Criminal Division of USAO-DC, a DAAG in NSD, a Senior Counselor to the DAG, the Principal Associate Deputy Attorney General (PADAG), an

19

Associate DAG, and the Associate DAG / Deputy Chief of Staff to the DAG.  The draft and emails shared in preparation of the Power Point presentation were circulated between the PDAAG of OLP and an Associate DAG.

34)      The information withheld both in full and in part is predecisional because it occurs antecedent to the final product about which it relates.  Relating to the *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* and *Deliberative Discussions Regarding Drafting Memorandum*, each deliberative discussion occurred, and each draft was prepared prior to, the finalization of the Options Memorandum.  The same is true of the *Draft Deliberative Briefing Slides Containing Proposed Options for Changing News Media Policy* and the *Deliberative Discussions Regarding Drafting Briefing Slides*, in that the discussions, and the draft, were prepared prior to the finalization of the Power Point presentation used to brief the DAG.  Similarly, the discussion concerning the content to include in the oral briefing presentation to supplement the Power Point information as referenced in the category described as *Deliberative Discussions Regarding Drafting Briefing Slides* similarly occurred prior to the meeting during which the briefing slides were presented orally to the DAG.  In other words, in addition to the reasons set forth supra as it relates to the deliberative nature of these documents even in final form, the documents addressed in this category are additionally deliberative because the drafting process, both the creation of drafts and deliberative drafting discussions that accompany them, reflects an essential aspect of the decisionmaking process where the creation of draft documents are reviewed, edited, and modified before becoming final. Over the course creating a final document, draft documents were transmitted back and forth, continually evolving as relevant staff make track changes, suggest edits (both within the draft and within the body of emails discussing the drafts), and review strategic considerations as they

20

work toward a well-reasoned final product.  The drafts and drafting discussions in this category discuss and debate proposed and potential modifications relating to agency policy that are at the core of the deliberative process privilege.

35)    In much the same manner and within the same context as addressed supra relating to the final versions of the Options Memorandum and briefing slides released in part, it is critical that the Department be able to engage in unfettered internal discussions on how to review, analyze, and potentially make modifications related to significant policies concerning important, yet often controversial, techniques for use in highly sensitive Departmental investigations of unauthorized disclosures of national defense information or classified information, and to do so in a manner that will allow for the most accurate and well-reasoned presentation to the decisionmaker.  Otherwise, the Department's ability to effectively manage and consider these significant Departmental policies efficiently and effectively through accurate, informed, and thoroughly vetted options for modifications, would be compromised to its detriment.  As a result, the release of the specific information withheld in these records, both in full and in part, would cause reasonably foreseeable harm to the Department's ability to have a robust internal deliberative process in furtherance of its analysis to improve its ability to effectively investigate and prosecute unauthorized disclosure cases because Department officials involved in the review of the News Media Policy would temper their internal deliberations in the course of drafting and preparing deliberative briefing materials required to respond effectively and accurately to inquiries from their leadership, including the DAG.  In other words, the efficiency and strength of agency decisionmaking would certainly be diminished as Department employees would be reticent to provide their edits and opinions on draft language and exchange iterative drafts of briefing materials relating to modifications of significant and high-profile Departmental policies

21

for concern that their preliminary, evolving draft language would be disclosed publicly and would impact their ongoing and future decisionmaking in this critical role and function related to investigative and national security matters.  Harm from further disclosure is particularly likely in light of the significance of the decision at issue, exemplified by the high-level officials involved with expertise in law enforcement and national security.  It is critical that such officials be able to provide the DAG with important insight on the News Media Policy and the objectives intended to be reached as a result of their review.  For these officials, the very process of formulating the options for changes relating to the News Media Policy requires individual officials to provide their nascent opinions, ideas and expertise, as well as weigh in on each other's views and opinions in a collaborative manner, to ultimately decide on and articulate OLP's final presentation for the decisionmaker.  As noted supra, disclosure of this information would further harm the ability of Department decisionmakers to be adequately and fully informed to make important decisions, and ensure that they have been provided the most candid, forthright, and fully vetted options and recommendations from their staff.  Without an environment in which Department decisionmakers, including the DAG, are free to make the best and most informed decisions, the decisionmaking process, and therefore the quality of agency decisions and policies, would suffer.  As a result, given that the information withheld, both in full and in part, by OIP consists of information that is part of the Department's deliberative process of evaluating whether and how to change processes related to the News Media Policy, recognizing the importance the deliberative drafting process toward the ultimate creation of fully vetted analysis of Departmental priorities and policies, in consideration of the context in which this review and analysis was taking place, and based on OIP's line-by-line review of the information withheld in

part, I have determined that reasonably foreseeable harm would result from any further release of the information withheld by OIP.

36)    Concerning the draft versions of the Options Memorandum and the draft version of the briefing slides described in the categories *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* and *Draft Deliberative Briefing Slides Containing Proposed Options for Changing News Media Policy*, OIP determined that the predecisional, deliberative information contained within the drafts could not be effectively or reasonably[5] segregated, particularly because the content and evolution of the drafts themselves reveal the authors' and reviewers' deliberations concerning the ultimate finalized product. Additionally, as it relates to the information withheld in the deliberative drafting emails described in the categories *Deliberative Discussions Regarding Drafting Memorandum* and *Deliberative Discussions Regarding Drafting Briefing Slides*, OIP conducted a line-by-line review of each withholding in this category, and released all reasonably segregable, non-exempt information contained within them.  OIP withheld from disclosure only that information which would reveal and would harm with reasonable foreseeability the Department's predecisional, deliberative decisionmaking process – specifically those portions of emails in which DOJ officials reference edits made in attached drafts, or otherwise suggest, recommend, or propose edits or modifications to the Options Memorandum and/or briefing slides, or consist of suggestions between DOJ officials, not only on the content of the briefing slides, but also suggesting and recommending content to include verbally in the briefing presentation to

---

[5] For example, in one such draft where the only deliberative modification to the content of the Options Memorandum occurred within a specific section of the memorandum that was withheld for the reasons set forth <u>supra</u>, OIP determined that release of the unedited portion of the draft would be duplicative of the released final version, and that it was not effective or reasonable to segregate and release the duplicative portions.

23

supplement the Power Point information.  Through this review process, OIP took steps to ensure

as much information as possible has been segregated for release to Plaintiff.

Category 5 and Category 13:  *Proposed Options Relating to Changing News Media Policy* (in full and in part) and Category 6:  *References Which Would Disclose Withheld Deliberative Options* (in part)

37)    The category of withholdings described as *Proposed Options Relating to*

*Changing News Media Policy* (in full and in part) consist of various documents which either

reflect the content of the deliberative Options Memorandum, or otherwise intend to reflect

proposals pertaining to potential changes relating to the News Media Policy.  Specifically, one

such document within this category withheld in full consists of a preliminary one-page list

outlining possible changes relating to the News Media Policy circulated to the working group by

the OLP DAAG, which served as an initial outline for discussion within the working group and

ultimately, creation of the first iterative draft Options Memorandum referenced in the category

described as *Draft Deliberative Memorandum Containing Proposed Options for Changing News*

*Media Policy*.  Another such document within this category withheld in full consists of a two-

page word document entitled "Draft 50.10 Thoughts for Tomorrow's Meeting.docx," which

contains the phrase "DRAFT and PRE-DECISIONAL" in the header of the document, and

consists of the subjective thoughts and substantive input and assessment sent from a Senior

Counselor to the DAG to the PADAG, the Associate DAG / Deputy Chief of Staff, and an

Associate DAG setting forth "a few ideas for advancing [the] project" related to the possible

changes to the News Media Policy, and articulates specific potential modifications relating to the

News Media Policy.  Five such documents withheld in full consist of drafts of a modified section

of 28 C.F.R. § 50.10 containing proposed modifications to the text in redlined track changes,

circulated among similar ODAG officials.  Four of the five draft versions of this document

24

contain a "DRAFT" watermark, and each contain the phrase "Predecisional and Deliberative" in the header. Another five such documents consist of iterative drafts containing "tiers" or groupings of potential modifications which may be pursued relating to the News Media Policy, also circulated among similar ODAG officials and with the OLP DAAG and OLP Chief of Staff, and additionally at one point, forwarded to a Counselor to the Attorney General. All draft versions of this document contain a "DRAFT" watermark, and each contain the phrase "Predecisional and Deliberative" in the header. Three such documents in this category withheld in full consist of iterative draft versions of the entirety of 28 C.F.R. § 50.10, and contain proposed modifications to the News Media Policy, including proposed redlined track changes and comments regarding proposed changes to the policy made in review. One version of this document was prepared by the CRM officials, and circulated to ODAG attached to emails including similar ODAG officials, along with the CRM Director of the Office of Enforcement Operations (OEO) and several Senior Counselors in CRM, including the Chief of the Policy and Statutory Enforcement Unit (PSEU) - the office in OEO which has particular expertise on the News Media Policy and reviews and prepares recommendations to senior Department leadership on a wide variety of requests for authorization to use or consultation about certain investigative tools. Other versions of this document were forwarded to or from the Director of OPA, or circulated among a PADAG, an Associate DAG / Deputy Chief of Staff, and a Counselor to the Attorney General, and forwarded to a Senior Advisor to the Attorney General. One such document withheld in full consists of a word document attached to an email and circulated by the OLP DAAG to an Associate DAG, which was then circulated back to an Associate DAG / Deputy Chief of Staff and Senior Counselor to the DAG in advance of a meeting to discuss the News Media Policy engagement plan strategy discussed infra, and contains a bulleted list of

25

questions and considerations pertaining to potential changes relating to the News Media Policy that OLP wanted to discuss with ODAG, intended to spark further discussion and clarify certain aspects of the proposed options. One document in this category released in part consists of an email exchange between similar officials in ODAG and the CRM officials cited supra relating to issues concerning the News Media Policy about which the CRM officials had interest in changing. Finally, while addressed separately under the categories *Deliberative Engagement Strategy* and *Draft Deliberative Engagement Strategy* infra, the final version of the News Media Policy engagement plan strategy released in part, and each of the drafts of the same withheld in full, all include sections containing content which additionally can be described as reflecting this category. Each of these documents were circulated between and among the DOJ officials referenced, some within in the internal working group, among ODAG internally, between the ODAG and OLP officials referenced, or between ODAG and the CRM officials referenced, during its review relating to the News Media Policy. What each of these documents have in common is that they consist of proposed changes relating to the News Media Policy, whether in a descriptive format or as a redlined modification version of the existing policy. Finally, the category of withholdings described as *References Which Would Disclose Withheld Deliberative Options* consist of references within the body of emails, subject lines, or attachment names for which disclosure would reveal the content of the privileged information withheld in the category *Proposed Options Relating to Changing News Media Policy*. As such, to adequately protect the deliberative content within the withheld portions of the Options Memorandum, Power Point presentation, and information reflected in the *Proposed Options Relating to Changing News Media Policy*, it is also necessary to withhold the references to their content in other records.

26

None of the proposed changes or modifications occurred or were otherwise implemented during the deliberative process reflected in the documents at issue.

38)    All documents described within in the category *Proposed Options Relating to Changing News Media Policy* are predecisional because they reflect options relating to changes to the News Media Policy which were never adopted, never occurred, and never came to actual fruition during the deliberative process reflected in the documents at issue.  As such, to the extent that they reference options which never became decisional, they remained predecisional. Further, to the extent that these documents reflect an un-finalized version of a document meant to embody a final version of a recommendation, they are additionally predecisional because they were prepared antecedent to a finalized version of the document.  The withheld documents are deliberative because they embody the assessment and evaluation related to the News Media Policy, the candid and forthright consideration of what aspects related to the policy should be modified and why, and the proposed suggestions and recommendations as to how to modify such aspects related to the policy.  Further, to the extent that these documents withheld in full constitute un-finalized drafts, the creation of such drafts – whether it be un-finalized documentary work-product such as the Options Memorandum or a document reflecting tiers of proposed modifications, or whether it is a version of the then-current News Media Policy that contains proposed redlined, track changes, and comments – reflect a significant aspect of the deliberative decisionmaking process where the creation of draft documents are reviewed, edited, and modified before becoming final or implemented.  Over the course creating a final document or proposed modified policy, draft documents are transmitted back and forth, continually changing as relevant staff make track changes, suggest edits, and contemplate strategies as they

27

work toward a well-reasoned final product.  The drafts reflect or embody proposed and potential modifications to agency policy that are at the core of the deliberative process privilege.

39)    It is critical that Department officials engage in the candid assessment of issues relating to existing Departmental policies to address concerns raised by the Attorney General and the DAG, in this case related to the News Media Policy, towards the goal of potentially modifying and improving such significant policies and procedures, at the request of the DAG, concerning issues of national security.  This introspective internal review is the cornerstone of policy review, evaluation, and evolution to improve the implementation of the Department's mandates.  It is critical to effective and sound decisionmaking that agency staff feel free to work through, write out, analyze, and hone their proposed options for modification to existing policies while deciding whether or what options to pursue – a process that itself helps to refine, assess, and evaluate options under consideration.  If information withheld in this category was released, it would reasonably cause foreseeable harm to the Department's ability to have robust internal deliberations and assessments of agency policies and processes, in this instance specifically relating to DOJ's News Media Policy, out of concern of disclosing nascent and candid thoughts and subjective evaluations, including the development of options and proposals which were never adopted.  Disclosure would hamper the efficient day-to-day workings of the Department, and here would hamper the ability of the Department to address concerns related to conducting successful investigations and prosecutions in instances of unauthorized disclosure of national defense information or of classified information, as Department staff engaging in these assessments would no longer feel free to discuss or advance their proposals and strategies or provide advice and evaluations on matters of interest to the Department vis-à-vis its ongoing inter-agency deliberations.  Likewise, there is reasonably foreseeable harm in release because

28

disclosure of the information withheld in this category would cause public confusion by releasing options and proposals considered internally, but not necessarily ultimately adopted or implemented.  In this instance, given that none of the proposals and options were adopted during the deliberative process reflected in the documents at issue, recognizing the importance of insulating Department officials in conducting a fulsome and candid internal review to improve its policies and procedures, in consideration of the context in which these communications were taking place, and based on OIP's line-by-line review of the information withheld in part, I have determined that reasonably foreseeable harm would result from further release of information in this category.

40)     OIP determined that the predecisional, deliberative information contained within the various documents described within the category *Proposed Options Relating to Changing News Media Policy* (in full) could not be effectively or reasonably segregated.  As it relates to documents described as "drafts," their content and evolution of the drafts themselves reveal the authors' and reviewers' deliberations concerning the ultimate finalized product, or otherwise reveal the author's nascent and subjective thoughts and assessments, which were never transformed into a final product, enacted, or adopted as final policy during the deliberative process reflected in the documents at issue.  Additionally, as it relates to the information withheld in part the categories described as *Proposed Options Relating to Changing News Media Policy* and *References Which Would Disclose Withheld Deliberative Options*, OIP conducted a line-by-line review of the withholdings in these categories, and released all reasonably segregable, non-exempt information.  For these reasons, release of any additional portion of the above-described documents within these categories would harm with reasonable foreseeability the Department's predecisional, deliberative decisionmaking process.

29

Category 7:  *Deliberative Engagement Strategy* (in part) and Category 14:  *Draft Deliberative*

*Engagement Strategy* (in full)

41)    The category of withholdings described as *Deliberative Engagement Strategy* (in part) consists of a short and preliminary description of proposed steps to take in continuation of the News Media Policy review process, located at Bates numbers 0472 through 0473 of OIP's June 2, 2022 final response, offered internally by an Associate DAG to an Associate DAG / Deputy Chief of Staff, Senior Counselor to the DAG, and another Associate DAG reflecting his subjective and nascent ideas on how to proceed towards finalizing potential modifications related to the policy.  This category additionally consists of the final News Media Policy engagement plan strategy entitled "Process to Determine and Finalize Potential Revisions to Media Subpoena Policy," located at Bates numbers 0522 through 0524 of OIP's June 2, 2022 final response.  The latter version, which reflects the final iteration of multiple earlier drafts, was prepared as a tool for the ongoing discussion and for a forthcoming meeting on the issue, and contains the phrases "Predecisional and Deliberative" and "Attorney Work Product" in its header.  While OIP released portions reflecting information consisting of logistical information or non-deliberative contextual cues, the withheld portions of these documents consist of core deliberative and internal strategic actions proposed with a view towards finalizing the News Media Policy review process and finalizing and implementing potential options and revisions.  The category of withholdings described as *Draft Deliberative Engagement Strategy* (in full) additionally consists of four preliminary draft versions of the final News Media Policy engagement plan strategy document discussed supra, three of which contain redlined track changes, circulated between and among similar officials in ODAG and OLP's DAAG, at times copied to OLP's Chief of Staff, proposing edits to the content of the strategic engagement document prior to its finalization.

30

42)    The withheld portions of the documents in the category described as *Deliberative Engagement Strategy* (in part) are predecisional because they reflect deliberative strategic actions anticipated to occur relating to the News Media Policy which ultimately did not occur during the deliberative process reflected in the documents at issue.  The withheld portions of the documents in this category are deliberative because they set forth proposed strategic actions the Department intended to pursue to carry out the News Media Policy review process to its conclusion, both in the ultimate selection of the option(s) for modification relating to the News Media Policy, but additionally concerning what strategic actions to take thereafter to implement a selection.  This strategic engagement plan was intended to map out, in detail, the strategic process of with whom to engage, when and how to engage them, what was to be done after selection of the option(s), and how to successfully implement the selected option(s).  Indeed, the deliberative process in this manner reflects not only the substance of the decision to make concerning modifications relating to the News Media Policy, but perhaps just as important, the additional deliberative decisionmaking process proposed by DOJ officials as a recommendation, based on their subjective assessment and consideration, of how to finalize and implement the ultimate decision successfully.  The documents in the category described as *Draft Deliberative Engagement Strategy* are additionally predecisional because the document itself was prepared antecedent to the finalized, partially released, engagement plan strategy.  They are deliberative because, in addition to reasons set forth relating to the category described as *Deliberative Engagement Strategy* (in part), the creation of drafts reflects a significant aspect of the decisionmaking process during which draft documents are reviewed, edited, and modified before becoming final.  Over the course creating a final document, draft documents are transmitted back and forth, continually changing as relevant staff make redlined track changes, suggest edits, and

31

contemplate strategies as they work toward a well-reasoned final product.  The drafts in this category reflect proposed modifications to the strategic engagement plan intended to ensure the successful completion and implementation of the News Media Policy review process.

43)	It is critical that Department officials are able to engage in unfettered and candid deliberative strategic planning, both in terms of finalizing the substantive decisionmaking processes related to the review of the efficacy of significant and generally controversial then-existing News Media Policy, but also concerning the practical implementation and engagement with necessary stakeholders of the proposed fruits of the detailed review process intended to successfully implement the anticipated modified policy into effect.  Disclosure of the information withheld would hinder the Department from finalizing and implementing important policy modifications by revealing open and frank assessments, evaluations, and planning concerning the processes and engagements which Department officials anticipated were necessary to successfully complete its review and modification of the News Media Policy.  This is particularly the case when final decision on the substantive options was never completed during the deliberative process reflected in the documents at issue, and the strategic plan for engagement "died on the vine" before the Department could implement the intended strategic engagement it had planned.  Likewise, there is reasonably foreseeable harm in release because disclosure of the information withheld in this category would cause public confusion by releasing options and engagement strategies considered internally, but not necessarily ultimately adopted or implemented during the deliberative process reflected in the documents at issue.  In this instance, given that none of the proposals and options were adopted by the agency and the corresponding strategic engagement plan was not implemented during the deliberative process reflected in the documents at issue, recognizing the importance of insulating Department

32

officials in conducting a fulsome and candid internal review to improve its policies and procedures and to plan for their successful finalization and implementation, in consideration of the context in which these communications were taking place and documents created, and based on OIP's line-by-line review of the information withheld, I have determined that reasonably foreseeable harm would result from further release of information in this category.

44)     OIP determined that the predecisional, deliberative information contained within the category *Draft Deliberative Engagement Strategy* (in full) could not be effectively or reasonably segregated.  As it relates to documents described as "drafts," their content and evolution of the drafts themselves reveal the authors' and reviewers' deliberations concerning the ultimate finalized product.  Additionally, as it relates to the information withheld in part in the category described as *Deliberative Engagement Strategy* (in part), OIP conducted a line-by-line review of the withholding in this category, and released all reasonably segregable, non-exempt information contained within it, consisting of logistical information or non-deliberative contextual cues.  For these reasons, release of any additional portion of the above-described documents within this category would harm with reasonable foreseeability the Department's predecisional, deliberative decisionmaking process.

Category 8:  *Potential Policy Modifications Being Pursued by Criminal Division* (in part)

45)     The category of withholdings described as *Potential Policy Modifications Being Pursued by Criminal Division* are located at Bates 0001-0002 of OIP's June 2, 2022 final response, and consist of four distinct withholdings made on behalf of the CRM OEO within an email from the former Director of OEO to an Associate DAG and Chief of Staff relating to "several of the current projects being handled by OEO[.]".  The information in the email was provided by the former Director of OEO at the request of the ODAG official and generally

33

concerns information related to the mission of multiple offices within CRM.  The specific

information withheld within the email reflects four potential guidance and/or policy

modifications under consideration by OEO, one of which related to revisions to the News Media

Policy by PSEU.  These policy and/or guidance modifications had yet to be approved or be

implemented, and indeed, never were during the deliberative process reflected in the documents

at issue.

46)    The information withheld on behalf of CRM is predecisional because it reflects

potential guidance and/or policy modifications under consideration by OEO at a time antecedent

to their adoption and implementation.  It is deliberative because it reflects OEO's assessment of

how to improve certain policies managed by the Office, which includes proposals relating to its

evaluation of the News Media Policy (as well as other policy considerations), the candid and

forthright consideration of what aspects related to these policies should be modified, and

proposed suggestions and recommendations as to how to modify such aspects related to these

policies.

47)    It is critical that Department officials are able to engage in the candid assessment

of existing Departmental policies and counsel regarding potentially modifying and improving its

guidance, policies, and procedures.  This introspective internal review is the cornerstone of

fostering the evolution of policies to improve the pursuit of the Department's mandates.  If

information withheld in this category were released, it would reasonably cause foreseeable harm

to the Department's ability to engage in robust internal deliberations and assessments of agency

processes and policies, relating to the News Media Policy and others, out of concern for

releasing nascent and candid thoughts, evaluations, and proposals which had not, and never

were, adopted during the deliberative process reflected in the documents at issue.  Likewise,

there is reasonably foreseeable harm in release of this information because its disclosure would cause public confusion by releasing options and proposals considered internally, but not necessarily ultimately adopted or implemented.  In this instance, given that none of the proposals and options proposed by OEO were adopted by the agency during the deliberative process reflected in the documents at issue, recognizing the importance of insulating Department officials in conducting a fulsome and candid internal review to improve its policies and procedures, considering the context in which these communications were taking place, and based on OIP's line-by-line review of the information withheld, I have determined that reasonably foreseeable harm would result from further release of information in this category.

48)    OIP, on behalf of CRM, conducted a thorough line-by-line review of each withholding in this category, and released all reasonably segregable, non-exempt information contained within them.  OIP, on behalf of CRM, withheld from disclosure only that information which would reveal and would harm with reasonable foreseeability the Department's predecisional, deliberative decisionmaking process – specifically those portions of the email from a CRM official concerning OEO's assessment of how to improve certain policies managed by the Office, the candid and forthright consideration of what aspects related to these policies should be modified, and proposed suggestions and recommendations as to how to modify such aspects related to these policies.  Through this review process, OIP and CRM took steps to ensure as much information as possible has been segregated for release to Plaintiff.

Category 9: *Deliberative Discussion Regarding Potential Response to Press Inquiry* (in part)

49)    The category of withholding described as *Deliberative Discussion Regarding Potential Response to Press Inquiry* consists of an email string in which a reporter is engaging with a spokesperson in OPA, the Departmental office serving as the principal point of contact

35

between DOJ and members of the news media, who then elevates the inquiry to a Senior

Counselor in ODAG for consideration of how to respond.  The information withheld consists of

the internal deliberative communication between the Senior Counselor and the PADAG as to

whether and how OPA should respond to the press inquiry, as well as potential steps for

consideration relating to Departmental action in light of the inquiry.

50)    The information withheld in this category is predecisional because it occurs

antecedent to the decision as to whether or how the Department should respond to the inquiry

from the press, and prior to the determination as to what potential steps, if any, the Department

should take in light of the inquiry and potential publication of the story.  It is deliberative

because it reflects an ODAG official's subjective assessment of the potential issues relating to

the press inquiry, candid reflection of potential considerations that the Department may want to

address concerning the issue raised, and forthright recommendation of how to proceed.

51)    It is critical that the Department be able to engage in unfettered internal

deliberations on how to respond to inquiries from members of the press, and how to approach

issues that may arise as a result of information that is intended to be published relating to

Department matters.  Otherwise, the Department's ability to effectively manage its relationship

with members of the news media, the public, and others, regarding important Department

policies efficiently and effectively would be compromised to its detriment, particularly here

where the press inquiry relates to the generally controversial News Media Policy and presumed

potential modifications thereto.  Disclosure of the withheld information would hamper the

Department's ability to manage these important relationships by making DOJ officials more

circumspect in sharing their thoughtful analysis and recommendations to efficiently and

appropriately address press inquiries and issues attendant to potential public reporting of

36

Department equities.  In this instance, recognizing the importance of ensuring that Department officials engage in candid and forthright deliberative discussion to appropriately and efficiently manage their relationship with member of the press, the public, and others, in consideration of the context in which these communications were taking place, and based on OIP's line-by-line review of the information withheld, I have determined that reasonably foreseeable harm would result from further release of information in this category.

52)    OIP conducted a thorough line-by-line review of each withholding in this category, and released all reasonably segregable, non-exempt information contained within them. OIP withheld from disclosure only that information which would reveal and would harm with reasonable foreseeability the Department's predecisional, deliberative decisionmaking process – specifically those portions of the email consisting of an ODAG official's subjective assessment of potential issues relating to a press inquiry, candid reflection of potential considerations that the Department may want to address concerning the issue, and forthright recommendation of how to proceed.  Through this review process, OIP took steps to ensure as much information as possible has been segregated for release to Plaintiff.

Category 10: *Deliberative Legal Advice Regarding Potential Modification to News Media Policy* (in part)

53)    The category of withholding described as *Deliberative Legal Advice Regarding Potential Modification to News Media Policy*[6] consists of a withholding located at Bates number 0432 of OIP's June 2, 2022 response comprised of an email communication from a Senior Counselor to the DAG relaying to the PADAG, two Associate DAGs, and an Associate DAG /

---

[6] As discussed <u>infra</u>, this material is also independently withheld in part pursuant to the attorney-client privilege.

Deputy Chief of Staff the deliberative legal advice received from the Office of Legal Counsel's (OLC) PDAAG, DAAG, and an Attorney-Advisor as it relates to a specific legal issue attendant to the potential modification of the News Media Policy on which ODAG sought OLC's counsel. As discussed infra, OLC exercises the delegated authority of the Attorney General to provide legal advice to the President and all Executive Branch agencies, as well as to other components of the Department. *See* 28 C.F.R. § 0.25. The legal advice provided to the Senior Counselor to the DAG is relayed and shared among the referenced ODAG officials to assess and further consider options for how to best proceed in a specific aspect of the continued review relating to potential modifications of the News Media Policy.

54) The information contained within this category is predecisional because it consists of legal advice provided to ODAG antecedent to the determination as to whether to pursue the course of action about which the deliberative legal advice relates. It is deliberative because it consists of OLC's expert legal advice, opinion, and recommendation relating to an issue attendant to the review and potential modification of the News Media Policy. Officials in ODAG reviewed the advice provided, as relayed through another official, in contemplation of a specific decision to be made relating to the determination of how to proceed as part of the review of the News Media Policy.

55) There is reasonably foreseeable harm in release of the information withheld in this category because, in addition to the reasonably foreseeable harm related to the attorney-client privilege discussed infra, it is critical to effective and sound agency decisionmaking that Department components are free to engage with OLC on legal matters in a frank and candid manner wherein agency clients feel free to seek, and for OLC in response, to provide expert legal advice on complex legal issues attendant to review of important and sensitive Departmental

policies.  Given that legal advice does not exist in a vacuum, it is also critical that Department officials feel free to share such advice with their agency peers for discussion, analysis, and evaluation to aid in the assessment of issues that arise in the review of agency policies.  In this instance, given that the information withheld consists of deliberative legal advice provided by OLC, relayed through an ODAG official to aid in the decisionmaking process relating to a specific issue attendant to the Department's review relating to the News Media Policy, in consideration of the context in which this deliberative information was provided, and based on OIP's line-by-line review of the information withheld, I have determined that reasonably foreseeable harm would result for release of the information withheld.

56)     OIP conducted a thorough line-by-line review of the document included in this category, and released all reasonably segregable, non-exempt information contained within it. OIP withheld from disclosure only that information which would reveal and would harm with reasonable foreseeability the Department's predecisional, deliberative decisionmaking process – specifically those portions of the email consisting of OLC's expert deliberative legal advice and recommendation related to issues attendant to the review and potential modification of the News Media Policy.  Through this review process, OIP took steps to ensure as much information as possible has been segregated for release to Plaintiff.

<u>Exemption 5: Attorney-Client Privilege</u>

57)     The attorney-client privilege protects records that contain or reflect confidential legal advice provided by an attorney to a client, as well as other confidential communications, which are designated to solicit or to provide legal advice from the attorney to the client and contain pertinent information communicated between the attorney and the client.  The Assistant Attorney General in charge of OLC exercises the delegated authority of the Attorney General to

provide legal advice to the President and all Executive Branch agencies, as well as to other

components of the Department.  *See* 28 C.F.R. § 0.25; *see also Office of Legal Counsel*,

https://justice.gov/olc.  Communications in which DOJ components or other Executive Branch

agencies are soliciting and receiving legal advice from OLC are protected by the attorney-client

privilege.

58)     OIP has protected information within the *Deliberative Legal Advice Regarding*

*Potential Modification to News Media Policy* category pursuant to the attorney-client privilege.[7]

As discussed supra, this withholding located at Bates number 0432 of OIP's June 2, 2022

response consist of an email communication from a Senior Counselor to the DAG relaying to the

PADAG, two Associate DAGs, and an Associate DAG / Deputy Chief of Staff the deliberative

legal advice received from OLC's PADAG, DAAG, and an Attorney-Advisor as it relates to a

specific issue attendant to the potential modification of the News Media Policy on which ODAG

sought OLC's counsel.  This email communication consists of and includes OLC's expert legal

advice received in by the ODAG official, which necessarily reflects the confidential information

shared by the ODAG official in seeking such advice.  Accordingly, the withheld information –

the confidential information shared in seeking advice and the advice reflecting those confidential

communications – is covered by the attorney-client privilege and thus is exempt from disclosure

pursuant to Exemption 5 of the FOIA.  Making this communication available for public scrutiny

would interfere with the attorney-client relationship between OLC and its Executive Branch

clients, which would substantially impede the sharing of candid legal advice that is critical to the

component's unique role in providing legal counsel through the Executive Branch.

---

[7] As discussed supra, this material is also independently withheld in part, pursuant to the
deliberative process privilege.

59)    The Department has disclosed all reasonably segregable, non-exempt information from this record to Plaintiff.  Because the attorney-client privilege extends to both the facts provided in confidence by client agencies, and OLC's advice in response thereto, it is impossible for OIP to segregate information any further without undermining the protections afforded by the attorney-client privilege.  The disclosure of any additional portion of this information would reveal OLC's assessment of the situation as described to it in confidence by the ODAG official and the corresponding legal advice, and would impair the attorney-client relationship by inhibiting the open and forthright communication necessary to provide such advice.  Thus, OIP thoroughly reviewed the withheld information characterized as *Deliberative Legal Advice Regarding Potential Modification to News Media Policy*, and withheld from disclosure only that information which would reveal or reflects confidential information provided by an attorney to a client in the course of seeking confidential legal advice.

### Explanation of Information Withheld by OIP Pursuant to Exemption 6

60)    Exemption 6 protects from disclosure information the release of which "would constitute a clearly unwarranted invasion of the personal privacy" of individuals.  5 U.S.C. §552(b)(6).  When determining whether to withhold information pursuant to Exemption 6, OIP assesses whether there is more than a de minimis privacy interest at stake, whether there is any "FOIA public interest" in disclosure, and if so, balances those interests to determine whether protection of the information is appropriate.

61)    In conducting the balancing analysis for Exemption 6, the FOIA public interest considered is limited to information which would shed direct light on DOJ's performance of its mission:  to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in

41

preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.

62)    Information withheld by OIP pursuant to Exemption 6 falls into one of two categories:

1. *Departmental Contact Information*
2. *Third-Party Contact Information*

Each of these categories will be addressed in turn.

Category 1:  *Departmental Contact Information*

63)    The first category of Exemption 6 based withholdings consists of the email addresses and phone numbers (cellular and office) of DOJ employees.  The release of the contact information of these DOJ officials would not aid the public's understanding of how the Department carries out its duties, particularly when considering that the identities of these individuals were released, and only their direct contact information was withheld.  Accordingly, OIP determined that there is no FOIA public interest in the release of this contact information.

64)    Further, OIP determined that release of this information would foreseeably subject these individuals to an increased risk of harassment.  Additionally, release would risk misuse and disruption of the proper and efficient use of official DOJ email accounts and communication systems, including current government officials' accounts that use a similarly formatted email address as departed officials or phone numbers of cell phones that are re-used, without any marginal benefit to the public interest, particularly because the identity of the relevant government officials is being disclosed.  Therefore, their contact information was withheld to protect the privacy of Department employees and to enable them to conduct Department business efficiently.

65) For these reasons, release of the contact information of the members of these DOJ employees would result in reasonably foreseeable harm to interests protected by Exemption 6. Specifically, release of these phone numbers and/or email address would constitute a clearly unwarranted invasion of the personal privacy of these individuals as well as current government employees.

Category 2: *Third Party Contact Information*

66) The second category of Exemption 6 based withholdings consists of the non-public email addresses and phone numbers of members of the press communicating with the DOJ. As noted above, to withhold information pursuant to the Exemption 6, a balancing of the privacy interests of the individuals against any FOIA public interest in disclosure must weigh in favor of non-disclosure. In assessing whether there is any FOIA public interest in disclosure of the non-public contact information of members of the press, OIP considered the mission and role of DOJ and whether revealing this contact information sheds light on the operations and activities of DOJ. OIP determined that releasing the non-public phone numbers and email addresses of these members of the press would in no way enhance the public's understanding of how the Department carries out its duties.

67) OIP also considered the privacy interests of these individuals and believes that the release of certain of their contact information would cause unsolicited and unwanted contact and/or harassment. While OIP determined that each of the members of the press cited in the records released had certain contact information published or located in the public realm, the information withheld was determined to be non-public. Insomuch as the members of the press have chosen not to publish the information withheld, I have determined that the privacy interests of these individuals significantly outweigh the lack of FOIA public interest in disclosure of their

43

contact information.  As such, this information has been protected pursuant to Exemption 6

because its release would constitute a clearly unwarranted invasion of the personal privacy of

these individuals.

68)    For these reasons, release of the contact information of the members of the press

would result in reasonably foreseeable harm to interests protected by Exemption 6.  Specifically,

release of these phone numbers and/or email address would constitute a clearly unwarranted

invasion of the personal privacy of these individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkmann
Senior Counsel

Executed this 4th day of November, 2022.

# Exhibit A

**REPORTERS COMMITTEE**
**FOR FREEDOM OF THE PRESS**

1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
www.rcfp.org

Bruce D. Brown
Executive Director
bbrown@rcfp.org
(202) 795-9301

**STEERING COMMITTEE CHAIRMAN**
STEPHEN J. ADLER, *Reuters*

**STEERING COMMITTEE MEMBERS**
J. SCOTT APPLEWHITE
*The Associated Press*
WOLF BLITZER
*CNN*
DAVID BOARDMAN
*Temple University*
THEODORE J. BOUTROUS, JR.
*Gibson, Dunn & Crutcher LLP*
MASSIMO CALABRESI
*Time Magazine*
MANNY GARCIA
*Austin American-Statesman*
EMILIO GARCIA-RUIZ
*San Francisco Chronicle*
JOSH GERSTEIN
*POLITICO*
ALEX GIBNEY
*Jigsaw Productions*
SUSAN GOLDBERG
*National Geographic*
JAMES GRIMALDI
*The Wall Street Journal*
LAURA HANDMAN
*Davis Wright Tremaine*
DIEGO IBARGÜEN
*Hearst*
KAREN KAISER
*The Associated Press*
DAVID LAUTER
*The Los Angeles Times*
MARGARET LOW
*WBUR*
JANE MAYER
*The New Yorker*
COLLEEN MCCAIN NELSON
*The McClatchy Company*
MAGGIE MULVIHILL
*Boston University*
JAMES NEFF
*The Philadelphia Inquirer*
NORMAN PEARLSTINE
*New York, New York*
THOMAS C. RUBIN
*Stanford Law School*
CHARLIE SAVAGE
*The New York Times*
JENNIFER SONDAG
*Bloomberg News*
NABIHA SYED
*The Markup*
ADAM SYMSON
*The E.W. Scripps Company*
PIERRE THOMAS
*ABC News*
SAUNDRA TORRY
*Freelance*
VICKIE WALTON-JAMES
*NPR*
JUDY WOODRUFF
*PBS/The NewsHour*

**HONORARY LEADERSHIP COUNCIL**
CHIP BOK
*Creators Syndicate*
DAHLIA LITHWICK
*Slate*
TONY MAURO
*American Lawyer Media, ret.*
ANDREA MITCHELL
*NBC News*
CAROL ROSENBERG
*The New York Times*
PAUL STEIGER
*ProPublica*

*Affiliations appear only
  for purposes of identification.*

Adam A. Marshall
Reporters Committee for Freedom of the Press
1156 15th St. NW, Suite 1020
Washington, DC 20005
amarshall@rcfp.org

Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Fax: (202) 514-1009

January 29, 2021

<u>VIA ONLINE PORTAL</u>

To Mr. Hibbard:

This letter constitutes a request under the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of the Reporters Committee for Freedom of the Press ("RCFP" or the "Reporters Committee") to the Office of the Attorney General ("OAG") at the Department of Justice ("DOJ"). The Reporters Committee is a nonprofit association of news reporters and editors.

I.  Background

For your information, and in order to facilitate the location of responsive records, this request relates to DOJ's "Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media." 28 C.F.R. § 50.10; *see also* Justice Manual Section 9-13.400.

II.  Requested Records

Pursuant to FOIA, I, on behalf of RCFP, request access to and copies of the following:

1.  All versions of DOJ's Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media, that have been in effect since January 21, 2017;

2.  All emails sent or received since January 21, 2017 that include proposed or enacted modifications to the Justice Department's Policy regarding

obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media;

3. All emails and/or email attachments sent to, from, copying, or blind copying former Acting Attorney General Matthew Whitaker, between November 7, 2018 and March 5, 2019, that include the phrase "policy regarding obtaining information from, or records of, members of the news media";

4. All emails and/or email attachments sent to, from, copying, or blind copying Attorney General William Barr, since February 14, 2019, that include the phrase "policy regarding obtaining information from, or records of, members of the news media";

Please note that to the extent there are any emails responsive to items (1) above, and for the purposes of the term "email" or "emails" in items (2)–(4) above, this request specifically asks for copies of the entirety of any email chain(s) in which the email(s) appear, as well as all attachments to any emails. This request also includes official communications sent or received by DOJ personnel using any non-government email account.

Please provide all responsive records in electronic format, preferably via email to amarshall@rcfp.org.

III.    Fees

As a representative of the news media, the Reporters Committee is only required to pay for the direct cost of duplication after the first 100 pages. 5 U.S.C. § 552(a)(4)(A). These records are being sought on behalf of the Reporters Committee for analysis and free dissemination to the general public through multiple avenues, including RCFP's website[1], social media accounts[2], and email newsletters. In the event there are fees for responding to this request, RCFP is willing to pay up to $25.00. Please inform me if the fees will exceed that amount before proceeding.

IV.    Conclusion

If this request is denied in whole or in part, please justify all such denials by reference to specific exemptions and provide an explanation of why OAG "reasonably foresees that disclosure would harm an interest" protected by that exemption or why "disclosure is prohibited by law[.]" 5 U.S.C. §552(a)(8). Please also ensure all segregable portions of otherwise exempt material are released.

If you have any questions regarding this request, please do not hesitate to contact me via email at amarshall@rcfp.org.

---

[1] https://www.rcfp.org

[2] https://www.twitter.com/rcfp (~22k followers as of January 29, 2021); https://www.facebook.com/ReportersCommittee (9,498 follows as of January 29, 2021)

I look forward to your determination within 20 working days, as is required by FOIA.  Thank you in advance for your assistance in this matter.

Sincerely,

Adam A. Marshall
Reporters Committee for Freedom of the Press
amarshall@rcfp.org

**REPORTERS COMMITTEE**
**FOR FREEDOM OF THE PRESS**

1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
www.rcfp.org

Bruce D. Brown
Executive Director
bbrown@rcfp.org
(202) 795-9301

**STEERING COMMITTEE CHAIRMAN**
STEPHEN J. ADLER, *Reuters*

**STEERING COMMITTEE MEMBERS**
J. SCOTT APPLEWHITE
*The Associated Press*
WOLF BLITZER
*CNN*
DAVID BOARDMAN
*Temple University*
THEODORE J. BOUTROUS, JR.
*Gibson, Dunn & Crutcher LLP*
MASSIMO CALABRESI
*Time Magazine*
MANNY GARCIA
*Austin American-Statesman*
EMILIO GARCIA-RUIZ
*San Francisco Chronicle*
JOSH GERSTEIN
*POLITICO*
ALEX GIBNEY
*Jigsaw Productions*
SUSAN GOLDBERG
*National Geographic*
JAMES GRIMALDI
*The Wall Street Journal*
LAURA HANDMAN
*Davis Wright Tremaine*
DIEGO IBARGÜEN
*Hearst*
KAREN KAISER
*The Associated Press*
DAVID LAUTER
*The Los Angeles Times*
MARGARET LOW
*WBUR*
JANE MAYER
*The New Yorker*
COLLEEN MCCAIN NELSON
*The McClatchy Company*
MAGGIE MULVIHILL
*Boston University*
JAMES NEFF
*The Philadelphia Inquirer*
NORMAN PEARLSTINE
*New York, New York*
THOMAS C. RUBIN
*Stanford Law School*
CHARLIE SAVAGE
*The New York Times*
JENNIFER SONDAG
*Bloomberg News*
NABIHA SYED
*The Markup*
ADAM SYMSON
*The E.W. Scripps Company*
PIERRE THOMAS
*ABC News*
SAUNDRA TORRY
*Freelance*
VICKIE WALTON-JAMES
*NPR*
JUDY WOODRUFF
*PBS/The NewsHour*

**HONORARY LEADERSHIP COUNCIL**
CHIP BOK
*Creators Syndicate*
DAHLIA LITHWICK
*Slate*
TONY MAURO
*American Lawyer Media, ret*
ANDREA MITCHELL
*NBC News*
CAROL ROSENBERG
*The New York Times*
PAUL STEIGER
*ProPublica*

*Affiliations appear only
  for purposes of identification.*

Adam A. Marshall
Reporters Committee for Freedom of the Press
1156 15th St. NW, Suite 1020
Washington, DC 20005
amarshall@rcfp.org

Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
Department of Justice

January 29, 2021

<u>VIA ONLINE PORTAL</u>

To Mr. Hibbard:

This letter constitutes a request under the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of the Reporters Committee for Freedom of the Press ("RCFP" or the "Reporters Committee") to the Office of the Deputy Attorney General ("ODAG") of the Department of Justice ("DOJ"). The Reporters Committee is a nonprofit association of news reporters and editors.

I.  <u>Background</u>

For your information, and in order to facilitate the location of responsive records, this request relates to DOJ's "Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media." 28 C.F.R. § 50.10; *see also* Justice Manual Section 9-13.400.

II.  <u>Requested Records</u>

Pursuant to FOIA, I, on behalf of RCFP, request access to and copies of the following:

1.  All versions of DOJ's Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media, that have been in effect since January 21, 2017;

2.  All emails sent or received since January 21, 2017 that include proposed or enacted modifications to the Justice Department's Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media;

3. All emails and/or email attachments sent to, from, copying, or blind copying former Deputy Attorney General Rod Rosenstein, between April 25, 2017 and May 12, 2019, that include the phrase "policy regarding obtaining information from, or records of, members of the news media".

Please note that to the extent there are any emails responsive to items (1) above, and for the purposes of the term "email" or "emails" in items (2)–(3) above, this request specifically asks for copies of the entirety of any email chain(s) in which the email(s) appear, as well as all attachments to any emails. This request also includes official communications sent or received by DOJ personnel using any non-government email account.

Please provide all responsive records in electronic format, preferably via email to amarshall@rcfp.org.

III.    Fees

As a representative of the news media, the Reporters Committee is only required to pay for the direct cost of duplication after the first 100 pages. 5 U.S.C. § 552(a)(4)(A). These records are being sought on behalf of the Reporters Committee for analysis and free dissemination to the general public through multiple avenues, including RCFP's website[1], social media accounts[2], and email newsletters. In the event there are fees for responding to this request, RCFP is willing to pay up to $25.00. Please inform me if the fees will exceed that amount before proceeding.

IV.    Conclusion

If this request is denied in whole or in part, please justify all such denials by reference to specific exemptions and provide an explanation of why ODAG "reasonably foresees that disclosure would harm an interest" protected by that exemption or why "disclosure is prohibited by law[.]" 5 U.S.C. §552(a)(8). Please also ensure all segregable portions of otherwise exempt material are released.

If you have any questions regarding this request, please do not hesitate to contact me via email at amarshall@rcfp.org.

I look forward to your determination within 20 working days, as is required by FOIA. Thank you in advance for your assistance in this matter.

Sincerely,
Adam A. Marshall
Reporters Committee for Freedom of the Press
amarshall@rcfp.org

---

[1] https://www.rcfp.org
[2] https://www.twitter.com/rcfp (22k followers as of December 9, 2020);
https://www.facebook.com/ReportersCommittee (9,464 follows as of December 9, 2020)

# Exhibit B



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

February 19, 2021

Adam Marshall
Reporters Committee for Freedom of the Press
1156 15th Street, NW
Suite 1020                                          Re:    FOIA-2021-00670
Washington, DC  20005                                      FOIA-2021-00671
amarshall@rcfp.org                                         DRH:GMG

Dear Adam Marshall:

This is in reference to your Freedom of Information Act (FOIA) requests dated and received in this Office on January 29, 2021, in which you requested records concerning the Department of Justice policy regarding obtaining information from, or records of, members of the news media since January 21, 2017.

On the same business day, you submitted to this Office two separate, but inter-related FOIA request letters seeking various records of the Office of the Attorney General and the Office of the Deputy Attorney General.  For purposes of clarity, below is a chart of these requests:

| Tracking Number | Received | Subject |
| --- | --- | --- |
| FOIA-2021-00670 | 1/29/21 | Records concerning the Department of Justice policy regarding obtaining information from, or records of, members of the news media, including specific emails of former Acting Attorney General Matthew Whitaker and former Attorney General William Barr, since January 21, 2017. |
| FOIA-2021-00671 | 1/29/21 | Records concerning the Department of Justice policy regarding obtaining information from, or records of, members of the news media, including specific emails of former Deputy Attorney General Rod Rosenstein, since January 21, 2017. |

The above-referenced requests relate to the same overarching topic insomuch as they are seeking records from the same Department officials on related topics within the same timeframe.  Accordingly, as a matter of administrative efficiency and in an effort to facilitate our records searches and the processing and consultation of potentially responsive records, and ultimately to more efficiently respond to your requests, we are aggregating your requests under the tracking number FOIA-2021-00670.  We will conduct a comprehensive records search designed to locate records that may be responsive to any or all of your requests.  This administrative action will eliminate any redundancies amongst our records searches while also removing the need to process and conduct consultations on duplicative records that would

-2-

have been responsive to one or more of your individual requests. The remaining tracking number will be closed administratively.

The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances." See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2018). Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time we have assigned your request to the complex track. In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track. You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options. Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

We regret the necessity of this delay, but we assure you that your request will be processed as soon as possible. If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact this Office by telephone at the above number or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001. Lastly, you may contact our FOIA Public Liaison, Valeree Villanueva, at the telephone number listed above to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

If you are not satisfied with this Office's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Douglas R. Hibbard
Chief, Initial Request Staff

-3-

# Exhibit C



**U.S. Department of Justice**

Office of Information Policy

*441 G Street, NW*
*Sixth Floor*
*Washington, DC  20530*

*Telephone: (202) 514-3642*

July 16, 2021

Adam Marshall
Reporters Committee for Freedom of the Press
1156 15th Street, NW
Suite 1020                                   Re:    FOIA-2021-00670
Washington, DC  2005                                21-cv-1294 (D.D.C.)
amarshall@rcfp.org                                  VRB:TAZ:JMS

Dear Adam Marshall:

This is an interim response to your Freedom of Information Act (FOIA) requests, dated and received in this Office on January 29, 2021, in which you sought records concerning the Department of Justice policy regarding obtaining information from, or records of, members of the news media since January 21, 2017.

As an initial matter, as it relates to subpart 1 of your respective requests each seeking "[a]ll versions of DOJ's Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media, that have been in effect since January 21, 2017," we note that the policy you reference is codified in Department of Justice regulations at 28 C.F.R. § 50.10.  This policy can be located in the Electronic Code of Federal Regulations (eCFR).  As noted in the Code of Federal Regulations, this policy was last updated by AG Order No. 3486-2015 on January 21, 2015.  This constitutes our response to subpart 1 of your requests.

Additionally, as previously advised through counsel, certain searches in response to your FOIA requests have been conducted, and, at this time, I have determined that nine pages are appropriate for release in full, and copies are enclosed.  Please be advised that certain pages within this production contain highlighting.  This highlighting was present on these pages as located by OIP and were not made as part of our FOIA review process.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

-2-

If you have any questions regarding this response, please contact Michael Gaffney of the Department's Civil Division, Federal Programs Branch, at (202) 514-2356.

Sincerely,

Timothy Ziese
Senior Supervisory Attorney
for
Vanessa R. Brinkmann
Senior Counsel

Enclosures

**KNIGHT
FIRST AMENDMENT
INSTITUTE**

at Columbia University

RECEIVED

**OCT 11 2017**

Office of Information Policy    October 10, 2017

Laurie Day
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
1425 New York Avenue NW, Suite 11050
Washington, DC 20530-0001

Melissa Golden
Lead Paralegal and FOIA Specialist
Office of Legal Counsel
Department of Justice
950 Pennsylvania Avenue NW, Room 5511
Washington, DC 20530-0001

Federal Bureau of Investigation
Attn: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

National Security Agency
Attn: FOIA/PA Office
9800 Savage Road, Suite 6932
Ft. George G. Meade, MD 20755-6932

Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC 20505

Stephen Kelley
Acting Director
Information Management Division
Office of the Director of National
 Intelligence
Washington, DC 20511

535 West 116th Street, 314 Low Library, New York, NY 10027  |  (212) 854-9600  |  carrie.decell@knightcolumbia.org

**Re:   Freedom of Information Act Request
          Expedited Processing Requested**

To whom it may concern:

The Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute")[1] and the Freedom of the Press Foundation[2] ("FPF") submit this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records concerning restrictions on government surveillance targeting members of the news media or otherwise implicating the First Amendment.

## I. Background

Various statutes authorize government searches, seizures, and other forms of surveillance that implicate core First Amendment freedoms, including the freedoms of speech, association, and the press. Cognizant of these implications, Congress has prohibited the government from relying on many of these statutes to conduct surveillance based solely on activity protected by the First Amendment. *See, e.g.,* 12 U.S.C. § 3414(a)(5)(B); 18 U.S.C. § 2709(b). Based on the same concerns, the Department of Justice ("DOJ") and other federal agencies have adopted policy or regulatory constraints, such as those set forth in the DOJ's "Media Guidelines," on the use of law enforcement investigative authorities to obtain records and information from members of the news media. 28 C.F.R. 50.10.[3] Yet other investigative authorities, such as the government's authority to obtain records and information from third parties by secretly issuing national security letters ("NSLs"), 18 U.S.C. § 2709, do not appear to be subject to any such statutory or regulatory limitations.[4]

The Knight Institute and Freedom of the Press Foundation seek to inform the public about the scope of the government's investigative powers and the limitations placed on those powers to protect the freedoms of

---

[1] The Knight First Amendment Institute is a New York not-for-profit organization based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.

[2] The Freedom of the Press Foundation is a non-profit organization based in San Francisco that works to preserve and strengthen the rights guaranteed to the press under the First Amendment through crowdfunding, digital security and internet advocacy.

[3] See U.S. Dep't of Justice, Updated Policy Regarding Obtaining Information From, or Records of, Members of the News Media, and Regarding Questioning, Arresting, or Charging Member[s] of the News Media, Jan. 14, 2015, *available at* https://perma.cc/C5FV-L7F6; U.S. Dep't of Justice, Report on Review of News Media Policies, July 12, 2013, *available at* https://perma.cc/HV4P-W77K.

[4] See Trevor Timm, *New Documents Shed Light on the Justice Dept's Secret Rules for Targeting Journalists with National Security Letters,* Freedom of the Press Found. (Jan. 8, 2016), https://perma.cc/7NA5-XH65.

speech, association, and the press. Recent reports of government investigations into journalists, political dissenters, and political protesters call into question the adequacy of those protections. For example, earlier this year the DOJ demanded that the web host for a website called DisruptJ20.org, which organized protests on the day of President Trump's inauguration, turn over the website's visitor logs and other user information.[5] The DOJ narrowed its demand only after widespread opposition on First Amendment grounds.[6] Additionally, on August 4, 2017, the DOJ announced that it had tripled the number of active investigations into leaks of government information since President Trump took office, and that it would be "reviewing policies affecting media subpoenas" in connection with those investigations.[7] Given this acknowledged increase in government investigations into activities that may be protected by the First Amendment, the need to inform the public of the limitations on the government's authority to conduct such investigations is particularly pressing.

## II. Records Requested

The Knight Institute and Freedom of the Press Foundation request the following documents[8] created on or after May 1, 2013:

1. All documents concerning any limitations on investigative activities, including the use of law enforcement and national security investigative authorities,[9] to target, acquire, retain, disseminate, or use records or information of or about members of the news media.[10] This request includes but is not limited to:

   a. All documents concerning the Privacy Protection Act of 1980, 42 U.S.C. § 2000aa, and/or the DOJ's Media Guidelines, 28 C.F.R. 50.10;

---

[5] Robinson Meyer, *Can the U.S. Government Seize Anti-Trump Website's Visitor Logs?* (Aug. 15, 2017), https://perma.cc/X2WY-RWEB.

[6] Morgan Chalfant, *DOJ Drops Request for IP Addresses from Trump Resistance Site*, The Hill (Aug. 22, 2017), https://perma.cc/9GZB-GX7W.

[7] News Release, U.S. Dep't of Justice, Attorney General Jeff Sessions Delivers Remarks at Briefing on Leaks of Classified Materials Threatening National Security (Aug. 4, 2017), *available at* https://perma.cc/NQQ8-82F2.

[8] As used herein, the term "documents" includes but is not limited to directives, policies, procedures, memoranda, guidance, training material, presentations, and emails.

[9] As used herein, the term "national security investigative authorities" includes but is not limited to NSLs, "exigent letters," and Foreign Intelligence Surveillance Act ("FISA") orders or directives.

[10] As used herein, the term "members of the news media" broadly includes journalists, reporters, bloggers, and other members of media, press, and news organizations.

3

b. All targeting, minimization, and/or other procedures adopted by the Federal Bureau of Investigation ("FBI"), National Security Agency ("NSA"), Central Intelligence Agency ("CIA"), and/or the National Counterterrorism Center ("NCTC") regarding the use of law enforcement and/or national security investigative authorities to obtain records or information of or about members of the news media;

c. All reports prepared by the DOJ Office of Inspector General ("OIG"), the NSA OIG, and/or the CIA OIG regarding the use of law enforcement and/or national security investigative authorities to obtain records or information of or about members of the news media; and

d. All requests or statistical information concerning requests to the DOJ National Security Division General Counsel and/or the Executive Assistant Director of the DOJ National Security Branch for approval to issue NSLs for the acquisition of records or information of or about members of the news media.

2. All documents concerning the limitations imposed upon any of the government's investigative authorities by the First Amendment. This request includes but is not limited to all documents concerning the following provisions, each of which limits governmental investigative authority on the basis of the First Amendment:

a. 5 U.S.C. § 552a(e)(7);

b. 12 U.S.C. § 3414(a)(5)(A);

c. 15 U.S.C. § 1681u(a)–(c);

d. 18 U.S.C. § 2709(b);

e. 50 U.S.C. § 1805(a)(2)(A);

f. 50 U.S.C. § 1824(a)(2)(A);

g. 50 U.S.C. § 1842(a)(1), (c)(2);

h. 50 U.S.C. § 1843(a), (b)(1);

i. 50 U.S.C. § 1861(a)(2)(B); and

j. 80 F.R. 9,355, at 9,356.

4

3. All portions of the current version of the FBI Domestic Investigations and Operations Guide ("DIOG") that discuss any limitations on any investigative activities, including the use of law enforcement and national security investigative authorities, to target, acquire, retain, disseminate, or use records or information of or about members of the news media, and/or any other limitations on those investigative activities imposed by the First Amendment. This request includes but is not limited to:

   a. All documents discussing the scope of, or setting forth any exceptions to, the portions of the current FBI DIOG described above;

   b. All portions of the current FBI DIOG that update or otherwise correspond to the following portions of the version of the FBI DIOG dated October 15, 2011:

      i. Appendices G and Q; and

      ii. Sections 2.84, 3.3.1.3–3.3.1.4, 3.5–3.6, 4.1–4.2, 4.4.4, 5.1, 5.3, 5.6.3.4.4.1, 5.7.1, 6.3, 6.10.1, 7.3, 7.10.1, 8.3, 8.8.1, 9.3, 9.10.1, 10.1.2.2.5, 10.1.3, 10.2.3, 16.1.3, 16.2.3, 16.2.3.5, 16.3.1.4.2, 16.3.1.5.3, 16.9.3, 18.2, 18.5.6.1, 18.5.6.4.8, 18.6.4.3.4.3, 18.6.5.3.5.1, 18.6.6.3.4, 18.6.6.3.7.4, 18.6.8.4.2.7, 18.6.9.5.1.1, and 19.10.

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

We also ask that you provide responsive electronic records in their native file format or a generally accessible electronic format (*e.g.*, for tabular data, XLS or CSV). *See* 5 U.S.C. § 552(a)(3)(B).

## III. Application for Expedited Processing

The Knight Institute and Freedom of the Press Foundation request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the records sought because the information they contain is "urgent[ly]" needed by organizations primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

5

### A.   The Knight Institute and Freedom of the Press Foundation are primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.

The Knight Institute and Freedom of the Press Foundation are "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight Institute is a newly established organization at Columbia University dedicated to defending and strengthening the freedoms of speech and the press in the digital age. Research and public education are central to the Institute's mission.[11] Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and the public are among the core activities the Institute was established to perform. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

The Freedom of the Press Foundation is a non-profit organization established under the laws of the State of California, with its primary office in San Francisco, California. The mission of FPF is to advocate for government transparency and accountability by preserving the rights guaranteed to the press under the First Amendment and fortifying the public's right to know. As a core part of that mission, FPF educates the public about government protocols and procedures involving the press and uses FOIA to obtain and publish documents detailing government activities that impinge on press freedom. Like the Knight Institute, therefore, FPF is "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II).

### B.   The records sought are urgently needed to inform the public about actual or alleged government activity.

The requested records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). The records sought concern possible government intrusion on freedoms of speech, association, and the press, including the government's investigations into DisruptJ20.org visitors and into suspected leakers of government information.[12] Indeed, Attorney General Jeff Sessions recently announced

---

[11] Mike McPhate, *Columbia University To Open a First Amendment Institute*, N.Y. Times (May 17, 2016), https://perma.cc/YC9M-LUAD; James Rosen, *New Institute Aspires To Protect First Amendment in Digital Era*, McClatchy DC (May 20, 2016), https://perma.cc/ZS2K-FPED.

[12] Robinson Meyer, *Can the U.S. Government Seize Anti-Trump Website's Visitor Logs?* (Aug. 15, 2017), https://perma.cc/X2WY-RWEB; News Release, U.S. Dep't of Justice, Attorney

6

an increase in FBI resources devoted to leak cases and the creation of a new counterintelligence unit to manage these cases, along with a review of policies "that impact leak investigations," including policies regarding media subpoenas.[13]

Moreover, the scope of the government's authority to conduct investigations into activities protected by the First Amendment, and in a manner that may otherwise violate the First Amendment, has become a matter of widespread debate and increasing public interest.[14] For instance, the recent publication of actual NSLs by companies such as Google, Yahoo, and the Internet Archive has generated significant public interest.[15] Yet lack of broader transparency with respect to current policies and practices stymies meaningful debate over the scope of the government's authority to obtain records and information of and about members of the press without their consent and often without their knowledge.

The public's interest in the records sought is even greater because current practices may violate constitutional rights. The First Amendment safeguards individuals' rights to anonymous speech and private association. As the Supreme Court has explained, "[p]rosecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all. Identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance." *Talley v. California*, 362 U.S. 60, 64 (1960). The Supreme Court has similarly recognized that "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP v. Alabama*, 357 U.S. 449, 462 (1958). The First Amendment further guarantees the freedom of the press from unjustified intrusion into the newsgathering process. Courts therefore "apply the warrant requirements with particular exactitude when First Amendment interests would be endangered by [a] search." *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978). At present, the public can neither determine the degree to which freedoms of speech,

General Jeff Sessions Delivers Remarks at Briefing on Leaks of Classified Materials Threatening National Security, (Aug. 4, 2017), *available at* https://perma.cc/NQQ8-82F2.

[13] News Release, U.S. Dep't of Justice, Attorney Jeff Sessions Delivers Remarks at Briefing on Leaks of Classified Materials Threatening National Security, (Aug. 4, 2017), *available at* https://perma.cc/NQQ8-82F2.

[14] *See, e.g.*, Laura Wamsley, *DOJ Demands Files on Anti-Trump Activists, and a Web Hosting Company Resists*, NPR (Aug. 15, 2017), https://perma.cc/4LB5-VDTF; Charlie Savage & Eileen Sullivan, *Leak Investigations Triple Under Trump, Sessions Says*, N.Y. Times (Aug. 4, 2017), https://perma.cc/C3YD-82PJ.

[15] Richard Salgado, *Sharing National Security Letters with the Public*, Google (updated Aug. 10, 2017), https://perma.cc/Q5S6-S7GW; *see* Rachel Revesz, *Google Publishes Secret FBI Customer Information Requests Two Months After Gag Order Is Lifted*, Independent (Dec. 19, 2016), https://perma.cc/N7KU-V5LR; Chris Madsen, *Yahoo Announces Public Disclosure of National Security Letters*, Yahoo! (June 1, 2016), *available at* https://perma.cc/AK9D-VVAE.

7

association, and the press are being abridged under existing policies, nor assess how proposed policies could further curtail those freedoms.

For these reasons, the Knight Institute and Freedom of the Press Foundation are entitled to expedited processing of this request.

## IV. Application for Waiver or Limitation of Fees

The Knight Institute and Freedom of the Press Foundation request a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Knight Institute's or FPF's commercial interests. The Institute and FPF will make any disclosed information available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citation omitted).

In addition, the Knight Institute and Freedom of the Press Foundation request a waiver of search and review fees on the ground that each is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute and FPF qualify as "representative[s] of the news media" because each is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282, 287–88 (D. Conn. 2012); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations with research and public education missions similar to that of the Institute and FPF to be representatives of the news media. *See, e.g.*, *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

8

Finally, the Knight Institute requests a waiver of search and review fees on the ground that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Knight Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute performs scholarly research on the application of the First Amendment in the digital era. The Institute has recently inaugurated a research program bringing together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It will publish that commentary in many forms — in scholarly publications, in long-form reports, and in short-form essays.

For these reasons, the Knight Institute and Freedom of the Press Foundation are entitled to a fee waiver.

*    *    *

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email to clarify any aspect of the request or, where reasonable, to narrow it.

I certify that the foregoing is true and correct.

Sincerely,

/s/ Carrie DeCell
Carrie DeCell
Alex Abdo
Knight First Amendment Institute at
  Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027
carrie.decell@knightcolumbia.org
(212) 854-9600

Trevor Timm
Freedom of the Press Foundation
601 Van Ness Ave.
Suite E731
San Francisco, CA 94102
trevor@freedom.press

# Exhibit D



**U.S. Department of Justice**

Office of Information Policy

*441 G Street, NW*
*Sixth Floor*
*Washington, DC  20530*

*Telephone: (202) 514-3642*

October 5, 2021

Adam Marshall
Reporters Committee for Freedom of the Press
1156 15th Street, NW
Suite 1020                                        Re:    FOIA-2021-00670
Washington, DC  2005                                     21-cv-1294 (D.D.C.)
amarshall@rcfp.org                                       VRB:JMS

Dear Adam Marshall:

This is our second interim response to your Freedom of Information Act (FOIA) requests, dated and received in this Office on January 29, 2021, in which you sought records concerning the Department of Justice policy regarding obtaining information from, or records of, members of the news media since January 21, 2017.

Please be advised that the search for records potentially responsive to subpart 2 of the OAG and ODAG Requests and subpart 4 of the OAG request, as referenced in the parties August 6, 2021 Joint Status Report (ECF No. 9), has been completed.  As it relates to subpart 4 of the OAG Request, no records responsive to this subpart of your request were located.  Our review of the initial search results for material potentially responsive to subpart 2 of the OAG and ODAG Requests is ongoing, and we will update you once that review is complete.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions regarding this response, please contact Michael Gaffney of the Department's Civil Division, Federal Programs Branch, at (202) 514-2356.

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

# Exhibit E



**U.S. Department of Justice**

Office of Information Policy

*441 G Street, NW*
*Sixth Floor*
*Washington, DC  20530*

*Telephone: (202) 514-3642*

June 2, 2022

Adam Marshall
Reporters Committee for Freedom of the Press
1156 15th Street, NW
Suite 1020                                     Re:     FOIA-2021-00670
Washington, DC  2005                                   21-cv-1294 (D.D.C.)
amarshall@rcfp.org                                     VRB:TAZ:JMS

Dear Adam Marshall:

This is our final response to your Freedom of Information Act (FOIA) requests, dated and received in this Office on January 29, 2021, in which you sought records concerning the Department of Justice policy regarding obtaining information from, or records of, members of the news media since January 21, 2017.

We previously provided you with interim responses to your requests on July 16, 2021 and October 5, 2021.  At this time, we have completed the processing of subpart 2 of the OAG and ODAG requests.  As a result, I have determined that 131 pages containing records responsive to your requests are appropriate for release with certain information withheld, some on behalf of the Criminal Division (CRM) and the Federal Bureau of Investigation (FBI), pursuant to Exemptions 5, 6, 7(C), and 7(E) of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  Copies are enclosed.  Additionally, 448 pages containing records responsive to your request are being withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5).  Exemption 5 pertains to certain inter- and intra-agency communications protected by civil discovery privileges.  Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of personal privacy.  Exemption 7(C) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Exemption 7(E) pertains to records or information compiled for law enforcement purposes, the release of which would disclose certain techniques and procedures or guidelines for law enforcement investigations or prosecutions.  Please note that the enclosed pages also contain records that are duplicative or not responsive.  Such records have not been processed and are marked accordingly.  Finally, please be advised that we have considered the foreseeable harm standard when reviewing records and applying FOIA exemptions.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the

-2-

FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions regarding this response, please contact Michael Gaffney of the Department's Civil Division, Federal Programs Branch, at (202) 514-2356.

Sincerely,

Timothy Ziese
Senior Supervisory Attorney

Enclosures

**Hodge, Jennifer (CRM)**

| | |
|---|---|
| **From:** | Hodge, Jennifer (CRM) |
| **Sent:** | Thursday, June 1, 2017 10:44 AM |
| **To:** | Terwilliger, Zachary (ODAG) |
| **Cc:** | Hulser, Raymond (CRM) |
| **Subject:** | OEO Projects |
| **Attachments:** | OEO Mission 5-1-17.docx |

Zach,

I attach a brief one-pager that OEO prepared in early May that gives a brief sketch of our mission, the Units, and workload.  Per your request this morning, I outline below several of the current projects being handled by OEO:

Electronic Surveillance Unit:

- Working on legislative proposals in coordination with OPL to update Title III, the wiretap statute, to account for changes in technology, including the widespread use of multimedia messaging and other electronic communications, and to empower law enforcement to utilize interceptions to their fullest effect to combat violent crime, transnational criminal organizations, serious fraud and corruption, and other threats to the public.
- Examining submission process to the DAAG for Title III authorizations to make process more efficient for front office and the field, and to further reduce turnaround time (which currently averages less than four days, sometimes less than 3 days at OEO).
- Participating in multi-agency working groups to discuss and resolve current technological problems with interceptions, including Going Dark, and issues with service providers.
- Updating the field through listservs, web postings, webinars, outreach and training, or individual emails regarding all wiretap issues, including providers' increasing use of different means of transmitting information (VoLTE) which has led to issues in the scope of interception and minimization.
- Providing guidance to Appellate Division and field on motions to suppress and appeals raising wiretap issues.
- Drafting new or updated Title III go-bys.

Policy and Statutory Enforcement Unit:

- Increasing outreach to the field to explain DOJ policy, including DOJ media policy, and USAM requirements.
- Reviewing USAM and DOJ policy requirements for necessity, level of signature authority, and scope.  For example:
  - PSEU has changed the delegation for attorney search warrant consultations from DAAG to OEO Director.
  - Seeking t ███████████ (b)(5) per CRM ██████████
  - Seeking to revising media polic ███████████ (b)(5) per CRM ██████████ .
  - Seeking t ███████████ (b)(5) per CRM ██████████
- Improving intake system and process to facilitate more efficient service to the field

Special Operations Unit:

- Serving on multi-agency Threat Mitigation Working Group to evaluate the S-Visa process for foreign cooperators to make it easier for law enforcement to use this tool when combatting transnational crime.
- Reviewing the requirements for use or targeting of a federal prisoner, to include potentially eliminating a step

0001

in the review process and working with BOP on its consensual monitoring policy.

- Reviewing the Witness Security Progra ▮▮▮▮▮ (b)(5) per CRM ▮▮▮▮▮
- Improving intake system and process to facilitate more efficient service to the field.

FOIA/Privacy Act Unit:

- Undertaking comprehensive review of Criminal Division record-keeping in response to new Privacy Control Requirements added by the National Institute of Standards and Technology, which is tasked with working with agencies to protect information resources (compliance with FISMA-Federal Information Security Management Act of 2002)
- As a result of a 2016 amendment to FOIA allowing for greater public inspection in an electronic format if request made three or more times, the FOIA Unit has been working with Criminal Division ITM to update the FOIA Unit's reading room website and to ensure that the FOIA Unit will have the electronic support necessary to comply with OIP's anticipated guidance on this amendment.

International Prisoner Transfer Unit:

- Working with ITM to go "paperless" to better streamline the application process and provide information to the field.
- As a result of recent OIG audit, continuing to review internal process and format of IPTU memorandum to eliminate back log.

I am available if you have questions or need additional information.

Thanks,

Jennifer

Jennifer A. H. Hodge
Director
Office of Enforcement Operations
Criminal Division
U.S. Department of Justice
▮▮▮ (b) (6) ▮▮▮

0002

**Rothenberg, Laurence E (OLP)**

| | |
|---|---|
| **Subject:** | Media Policy |
| **Location:** | Main Justice 4236 |
| **Start:** | Tuesday, August 8, 2017 2:30 PM |
| **End:** | Tuesday, August 8, 2017 4:00 PM |
| **Show Time As:** | Tentatively accepted |
| **Recurrence:** | (none) |
| **Meeting Status:** | Not yet responded |
| **Organizer:** | Rothenberg, Laurence E (OLP) |
| **Required Attendees:** | Newman, Ryan (OLP); Dickey, Jennifer (OLP); Bolitho, Zachary (ODAG); Groves, Brendan M. (ODAG); Toscas, George (NSD); Wiegmann, Brad (NSD); Grooms, Daniel (USAVAE); Malis, Jonathan M. (USADC (b)(6), (b)(7)(C) per FBI (b)(6), (b)(7)(C) per (OGC) (FBI); Flores, Sarah Isgur (OPA); Rybicki, David (CRM) |
| **Attachments:** | OLP list.docx |

List of options attached.  The agenda for the meeting is to go through the list identifying one or more to recommend.

0003

Document ID: 0.7.7168.5995

**Rothenberg, Laurence E (OLP)**

| | |
|---|---|
| **Subject:** | Media Policy |
| **Location:** | Main Justice 4236 |
| | |
| **Start:** | Tuesday, August 8, 2017 2:30 PM |
| **End:** | Tuesday, August 8, 2017 4:00 PM |
| | |
| **Recurrence:** | (none) |
| | |
| **Meeting Status:** | Accepted |
| | |
| **Organizer:** | Rothenberg, Laurence E (OLP) |
| **Required Attendees:** | Newman, Ryan (OLP); Dickey, Jennifer (OLP); Bolitho, Zachary (ODAG); Groves, Brendan M. (ODAG); Toscas, George (NSD); Wiegmann, Brad (NSD); Grooms, Daniel (USAVAE); Malis, Jonathan M. (USADC (b)(6), (b)(7)(C) per FBI (b)(6), (b)(7)(C) per (OGC) (FBI); Flores, Sarah Isgur (OPA); Rybicki, David (CRM) |
| | |
| **Attachments:** | OLP list.docx |

List of options attached.  The agenda for the meeting is to go through the list identifying one or more to recommend.

0005

**Rothenberg, Laurence E (OLP)**

| | |
|---|---|
| **From:** | Rothenberg, Laurence E (OLP) |
| **Sent:** | Wednesday, August 16, 2017 6:56 PM |
| **To:** | Bolitho, Zachary (ODAG); Groves, Brendan M. (ODAG); Toscas, George (NSD); Wiegmann, Brad (NSD); Malis, Jonathan M. (USADC); Grooms, Daniel (USAVAE); Rybicki, David (CRM); Flores, Sarah Isgur (OPA (b)(6), (b)(7)(C) per FBI (OGC) (FBI) |
| **Cc:** | Newman, Ryan (OLP); Dickey, Jennifer (OLP) |
| **Subject:** | draft options memo |
| **Attachments:** | options memo.docx |

Attached please find a draft memo outlining options for the DAG regarding possible changes to the Department's media policy.  We welcome your comments and request that, if at all possible, we receive them by mid-day Friday. We also request that you consider the draft close-hold and do not provide a copy to anyone else.  Thanks for your help on this project.

Laurence E. Rothenberg
Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
(b) (6)

0006

Document ID: 0.7.7168.6003

## Malis, Jonathan M. (USADC)

| | |
|---|---|
| **From:** | Malis, Jonathan M. (USADC) |
| **Sent:** | Thursday, August 17, 2017 7:46 PM |
| **To:** | Rothenberg, Laurence E (OLP); Bolitho, Zachary (ODAG); Groves, Brendan M. (ODAG); Toscas, George (NSD); Wiegmann, Brad (NSD); Grooms, Daniel (USAVAE); Rybicki, David (CRM); Flores, Sarah Isgur (OPA  (b)(6), (b)(7)(C) per FBI  (OGC) (FBI) |
| **Cc:** | Newman, Ryan (OLP); Dickey, Jennifer (OLP) |
| **Subject:** | RE: draft options memo |
| **Attachments:** | OLP options memo DRAFT 8-16-17 (jmm).docx |

Thanks Larry.  Well done.  My suggested edits and comments are attached.  Have a good evening.  Jon

Jonathan M. Malis
Chief, Criminal Division
District of Columbia
(b) (6)

---

**From:** Rothenberg, Laurence E (OLP) [mail           (b) (6)           ]
**Sent:** Wednesday, August 16, 2017 6:56 PM
**To:** Bolitho, Zachary (ODAG) (JMD            (b) (6)            >; Groves, Brendan M. (ODAG) (JMD)
             (b) (6)            >; Toscas, George (NSD) (JMD            (b) (6)           ; Wiegmann, Brad
(NSD) (JMD            (b) (6)           ; Malis, Jonathan M. (USAD            (b) (6)           ; Grooms, Daniel
(USAVAE            (b) (6)           >; Rybicki, David (CRM            (b) (6)           >; Flores, Sarah Isgur (OPA)
(JMD            (b) (6)            (b)(6), (b)(7)(C) per FBI  (OGC) (FB  (b)(6), (b)(7)(C), (b)(7)(E) per FBI >
**Cc:** Newman, Ryan (OLP) (JMD            (b) (6)           >; Dickey, Jennifer (OLP) (JMD)
           (b) (6)           
**Subject:** draft options memo



Duplicative Material

0017

## Wiegmann, Brad (NSD)

| | |
|---|---|
| **From:** | Wiegmann, Brad (NSD) |
| **Sent:** | Friday, August 18, 2017 1:07 PM |
| **To:** | Malis, Jonathan M. (USADC); Rothenberg, Laurence E (OLP); Bolitho, Zachary (ODAG); Groves, Brendan M. (ODAG); Toscas, George (NSD); Grooms, Daniel (USAVAE); Rybicki, David (CRM); Flores, Sarah Isgur (OPA ~~(b)(6), (b)(7)(C) per FBI~~. (OGC) (FBI) |
| **Cc:** | Newman, Ryan (OLP); Dickey, Jennifer (OLP) |
| **Subject:** | RE: draft options memo |
| **Attachments:** | options memo (003).docx |

Attached are some comments and edits from George and me.  Thanks!

---

**From:** Malis, Jonathan M. (USADC) [mail ~~(b) (6)~~
**Sent:** Thursday, August 17, 2017 7:46 PM
**To:** Rothenberg, Laurence E (OLP ~~(b) (6)~~ >; Bolitho, Zachary (ODAG)
~~(b) (6)~~ >; Groves, Brendan M. (ODAG ~~(b) (6)~~ ; Toscas, George (NSD)
~~(b) (6)~~ >; Wiegmann, Brad (NSD ~~(b) (6)~~ ; Grooms, Daniel (USAVAE)
~~(b) (6)~~ >; Rybicki, David (CR ~~(b) (6)~~ >; Flores, Sarah Isgur (OPA)
~~(b) (6)~~ ~~(b)(6), (b)(7)(C) per FBI~~ (OGC) (FB ~~(b)(6), (b)(7)(C), (b)(7)(E) per FBI~~
**Cc:** Newman, Ryan (OLP ~~(b) (6)~~ >; Dickey, Jennifer (OLP ~~(b) (6)~~
**Subject:** RE: draft options memo

Duplicative Material

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Sunday, August 20, 2017 11:14 PM |
| **To:** | Rothenberg, Laurence E (OLP) |
| **Cc:** | Bolitho, Zachary (ODAG) |
| **Subject:** | RE: draft options memo |
| **Attachments:** | options memo (004)_bmg.docx |

Larry,

Please find attached some additional thoughts on the memo.  I'm exceedingly grateful for all of the hard work invested in this project.

Best,
Brendan

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Friday, August 18, 2017 12:20 PM
**To:** Bolitho, Zachary (ODAG    (b) (6)
**Cc:** Groves, Brendan M. (ODAG    (b) (6)
**Subject:** RE: draft options memo

Was there any feedback we should know about from your meeting with the DAG on Tuesday?

**From:** Bolitho, Zachary (ODAG)
**Sent:** Friday, August 18, 2017 12:17 PM
**To:** Rothenberg, Laurence E (OL    (b) (6)
**Cc:** Groves, Brendan M. (ODAG    (b) (6)
**Subject:** RE: draft options memo

I greatly appreciate your work on it.  Thanks!

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Friday, August 18, 2017 12:17 PM
**To:** Bolitho, Zachary (ODAG    (b) (6)
**Cc:** Groves, Brendan M. (ODAG    (b) (6)
**Subject:** RE: draft options memo

Sure. I did want to make sure you knew that we were moving things along.

**From:** Bolitho, Zachary (ODAG)
**Sent:** Friday, August 18, 2017 10:55 AM
**To:** Rothenberg, Laurence E (OL    (b) (6)
**Cc:** Groves, Brendan M. (ODAG)    (b) (6)
**Subject:** RE: draft options memo

0041

Document ID: 0.7.7168.6015

Larry,

I think it makes the most sense for you to incorporate any changes from the rest of the group and then let Brendan and I look over the revised version before it is submitted to the DAG.  Is that ok with you?

Thanks,
Zac

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Wednesday, August 16, 2017 6:56 PM
**To:** Bolitho, Zachary (ODAG [(b) (6)]>; Groves, Brendan M. (ODAG [(b) (6)];
Toscas, George (NSD [(b) (6)]>; Wiegmann, Brad (NSD [(b) (6)]>; Malis,
Jonathan M. (USAD [(b) (6)]>; Grooms, Daniel (USAVAE) [(b) (6)]>;
Rybicki, David (CRM) [(b) (6)]>; Flores, Sarah Isgur (O [(b) (6)];
[(b)(6), (b)(7)(C) per FBI] (OGC) (FB [(b)(6), (b)(7)(C), (b)(7)(E) per FBI]
**Cc:** Newman, Ryan (OL [(b) (6)]>; Dickey, Jennifer (OL [(b) (6)]
**Subject:** draft options memo



Duplicative Material

0042

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Wednesday, August 23, 2017 10:55 PM |
| **To:** | Gauhar, Tashina (ODAG) |
| **Subject:** | Fwd: revised version of the media subpoena policy options paper |
| **Attachments:** | options paper OLP 8_23.docx; ATT00001.htm |

Tash, FYSA.

Begin forwarded message:



**From:** "Rothenberg, Laurence E (OLP)                    (b) (6)
**Date:** August 23, 2017 at 5:23:29 PM EDT
**To:** "Williams, Beth A (OLP)              (b) (6)              , "Groves, Brendan M. (ODAG)"
              (b) (6)              , "Bolitho, Zachary (ODAG)              (b) (6)              ,
"Wiegmann, Brad (NSD)              (b) (6)              , "Toscas, George (NSD)"
              (b) (6)              , "Grooms, Daniel (USAVAE)              (b) (6)              >, "Malis,
Jonathan M. (USADC)              (b) (6)              (b)(6), (b)(7)(C) per FBI. (OGC) (FBI)"
(b)(6), (b)(7)(C), (b)(7)(E) per FBI>, "Flores, Sarah Isgur (OPA)              (b) (6)              , "Rybicki, David
(CRM)              (b) (6)
**Cc:** "Newman, Ryan (OLP)              (b) (6)              , "Dickey, Jennifer (OLP)"
              (b) (6)              >
**Subject: revised version of the media subpoena policy options paper**

Attached please find a revised version of the options paper you reviewed last week, incorporating comments received from NSD, ODAG, and USAO-DC. Please review and comment by the end of the week so that we can finalize. As noted last time, please consider this close-hold and do not share with anyone not on this distribution. Thanks.

Laurence E. Rothenberg
Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
          (b) (6)

0054

Document ID: 0.7.7168.6016

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Thursday, August 24, 2017 2:36 PM |
| **To:** | Rothenberg, Laurence E (OLP) |
| **Subject:** | RE: revised version of the media subpoena policy options paper |
| **Attachments:** | options memo_ZCB_edits.docx |

Larry,

Here are my nits (take or leave them)    sorry I have been sidetracked the last two days on another matter.

Thanks,
Zac

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Wednesday, August 23, 2017 5:26 PM
**To:** Bolitho, Zachary (ODAG ▮▮(b) (6)▮▮ >; Groves, Brendan M. (ODAG ▮▮(b) (6)▮▮ >
**Subject:** FW: revised version of the media subpoena policy options paper

I didn't get comments back on the original from Groom ▮(b)(6), (b)(7)(C) per▮ or Rybicki (also, I don't think I got Zach's nits), but we wanted to keep this moving.

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Wednesday, August 23, 2017 5:23 PM
**To:** Williams, Beth A (OL ▮▮(b) (6)▮▮ >; Groves, Brendan M. (ODAG ▮▮(b) (6)▮▮ ; Bolitho, Zachary (ODAG ▮▮(b) (6)▮▮ ; Wiegmann, Brad (NSD ▮▮(b) (6)▮▮ >; Toscas, George (NS ▮▮(b) (6)▮▮ >; Grooms, Daniel (USAVA ▮▮(b) (6)▮▮ >; Malis, Jonathan M. (USAD ▮▮(b) (6)▮▮ ▮▮(b) (6)▮▮ ▮(b)(6), (b)(7)(C) per FBI▮ (OGC) (FBI) ▮(b)(6), (b)(7)(C), (b)(7)(E) per FBI▮; Flores, Sarah Isgur (OPA ▮▮(b) (6)▮▮ >; Rybicki, David (CRM) ▮▮(b) (6)▮▮
**Cc:** Newman, Ryan (OLP) ▮▮(b) (6)▮▮ >; Dickey, Jennifer (OLP ▮▮(b) (6)▮▮
**Subject:** revised version of the media subpoena policy options paper

Duplicative Material

0067

Document ID: 0.7.7168.7244

## Wiegmann, Brad (NSD)

| | |
|---|---|
| **From:** | Wiegmann, Brad (NSD) |
| **Sent:** | Thursday, August 24, 2017 6:47 PM |
| **To:** | Rothenberg, Laurence E (OLP); Williams, Beth A (OLP); Groves, Brendan M. (ODAG); Bolitho, Zachary (ODAG); Toscas, George (NSD); Grooms, Daniel (USAVAE); Malis, Jonathan M. (USADC ▮(b)(6), (b)(7)(C) per FBI▮. (OGC) (FBI); Flores, Sarah Isgur (OPA); Rybicki, David (CRM) |
| **Cc:** | Newman, Ryan (OLP); Dickey, Jennifer (OLP) |
| **Subject:** | RE: revised version of the media subpoena policy options paper |
| **Attachments:** | options paper OLP 8_23.docx |

See attached for some additional edits/comments.  Thanks!

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Wednesday, August 23, 2017 5:23 PM
**To:** Williams, Beth A (OL ▮(b) (6)▮ ; Groves, Brendan M. (ODAG ▮(b) (6)▮ >;
Bolitho, Zachary (ODAG ▮(b) (6)▮ ; Wiegmann, Brad (NSD ▮(b) (6)▮ >; Toscas,
George (NS ▮(b) (6)▮ ; Grooms, Daniel (USAVA ▮(b) (6)▮ >; Malis, Jonathan
M. (USAD ▮(b) (6)▮ ▮(b)(6), (b)(7)(C) per FBI▮ (OGC) (FB ▮(b)(6), (b)(7)(C), (b)(7)(E) per FBI▮ Flores, Sarah Isgur
(OP ▮(b) (6)▮ ; Rybicki, David (CRM ▮(b) (6)▮
**Cc:** Newman, Ryan (OLP ▮(b) (6)▮ Dickey, Jennifer (OLP ▮(b) (6)▮ >
**Subject:** revised version of the media subpoena policy options paper

Duplicative Material

Document ID: 0.7.7168.6018

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Monday, September 4, 2017 10:11 PM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | Fwd: Media Policy White Paper |
| **Attachments:** | Media Policy White Paper_9.4.2017.pdf; ATT00001.htm |

Hi Zac,

Hope you had a wonderful weekend.  Wanted to check in on this.  I'm flying back from Florida tomorrow and will miss the staff meeting.  Should we perhaps discuss the way ahead with Rob and Jim within the next few days?

Brendan

Begin forwarded message:



**From:** "Newman, Ryan (OLP)      (b) (6)      >
**Date:** September 4, 2017 at 9:13:29 PM EDT
**To:** "Groves, Brendan M. (ODAG)"      (b) (6)      >, "Bolitho, Zachary (ODAG)"
      (b) (6)
**Cc:** "Williams, Beth A (OLP)      (b) (6)      , "Rothenberg, Laurence E (OLP)"
      (b) (6)      , "Dickey, Jennifer (OLP)      (b) (6)
**Subject: Media Policy White Paper**

Brendan and Zach,

Attached is the final version of the media policy white paper.  We'd be happy to discuss this with the DAG whenever he is ready and available.

Thanks,
Ryan

Ryan Newman
Principal Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, DC 20530
offic      (b) (6)      | cel      (b) (6)

Document ID: 0.7.7168.6020

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Monday, September 4, 2017 10:14 PM |
| **To:** | Groves, Brendan M. (ODAG) |
| **Subject:** | FW: hey Zac can you confirm there is no DAG staff meeting at 11:30? |
| **Attachments:** | options paper OLP 8_23.docx |

Did you see this prior email I sent?  Did you have a chance to look at the edits?

**From:** Bolitho, Zachary (ODAG)
**Sent:** Tuesday, August 29, 2017 2:59 PM
**To:** Groves, Brendan M. (ODAG                    (b) (6)
**Subject:** RE: hey Zac can you confirm there is no DAG staff meeting at 11:30?

I made my edits on top of those from NSD.

**From:** Groves, Brendan M. (ODAG)
**Sent:** Tuesday, August 29, 2017 12:28 PM
**To:** Bolitho, Zachary (ODAG          (b) (6)
**Subject:** RE: hey Zac can you confirm there is no DAG staff meeting at 11:30?

That works, thanks again.

**From:** Bolitho, Zachary (ODAG)
**Sent:** Tuesday, August 29, 2017 11:55 AM
**To:** Groves, Brendan M. (ODAG          (b) (6)
**Subject:** RE: hey Zac can you confirm there is no DAG staff meeting at 11:30?

That's fine.  I will send you my edits in track changes, and you can add yours if that works.  Or we can do it another way if you'd prefer.

**From:** Groves, Brendan M. (ODAG)
**Sent:** Tuesday, August 29, 2017 11:52 AM
**To:** Bolitho, Zachary (ODAG          (b) (6)
**Subject:** RE: hey Zac can you confirm there is no DAG staff meeting at 11:30?

Thanks.  Should we coordinate our edits so they incorporate them before Beth signs anything?  Open to ideas.

**From:** Bolitho, Zachary (ODAG)
**Sent:** Tuesday, August 29, 2017 11:29 AM
**To:** Groves, Brendan M. (ODAG          (b) (6)          >
**Subject:** RE: hey Zac can you confirm there is no DAG staff meeting at 11:30?

Brendan,

0107

Document ID: 0.7.7168.6024

Sorry, I was in a meeting.  The DAG meeting is cancelled    I think he is out of town.

I have reviewed the policy and will be sending my propped edits soon.

Thanks,
Zac

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Tuesday, August 29, 2017 10:01 AM
**To:** Bolitho, Zachary (ODAG    (b) (6)
**Subject:** hey Zac can you confirm there is no DAG staff meeting at 11:30?

Also, have you gone through the latest version of the policy we're working on?

Thanks and hope you're well.

BG

Brendan Groves
Counsel to the Deputy Attorney General
U.S. Department of Justice
(b) (6) (o)
(b) (6) (c)

Document ID: 0.7.7168.6024

**Newman, Ryan (OLP)**

| | |
|---|---|
| **From:** | Newman, Ryan (OLP) |
| **Sent:** | Tuesday, September 5, 2017 7:38 PM |
| **To:** | Bolitho, Zachary (ODAG); Groves, Brendan M. (ODAG) |
| **Subject:** | RE: Media Policy White Paper |
| **Attachments:** | Media Policy White Paper_9.4.2017.docx |

Guys, Word version attached.  Since this is an OLP product, I'd ask that you please let us review any changes before sending to the DAG.

Thanks,
Ryan

Ryan Newman
Principal Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, DC 20530
offic ▮▮(b) (6)▮▮ | cel ▮▮(b) (6)▮▮

**From:** Bolitho, Zachary (ODAG)
**Sent:** Tuesday, September 5, 2017 6:29 PM
**To:** Newman, Ryan (OLP ▮▮(b) (6)▮▮; Groves, Brendan M. (ODAG ▮▮(b) (6)▮▮>
**Subject:** RE: Media Policy White Paper

Thanks, Ryan.  Could we please get a copy of this in Word format?  Jim and Rob may have changes that they will want to make before the DAG sees it.

**From:** Newman, Ryan (OLP)
**Sent:** Monday, September 4, 2017 9:13 PM
**To:** Groves, Brendan M. (ODAG ▮▮(b) (6)▮▮; Bolitho, Zachary (ODAG ▮▮(b) (6)▮▮
**Cc:** Williams, Beth A (OL ▮▮(b) (6)▮▮; Rothenberg, Laurence E (OLP) ▮▮(b) (6)▮▮>; Dickey, Jennifer (OLP ▮▮(b) (6)▮▮
**Subject:** Media Policy White Paper

Duplicative Material

Document ID: 0.7.7168.6023

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Tuesday, September 5, 2017 10:05 PM |
| **To:** | Gauhar, Tashina (ODAG) |
| **Subject:** | Fwd: Media Policy White Paper |
| **Attachments:** | Media Policy White Paper_9.4.2017.pdf; ATT00001.htm |

Tash, here's the latest options memo.

Best,
Brendan


Begin forwarded message:


> **From:** "Bolitho, Zachary (ODAG)    (b) (6)
> **Date:** September 5, 2017 at 9:08:33 PM EDT
> **To:** "Hur, Robert (ODAG    (b) (6)    "Crowell, James (ODAG)"
>    (b) (6)
> **Cc:** "Groves, Brendan M. (ODAG)    (b) (6)
> **Subject: Fwd: Media Policy White Paper**
>
>
> Rob & Jim,
>
> Brendan and I are on your calendars for Thursday at 5:00 to discuss the 50.10 policy.  Attached
> is the OLP white paper that lays out the various options developed by the working group.
>  Brendan and I would like to get your thoughts on this before we schedule a time to brief the
> DAG.
>
> Thanks!
> Zac
>
>
>
> Begin forwarded message:
>
>
>> **From:** "Newman, Ryan (OLP)    (b) (6)
>> **Date:** September 4, 2017 at 9:13:29 PM EDT
>> **To:** "Groves, Brendan M. (ODAG)"    (b) (6)    , "Bolitho, Zachary
>> (ODAG)"    (b) (6)
>> **Cc:** "Williams, Beth A (OLP)"    (b) (6)    , "Rothenberg, Laurence
>> E (OLP)    (b) (6)    "Dickey, Jennifer (OLP)"
>>    (b) (6)
>> **Subject: Media Policy White Paper**

Duplicative Material

0124

Document ID: 0.7.7168.6028

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Monday, September 11, 2017 9:55 PM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | For Review |
| **Attachments:** | Media Policy White Paper_9.4.2017_ODAG.docx |
| **Importance:** | High |

Zac,

Please find my edits attached.  I attempted to incorporate your earlier edits wherever possible.  Do you think you'll have a chance to comprehensively review this in the very near future?  It would be ideal to send it back to OLP ASAP.

Thanks very much, and hope you enjoyed the trip!

Best,
Brendan

Brendan Groves
Counsel to the Deputy Attorney General
U.S. Department of Justice
 (o)
(b) (6) (c)

Document ID: 0.7.7168.6031

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Tuesday, September 12, 2017 5:09 PM |
| **To:** | Groves, Brendan M. (ODAG) |
| **Subject:** | RE: For Review |
| **Attachments:** | Media Policy White Paper_9.4.2017_ODAG.docx |

Brendan,

I have made some suggested edits on top of yours.  In terms of the meeting, I think it is a good idea to propose Thursday to OLP.  If they are free, then please send an email to Jim and Marcy asking if there is any available time on the DAG's calendar.  I think we will need to reserve at least 30 minutes.

Thanks for your work on this.  And, please hold down the fort this week!

Best,
Zac

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Monday, September 11, 2017 9:55 PM
**To:** Bolitho, Zachary (ODAG         (b) (6)
**Subject:** For Review
**Importance:** High

Duplicative Material

0140

Document ID: 0.7.7168.6038

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Thursday, September 14, 2017 12:31 AM |
| **To:** | Gauhar, Tashina (ODAG) |
| **Subject:** | FW: Update (Deliberative / FOUO) |
| **Attachments:** | Media Policy White Paper_9.4.2017_ODAG.docx |

Tash,

Here's a near-final version of the options paper on the media subpoena policy. We should have a clean version by noon on Friday. I'll send you that version, too, which will be easier to read.

We are briefing the DAG next Thursday, Sept 21, at 10:00 am. We would love for you to join.

Best,
Brendan

**From:** Groves, Brendan M. (ODAG)
**Sent:** Thursday, September 14, 2017 12:30 AM
**To:** Crytzer, Katherine (OL ████ (b) (6) ████>
**Cc:** Bolitho, Zachary (ODAG ████ (b) (6) ████>; Newman, Ryan (OLP ████ (b) (6) ████
**Subject:** RE: Update (Deliberative / FOUO)

Hi Katie,

[Apologies for the inadvertent earlier email.]

We've reserved time for the DAG's briefing on the media subpoena policy at 10:00 am next Thursday, Sept 21. Our folks should send calendar invites later this week or early the next. As we mentioned, Jim suggested that OLP use powerpoint to outline the options in play. We'll look forward to discussing the briefing in greater detail next week.

Also, we greatly appreciated OLP's work on the options paper. Please find attached ODAG's edits, most of which aim to streamline and simplify the document. If possible, we'd like to have a final version ready by noon on Friday, Sept 15, in order to make the DAG's weekend book. Please let us know if that will not work.

Thanks very much again.

Best,
Brendan

**From:** Groves, Brendan M. (ODAG)
**Sent:** Wednesday, September 13, 2017 5:40 PM
**To:** Crytzer, Katherine (OL ████ (b) (6) ████>
**Cc:** Bolitho, Zachary (ODA ████ (b) (6) ████>; Newman, Ryan (OLP ████ (b) (6) ████

0156

**Subject:** RE: Update (Deliberative / FOUO)

Thanks, Katie.  We'll keep you posted.

Best,
Brendan

---

**From:** Crytzer, Katherine (OLP)
**Sent:** Wednesday, September 13, 2017 5:21 PM
**To:** Groves, Brendan M. (ODAG ▓▓▓ (b) (6) ▓▓▓ >
**Cc:** Bolitho, Zachary (ODAG) ▓▓▓ (b) (6) ▓▓▓ ; Newman, Ryan (OLP ▓▓▓ (b) (6) ▓▓▓
**Subject:** RE: Update (Deliberative / FOUO)

Brendan,

The OLP team can be available before 4:00 PM Thursday, Sept. 21 and anytime Friday, Sept. 22.  Please let me know when you are able to secure a time or tentative block of time – I will hold both days on AAG Williams' calendar.  Thanks.

Katie

**Katie Crytzer**
**Acting Chief of Staff**
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
Offic ▓▓▓ (b) (6) ▓▓▓
Cel ▓▓▓ (b) (6) ▓▓▓
▓▓▓ (b) (6) ▓▓▓

---

**From:** Crytzer, Katherine (OLP)
**Sent:** Tuesday, September 12, 2017 10:41 PM
**To:** Groves, Brendan M. (ODAG ▓▓▓ (b) (6) ▓▓▓
**Cc:** Bolitho, Zachary (ODA ▓▓▓ (b) (6) ▓▓▓ Newman, Ryan (OLP ▓▓▓ (b) (6) ▓▓▓
**Subject:** RE: Update (Deliberative / FOUO)

Thanks, Brendan.  I will circle up with my team and get back with you.

Katie

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Tuesday, September 12, 2017 8:54 PM
**To:** Crytzer, Katherine (OL ▓▓▓ (b) (6) ▓▓▓ >
**Cc:** Bolitho, Zachary (ODA ▓▓▓ (b) (6) ▓▓▓ ; Newman, Ryan (OLP ▓▓▓ (b) (6) ▓▓▓
**Subject:** RE: Update (Deliberative / FOUO)

Hi Katie,

Thursday and Friday next week (Sept 21 and 22) are the best options, as the DAG is likely out of the office

0157

Document ID: 0.7.7168.6053

next Monday, Tuesday, and Wednesday.  Of those two days, Thursday is preferable on our end.

Please let me know if your team has significant availability issues next Thursday or Friday.  We'll work on securing a specific time (which may be difficult, given the DAG's compressed schedule).  Thanks very much.


Best,
Brendan


Brendan Groves
Counsel to the Deputy Attorney General
U.S. Department of Justice
 (b) (6)        (o)
(b) (6)        (c)



**From:** Crytzer, Katherine (OLP)
**Sent:** Monday, September 11, 2017 2:37 PM
**To:** Newman, Ryan (OL        (b) (6)        >; Groves, Brendan M. (ODAG        (b) (6)
**Cc:** Bolitho, Zachary (ODA        (b) (6)        >
**Subject:** RE: Update (Deliberative / FOUO)

Brendan,

It looks like we are ready to discuss participants and dates.  From OLP, we anticipate 5 attendees: (1) AAG Beth Williams, (2) COS Katie Crytzer, (3) PDAAG Ryan Newman, (4) DAAG Larry Rothenberg, and (5) Counsel Jenn Dickey.  What dates next week work best for the DAG and team? Thank you.

Katie

**Katie Crytzer**
**Acting Chief of Staff**
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, DC 20530
Offic        (b) (6)
Cel        (b) (6)
        (b) (6)



**From:** Newman, Ryan (OLP)
**Sent:** Monday, September 11, 2017 12:29 PM
**To:** Groves, Brendan M. (ODAG        (b) (6)
**Cc:** Bolitho, Zachary (ODA        (b) (6)        ; Crytzer, Katherine (OLP        (b) (6)        >
**Subject:** RE: Update (Deliberative / FOUO)

Sounds good to us.

Ryan Newman

Document ID: 0.7.7168.6053

Principal Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, DC 20530
offic ███(b) (6)███ | cel ███(b) (6)███

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Monday, September 11, 2017 9:51 AM
**To:** Newman, Ryan (OLP) ███████(b) (6)███████>
**Cc:** Bolitho, Zachary (ODAG) ███████(b) (6)███████; Crytzer, Katherine (OLP ███████(b) (6)███████
**Subject:** RE: Update (Deliberative / FOUO)

Hi Ryan,

Thanks very much.  We'll pass that along.

Given that the group did not reach consensus, and that the paper summarizes the group's view of the options, we're inclined to think it makes the most sense to have OLP walk through the paper with the DAG.  Rob and Jim agreed with that perspective.  Please let us know if you see it differently, and we'll be glad to discuss.

Thanks again.

Best,
Brendan

## DELIBERATIVE // FOUO

---

**From:** Newman, Ryan (OLP)
**Sent:** Monday, September 11, 2017 9:13 AM
**To:** Groves, Brendan M. (ODAG ███████(b) (6)███████>
**Cc:** Bolitho, Zachary (ODA ███████(b) (6)███████>; Crytzer, Katherine (OLP ███████(b) (6)███████
**Subject:** RE: Update (Deliberative / FOUO)

Adding Katie, OLP's chief of staff.

It's looking like early next week would probably be best for us.  Katie will circle back to lock down a time.

OLP would be happy to lead the presentation, but how do you all feel about having all the members of the working group present?

Ryan Newman
Principal Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, DC 20530
offic ███(b) (6)███ | ce ███(b) (6)███

---

**From:** Groves, Brendan M. (ODAG)

0159

**Sent:** Friday, September 8, 2017 6:24 PM
**To:** Newman, Ryan (OLP) ███████(b) (6)███████>
**Cc:** Bolitho, Zachary (ODA ███████(b) (6)███████>
**Subject:** Update (Deliberative / FOUO)

Hi Ryan,

Zac and I briefed Rob and Jim on the media policy review.  Though they have yet to review OLP's paper in detail, they greatly appreciated OLP's leadership in convening the group and refining the various options.  The next step is to brief the DAG, which could happen as soon as late next week.

We imagine that OLP would lead the briefing, walking the DAG through each of the five options.  Jim wondered whether OLP could put together a (short) power point presentation outlining the options, and perhaps deliver the presentation in the JCC room with a screen.

Could you let us know whether (1) who would attend on your end and (2) whether late next week is too soon?

Also, as we mentioned to Rob and Jim, Zac and I will shortly send some suggested stylistic edits on the paper.  Most of the edits represent attempts to distill and clarify certain language.  We'll try to get them to you ASAP.

Thanks very much, as always, for your work and leadership.

Best,
Brendan

Brendan Groves
Counsel to the Deputy Attorney General
U.S. Department of Justice
 (o)
████(b) (6)████ (c)

0160

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, September 15, 2017 2:53 PM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | FW: final draft of options paper |
| **Attachments:** | Media Policy White Paper_9.15.17 pm.docx |

If you're working right now, can you give this a quick read? I'll call you. May move the briefing next week to Friday

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Friday, September 15, 2017 2:39 PM
**To:** Groves, Brendan M. (ODAG       (b) (6)
**Cc:** Crytzer, Katherine (OLP       (b) (6)         >; Newman, Ryan (OLP       (b) (6)        >; Bolitho, Zachary (ODAG       (b) (6)
**Subject:** final draft of options paper

Attached please find the final draft of the OLP paper on options for changes to the media subpoena policy, as cleared by AAG Williams.  We incorporated your edits and added some more material as you indicated.

I should note that on two points you raised, we used slightly different formulas:



-On page 5,                                                                           (b)
                                                                                    (5)

-On page 7,                                                          (b) (5)

                                                                        (b) (5)
                                                    So, it seems that we can end the paragraph here and still be accurate in raising the issue.

Laurence E. Rothenberg
Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
    (b) (6)

0176

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, September 15, 2017 3:53 PM |
| **To:** | Crowell, James (ODAG) |
| **Cc:** | Murphy, Marcia (ODAG); Bolitho, Zachary (ODAG) |
| **Subject:** | RE: Scheduling - Briefing on the Review of DOJ's Media Subpoena Policy |
| **Attachments:** | Media Policy White Paper_9.15.17 Final.docx |

Jim,

Zac and I have prepared a binder on possible revisions to the media subpoena policy for the DAG's weekend book. Please find attached a memo that canvasses the options identified by the OLP-led media subpoena policy review group. I will shortly deliver the briefing book  which includes the memo  to you and Marcy. We apologize that we weren't able to finalize the package before noon today; OLP sent the final version of the memo moments ago.

We appreciate your help.

Best,
Brendan

**From:** Crowell, James (ODAG)
**Sent:** Wednesday, September 13, 2017 6:28 PM
**To:** Groves, Brendan M. (ODAG) ▮▮▮▮▮(b) (6)▮▮▮▮▮
**Cc:** Murphy, Marcia (ODA ▮▮▮▮(b) (6)▮▮▮▮ >; Bolitho, Zachary (ODAG ▮▮▮▮(b) (6)▮▮▮▮ >;
Gamble, Nathaniel (ODAG) ▮▮▮▮(b) (6)▮▮▮▮ >
**Subject:** Re: Scheduling - Briefing on the Review of DOJ's Media Subpoena Policy

Good by me.

Sent from my iPhone

On Sep 13, 2017, at 6:10 PM, Groves, Brendan M. (ODAG) ▮▮▮▮(b) (6)▮▮▮▮ > wrote:

Jim, Marcy,

Zac and I recently briefed Rob and Jim on the OLP-led review of DOJ's media subpoena policy. Rob and Jim indicated that the next step involved a briefing to the DAG. The briefing would take at least 30 minutes.

OLP leadership are available next Thursday and Friday. (On Thursday, they said they are available before 4 pm). They could also be available the following week.

Provided Jim agrees, can we try and schedule a briefing for next week or the following week? Jim, we will separately discuss attendees with you. We're grateful for your help.

0191

Document ID: 0.7.7168.6076

Best,
Brendan

Brendan Groves
Counsel to the Deputy Attorney General
U.S. Department of Justice
 (o)
(b) (6) (c)

Document ID: 0.7.7168.6076

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, September 15, 2017 6:15 PM |
| **To:** | Newman, Ryan (OLP); Crytzer, Katherine (OLP); Rothenberg, Laurence E (OLP) |
| **Cc:** | Bolitho, Zachary (ODAG) |
| **Subject:** | RE: final draft of options paper |
| **Attachments:** | Media Policy White Paper_9.15.17 Final.docx |

Colleagues,

Please find attached the final version of the memo we delivered to the DAG.  It contains minor stylistic edits and corrects a couple of typos (some of which no doubt occurred as a result of our earlier edits).

Also, the briefing has moved to next Friday, Sept 22, at 2:30 pm.  We look forward to discussing your plans for the briefing next week. Many thanks again for your leadership and counsel on this issue.

Best,
Brendan

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Friday, September 15, 2017 2:39 PM
**To:** Groves, Brendan M. (ODAG ▮▮▮ (b) (6) ▮▮▮
**Cc:** Crytzer, Katherine (OLP ▮▮▮ (b) (6) ▮▮▮; Newman, Ryan (OLP ▮▮▮ (b) (6) ▮▮▮>; Bolitho, Zachary (ODAG ▮▮▮ (b) (6) ▮▮▮
**Subject:** final draft of options paper

Duplicative Material

Document ID: 0.7.7168.6078

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, September 15, 2017 6:18 PM |
| **To:** | Gauhar, Tashina (ODAG) |
| **Cc:** | Bolitho, Zachary (ODAG) |
| **Subject:** | Options Memo |
| **Attachments:** | Media Policy White Paper_9.15.17 Final.docx |

Tash, please find attached the options memo for revising the media subpoena policy. We would appreciate your insight. OLP will brief the DAG on the options next Friday at 2:30. We hope you can join.

Best,
Brendan

Brendan Groves
Counsel to the Deputy Attorney General
U.S. Department of Justice
 (o)
(b) (6) (c)

Document ID: 0.7.7168.6080

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Thursday, September 21, 2017 5:52 PM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | Media Policy White Paper_9.15.17 Final |
| **Attachments:** | Media Policy White Paper_9.15.17 Final.docx |

This should be the current version.

Document ID: 0.7.7168.6092

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Thursday, September 21, 2017 6:18 PM |
| **To:** | Crytzer, Katherine (OLP); Newman, Ryan (OLP); Rothenberg, Laurence E (OLP) |
| **Cc:** | Groves, Brendan M. (ODAG) |
| **Subject:** | FW: Scanned document |
| **Attachments:** | Options for Changes to the DOJ Policy on Obtaining Info. from Media.pdf |

All,

Attached please find handwritten edits to the 50.10 memo that Brendan and I received this afternoon from PADAG Rob Hur.  He has asked that these changes be made before the memo is provided to the DAG.  Brendan and I will take care of making the changes and getting the document back to Rob.  But, we wanted you to see the changes in case you had any objections.

Thanks again for your hard work.

Best,
Zac

---

**From:** Atwell, Tonya (ODAG)
**Sent:** Thursday, September 21, 2017 6:02 PM
**To:** Bolitho, Zachary (ODAG                    (b) (6)
**Subject:** Scanned document

Zachary,

Please, see the attached.

Thank you,
Tonya

Document ID: 0.7.7168.6096

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Friday, September 22, 2017 9:17 AM |
| **To:** | Groves, Brendan M. (ODAG) |
| **Subject:** | Edits |
| **Attachments:** | Media Policy White Paper_9.15.17 Final (002).docx |

Brendan,

Attached is the version of the 50.10 policy that includes Rob's edits.  I will bring you the copy with Rob's handwritten edits.  Would you please go through and make sure I haven't missed any edits or misunderstood his handwritten remarks?>

Thanks!
Zac

0225

Document ID: 0.7.7168.6100

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, September 22, 2017 2:39 PM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | Media Policy White Paper_9.22.17 - DELIBERATIVE - FOUO |
| **Attachments:** | Media Policy White Paper_9.22.17.docx |
| **Importance:** | High |

Zac,

A thousand thanks for inputting Rob's edits.  The attached document includes a few other minor fixes.  Can you give me a call when you get a chance?  In one place, Rob removed spaces from an ellipses, but he didn't do that in another instance (page 2). I'd appreciate your guidance.

I'm reading the document one last time before trying to place revised copies in the binders.

Brendan

0240

Document ID: 0.7.7168.6102

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, September 22, 2017 3:54 PM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | RE: Media Policy White Paper_9.22.17 - DELIBERATIVE - FOUO |
| **Attachments:** | Media Policy White Paper_9.22.17.docx |
| **Importance:** | High |

Additional edits:

Pg 6 ████████████████████████ (b) (5) ████████████████
████████████████████████████████████████████████████
████████████

████████████████████████ (b) (5) ████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████

-in the last paragraph, I also pushed "e-" to the next line.

8: added "the" befo ████ (b) (5) ████ Let me know if you disagree with that.

12: what do you think about removin ████████████ (b) (5) ████████████
████████████████████"?  I haven't removed it.

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Friday, September 22, 2017 2:39 PM
**To:** Bolitho, Zachary (ODAG ████████ (b) (6) ████████
**Subject:** Media Policy White Paper_9.22.17 - DELIBERATIVE - FOUO
**Importance:** High

Duplicative Material

0255

Document ID: 0.7.7168.6103

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Monday, September 25, 2017 4:33 PM |
| **To:** | Groves, Brendan M. (ODAG) |
| **Subject:** | Thoughts? |
| **Attachments:** | Media Policy White Paper_9.22.17 (004).docx |

I made some more edits, which are in track changes.  Is this too much?

Thanks,
Zac

0270

Document ID: 0.7.7168.6130

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Tuesday, September 26, 2017 9:40 PM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | Media Policy White Paper_9.26.17 |
| **Attachments:** | Media Policy White Paper_9.26.17.docx |

Zac,

Please find my edits attached. I think you'll want to breeze through it one last time.  Like you, I made a number of changes.

If you would, please be sure to review pages 9-10 and 14-15.  I'm grateful for your partnership on this project.

Brendan

Document ID: 0.7.7168.6135

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Wednesday, September 27, 2017 1:22 PM |
| **To:** | Rothenberg, Laurence E (OLP) |
| **Cc:** | Newman, Ryan (OLP); Groves, Brendan M. (ODAG) |
| **Subject:** | 50.10 memo with nits |
| **Attachments:** | Media Policy White Paper_9.26.17(005).docx |

Larry,

Attached is a newly edited version of the 50.10 memo with some additional minor nits. As I explained on the phone, please forgive us for making these nits. Brendan and I simply want to avoid getting this sent back to us again from our superiors with edits. Almost all of the changes are little things. If you have any objections to the changes, please let us know. We'd like to have this back ASAP because the DAG will likely review it tomorrow morning or afternoon.

Also, please let me know if there is a time we could meet later this afternoon to discuss the briefing. I will try to track down Zach Terwilliger (the DAG, Rob, and Jim are all out of the office) to see if he has any thoughts on what the DAG envisions for the briefing.

Many thanks,
Zac

0302

Document ID: 0.7.7168.6137

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Wednesday, September 27, 2017 5:48 PM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | FW: 50.10 memo with nits |
| **Attachments:** | Media Policy White Paper_9.26.17(005) OLP.docx |

Zac, are you around?  I'm running out but will be back after 7:30 or so.  I think their edits are fine.  We'll now need to accept all of the track changes and read over the document with a fine-toothed comb one more time.

Best,
Brendan

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Wednesday, September 27, 2017 5:02 PM
**To:** Bolitho, Zachary (ODAG (b) (6) >
**Cc:** Newman, Ryan (OLP (b) (6) ; Groves, Brendan M. (ODAG (b) (6) >
**Subject:** RE: 50.10 memo with nits

We had a few comments on the draft for your consideration in margin notes--some nits on bottom of p. 2 and top of p.9, and some thoughts on p. 10 and 11.

---

**From:** Bolitho, Zachary (ODAG)
**Sent:** Wednesday, September 27, 2017 1:22 PM
**To:** Rothenberg, Laurence E (OLP (b) (6)
**Cc:** Newman, Ryan (OLP (b) (6) ; Groves, Brendan M. (ODAG (b) (6) >
**Subject:** 50.10 memo with nits

Duplicative Material

0318

Document ID: 0.7.7168.6140

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Thursday, September 28, 2017 9:54 AM |
| **To:** | Groves, Brendan M. (ODAG) |
| **Subject:** | RE: FYI... |
| **Attachments:** | Media Policy White Paper_9.26.17(006) OLP.docx |

Here it is.  Thanks.

**From:** Groves, Brendan M. (ODAG)
**Sent:** Thursday, September 28, 2017 9:48 AM
**To:** Bolitho, Zachary (ODAG                 (b) (6)                >
**Subject:** RE: FYI...

Thanks, Zac!  I have Rob's binder in my office. Would you mind sending me the latest version so I can insert it and give it back to him?  I can also replace the one in Jim's binder.

Let's talk later today about OLP attendees.

**From:** Bolitho, Zachary (ODAG)
**Sent:** Thursday, September 28, 2017 9:09 AM
**To:** Groves, Brendan M. (ODAG              (b) (6)              
**Subject:** FYI...

I inserted revised memo in DAG's binder. Thanks for your help.

0334

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Thursday, September 28, 2017 11:47 AM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | RE: 50.10 memo with nits |
| **Attachments:** | Media Policy White Paper_9.28.docx |

Zac,

I made 5-10 additional edits. I think we'll want to put this one in the DAG's binder. I can do that. I can also place it in Jim and Rob's binders.

Quick question: fn 7 on page 10 reference ████ (b) (5) ████….do we think that's necessary?  I think we can delete it.

Brendan

**From:** Bolitho, Zachary (ODAG)
**Sent:** Thursday, September 28, 2017 11:44 AM
**To:** Rothenberg, Laurence E (OL ██████ (b) (6) ██████
**Cc:** Newman, Ryan (OLP ██████ (b) (6) ██████>; Groves, Brendan M. (ODAG ██████ (b) (6) ██████
**Subject:** RE: 50.10 memo with nits

Larry,

I am open at 4:00.  Not sure about Brendan.

Thanks,
Zac

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Wednesday, September 27, 2017 5:58 PM
**To:** Bolitho, Zachary (ODAG ██████ (b) (6) ██████>
**Cc:** Newman, Ryan (OLP ██████ (b) (6) ██████>; Groves, Brendan M. (ODAG ██████ (b) (6) ██████
**Subject:** RE: 50.10 memo with nits

Sounds good. I can get together tomorrow after 3 pm to discuss expectations for Friday

**From:** Bolitho, Zachary (ODAG)
**Sent:** Wednesday, September 27, 2017 5:56 PM
**To:** Rothenberg, Laurence E (OL ██████ (b) (6) ██████
**Cc:** Newman, Ryan (OLP ██████ (b) (6) ██████; Groves, Brendan M. (ODAG ██████ (b) (6) ██████
**Subject:** RE: 50.10 memo with nits

Great catches, Larry.  We will make those changes and try to get this through to the DAG.

Document ID: 0.7.7168.6169

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Wednesday, September 27, 2017 5:02 PM
**To:** Bolitho, Zachary (ODAG        (b) (6)        )
**Cc:** Newman, Ryan (OLP        (b) (6)        >; Groves, Brendan M. (ODAG        (b) (6)        )
**Subject:** RE: 50.10 memo with nits

Duplicative Material

0350

Document ID: 0.7.7168.6169

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Thursday, September 28, 2017 12:24 PM |
| **To:** | Rothenberg, Laurence E (OLP); Bolitho, Zachary (ODAG) |
| **Cc:** | Newman, Ryan (OLP) |
| **Subject:** | RE: 50.10 memo with nits |
| **Attachments:** | Media Policy White Paper_9.28.docx |

Also, please find attached the **\*final\*** version of the memo.

Best,
Brendan

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Thursday, September 28, 2017 12:09 PM
**To:** Bolitho, Zachary (ODAG ████████ (b) (6) ████████
**Cc:** Newman, Ryan (OLP ████████ (b) (6) ████████>; Groves, Brendan M. (ODAG ████████ (b) (6) ████████>
**Subject:** Re: 50.10 memo with nits

That works for me.

On Sep 28, 2017, at 11:44 AM, Bolitho, Zachary (ODAG ████████ (b) (6) ████████> wrote:

Duplicative Material

Document ID: 0.7.7168.6174

Pre decisional
Deliberative
Attorney Work Product

**Options for Changes to the DOJ Policy
on Obtaining Information from Members of the Media**

I.     Introduction

At the direction of the Deputy Attorney General, OLP has examined the Department's policy (hereinafter, "media subpoena policy" or "the policy") on obtaining information from the news media.  The policy, codified at 28 C.F.R. § 50.10, governs obtaining information from, or records of, members of the news media.  It also governs questioning, arresting, or charging members of the news media.  The Deputy Attorney General has asked for options for potential changes to the policy and its implementation procedures to facilitate investigations and prosecutions of unauthorized disclosures of national defense information or of classified information (hereinafter, "unauthorized disclosures").

OLP has reviewed a variety of materials, including the current policy, previous versions of the policy, and materials from the 2013-2015 review of the then-existing policy.  We have also reviewed the Department's internal procedures for implementing the policy.[1]  We have discussed the policy extensively with members of the National Security Division, the Criminal Division, the FBI Office of the General Counsel, the Office of Public Affairs, and the U.S. Attorney's Offices for the District of Columbia and Eastern District of Virginia.  This consultation has provided OLP with the perspectives of the investigators and prosecutors who handle matters involving unauthorized disclosures.

After extensive discussion and deliberation, OLP, in consultation with the relevant components, has identified five options for improving the Department's ability to effectively investigate and prosecute unauthorized disclosure cases:



(b) (5)

---

[1] *See, e.g.*, United States Attorney's Manual § 9 13.400.

(b) (5)

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product



Below we describe: (1) the history of the policy ▮▮▮▮ (b) (5) ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (3) the options for changes, along with their advantages and disadvantages; an ▮▮▮▮▮▮▮▮ (b) (5) ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮

## II.    History of the Policy

The media subpoena policy can be traced to the use of subpoenas as part of investigations into extremist groups. In 1969, for example, prosecutors in the trial of the Chicago Seven for involvement with the riots at the 1968 Democratic National Convention subpoenaed three magazines, three television networks, and four Chicago newspapers that had covered the riots. In 1970, prosecutors subpoenaed *New York Times* reporter Earl Caldwell's notes and tapes after he reported spending hours at the Black Panthers headquarters, observing a cache of weapons and hearing calls for violence from the group's leaders. Journalists claimed that government attempts to obtain information from them adversely affected legitimate newsgathering. They said that confidential sources were inhibited from sharing information and that members of the press had been harassed because of the perception that they were working for the government.

The controversy prompted then-Attorney General John Mitchell to issue the first set of departmental guidelines for requesting subpoenas to media organizations in criminal cases. *See* John N. Mitchell, "Free Press and Fair Trial: The Subpoena Controversy," American Bar Association, St. Louis, Missouri (Aug. 10, 1970). In those guidelines, the Department promised that it would weigh the chilling effect that a media subpoena may have on the exercise of First Amendment rights "against the public interest to be served in the fair administration of justice" in every case. *Id.* at 19. Because the Department "does not consider the press 'an investigative arm of the government,'" it would make "all reasonable attempts . . . to obtain information from non-press sources" before considering a subpoena to members of the media. *Id.* It would negotiate with the press, and, if such negotiations failed, would not issue a subpoena without express authorization from the Attorney General. *Id.* To avoid using "the press as a spring board for investigations," subpoena requests would only seek information "essential to a successful investigation," as opposed to merely "peripheral, non-essential, or speculative information." *Id.* at 20. Requests would also be limited in subject matter and time, and involve information that prosecutors had "unsuccessfully attempted to obtain…from alternative non-press sources." *Id.*

Meanwhile, Caldwell's refusal to comply with the grand jury subpoena relating to the Black Panthers (and other similar cases) proceeded through the court system. Ultimately, the Supreme Court held that reporters had no special First Amendment protection from state or federal grand jury subpoenas. *Branzburg v. Hayes*, 408 U.S. 665 (1972). The Court noted that

2

0367

Pre decisional
Deliberative
Attorney Work Product

"citizens generally are not constitutionally immune from grand jury subpoenas" nor protected "from disclosing to a grand jury information that [they have] received in confidence." *Id.* at 682. Additionally, the Court explained, the First Amendment "does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability" or guarantee reporters any "constitutional right of special access to information." *Id.* at 682 84, 690. "It would be frivolous to assert," the Court stated, "that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news sources to violate valid criminal laws." *Id.* at 691.

"Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news." *Id.*  And even in cases involving informants who did not themselves commit a crime, "arguments to conceal information relevant to commission of crime have very little to recommend them from the standpoint of public policy." *Id.* at 696.  The Court accordingly refused to forge a "virtually impenetrable constitutional shield, beyond legislative or judicial control . . . to protect a private system of informers operated by the press to report on criminal conduct, a system that would be unaccountable to the public." *Id.* at 697; *see also In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141 (D.C. Cir. 2005); *New York Times v. Gonzales*, 459 F.3d 160 (2d Cir. 2006); *United States v. Sterling*, 724 F.3d 482 (4th Cir. 2013).

In response, the Department modified and formalized the guidelines in the Code of Federal Regulations, 38 Fed. Reg. 29589 (Oct. 26, 1973).  The amended 28 C.F.R. § 50.10 maintained the balancing test, along with the requirements that the Department make "all reasonable attempts" to obtain the information from non-media sources, negotiate with the media before requesting a subpoena, and obtain authorization from the Attorney General to pursue a subpoena when negotiations fail.

In 1980, the policy was further amended and its coverage expanded to cover civil cases and subpoenas for telephone toll records.  It also directed that negotiations with the news media were to be pursued where the responsible Assistant Attorney General determined that such negotiations would not pose a substantial threat to the integrity of the investigation.  Further, where notice to the media of a subpoena for toll records could not be given because of investigative concerns, the policy provided that notice could be delayed for no more than 90 days. *See* 45 Fed. Reg. 76436 (Nov. 19, 1980).  With these changes, the guidelines remained in effect until 2014.

The policy's high standards had a dramatic impact on the number of subpoenas served on the media.  During the first two years of the Nixon administration (prior to the adoption of the policy) federal prosecutors served just two media outlets   CBS and NBC   with approximately 60 subpoenas.  By contrast, during the 10 years from 2001 to 2010, the Attorney General approved only 92 media subpoenas across *all* media outlets.  Those 92 subpoenas included 89 from the Criminal Division, zero from the Civil Division, and three from the Civil Rights

3

0368

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product

Division.  The Department also repeatedly cited the strictures of the policy when opposing the need for a federal media shield law.[3]

In addition to the limits imposed by the policy, the Privacy Protection Act (PPA), 42 U.S.C. § 2000aa to 2000aa-12, presents a separate hurdle for media subpoena requests.  Congress passed the PPA in reaction to the Supreme Court's 1978 decision in *Zurcher v. Stanford Daily*, 436 U.S. 547, 551-52 (1978).  In that case, the Court held that police officers had not violated the Fourth Amendment when, pursuant to a warrant, they searched the offices of a Stanford student newspaper for negatives, pictures, and film of an assault on police officers that had occurred during police efforts to remove demonstrators from the Stanford University Hospital's administrative offices.  *See Zurcher*, 436 U.S. at 52.  The newspaper had published some such photographs under the byline of one of its staff members.  *Id.* at 551.  The district court had held that the First, Fourth, and Fourteenth Amendments forbade the issuance of a warrant to search the premises of a newspaper not suspected of a crime unless a showing could be made that a subpoena *duces tecum* was impractical.  *Id.* at 552.  The Supreme Court reversed.

Congress responded by passing the PPA.  Under the PPA, it is unlawful for government officials "to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication," unless one of two exceptions applies. 42 U.S.C. § 2000aa.  First, "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate" (known as the "suspect exception").  *Id.* at § 2000aa(1).  Second, "there is reason to believe that the immediate seizure of such materials is necessary to prevent the death of, or serious bodily injury to, a human being."  *Id.* at § 2000aa(2).  It is likewise unlawful to search or seize non-work product documentary materials possessed by such individuals, unless the request satisfies one of the exceptions above or two other exceptions related to the viability of a subpoena *duces tecum*.  *Id.* at § 2000aa(b).  Although the PPA generally provides that government officials may not use the suspect exception where "the offense to which the materials relate consists of the receipt, possession, communication, or withholding of such materials or the information contained therein," the PPA expressly provides that "such a search or seizure may be conducted . . . if the offense consists of the receipt, possession, or communication of information relating to the national defense, classified information, or restricted data."  *Id.* at §§ 2000aa(a)(1), 2000aa(b)(1).  The PPA provides a civil remedy for violations of its provisions.  *Id.* at § 2000aa-6.

---

[3] *See, e.g.*, Letter from Principal Deputy Assistant Attorney General Brian A. Benczkowski to the Hon. Lamar S. Smith, Ranking Member, Committee on the Judiciary, July 20, 2007; Testimony of Assistant Attorney General Rachel L. Brand, Hearing on "The Free Flow of Information Act of 2007," House Judiciary Comm. (June 14, 2007); Department of Justice Letter to Sen. Specter dated June 20, 2006, on S. 2831; Testimony of Deputy Attorney General Paul J. McNulty, Hearing on "Reporters' Privilege Legislation: Preserving Effective Federal Law Enforcement," Senate Judiciary Comm. (Sept. 20, 2006); Testimony of Principal Deputy Assistant Attorney General Matthew W. Friedrich, Hearing on "Examining the Department of Justice's Investigation of Journalists Who Publish Classified Information: Lessons from the Jack Anderson Case," Senate Judiciary Comm. (June 6, 2006).

0369

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product

III.    Changes to the Policy in the Previous Administration

Attorney General Eric Holder revised the policy in 2014 as a result of public pressure arising out of two cases involving unauthorized disclosures.  The first case involved the unauthorized disclosure of details about an al-Qaeda plot to bomb aircraft.  In that case, Acting Attorney General James Cole authorized subpoenas for the telephone toll records of Associated Press reporters and editors.  The second case involved an unauthorized disclosure of classified information regarding North Korea's nuclear weapons capability.  In that case, Attorney General Holder authorized a search warrant for the content of a Fox News reporter's personal e-mail account.  In the course of obtaining the warrant, the Department asserted (as required by the PPA) that the reporter was a co-conspirator in the unauthorized disclosure.  Both events produced a media outcry.

The 2014 revisions included the following new rules and procedures:

- Notice Requirement: The former requirement to notify a member of the news media of attempts to obtain his communications records or other information from third parties only if an Assistant Attorney General had affirmatively determined that doing so *would not* substantially threaten the integrity of an investigation, was changed to make notice to the member of the news media the default unless the Attorney General affirmatively determined that notification *would* substantially threaten the integrity of an investigation or risk other grave harms;
- Warrants for Work Product: The policy was changed to state that members of the Department should not be authorized to apply for a warrant to obtain work product materials or other documentary materials of a member of the news media under the PPA's suspect exception if the sole purpose was to further the investigation of a person other than the member of the news media;
- Centralization: Review of requests to obtain information was centralized in the Criminal Division's Office of Enforcement Operations (OEO);
- News Media Review Committee: A News Media Review Committee[4] was created to provide input on requests for media subpoenas; and
- DNI Certification: The Director of National Intelligence was required to certify the significance of the harm of an unauthorized disclosure and the Intelligence Community's (IC's) continued support for prosecution prior to obtaining information from the media.

Attorney General Holder made further changes to the policy in 2015.  Most of the 2015 changes made it more difficult for the Department to obtain information from the media.  Additionally, the 2015 changes added an exception to the policy for cases in which a member of the news media is a "subject" or "target" of an investigation relating to an offense committed in the course of, or arising out of, newsgathering activities.  If the Attorney General makes that

---

[4] The News Media Review Committee is composed of the Department's Chief Privacy and Civil Liberties Officer, the Director of the Office of Public Affairs, an Associate Deputy Attorney General, and two senior career Assistant United States Attorneys with relevant expertise and experience but no involvement (supervisory or otherwise) in the matter under consideration. USAM 9 13.400.K.5.

5

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product

determination, the Attorney General probably would not need to take into account the ordinary considerations for media subpoena requests.  Those considerations include, for example, that the government has exhausted all reasonable alternatives in seeking the information and that the information is essential to the investigation.  The Attorney General also need not provide notice to the affected members of the news media when seeking their records from third parties, although he may do so.  This revision, however, did not change the policy's prohibition on using the "suspect exception" in the PPA to obtain news media work product and other documentary materials if the sole purpose is to further the investigation of a person other than the member of the media, and it could not change the requirements of the PPA itself.  *See* Memorandum To All Department Employees, "Updated Policy Regarding Obtaining Information From, Or Records Of, Members Of The News Media; And Regarding Questioning, Arresting, Or Charging Member Of The News Media," Jan. 14, 2015.

IV.  (b) (5)



(b) (5)

6

0371

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product



(b) (5)

7

0372

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product



V.    Options





8

0373

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product



(b) (5)

9

0374

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product



10

0375

Pre decisional
Deliberative
Attorney Work Product

(b) (5)



0376

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product

(b) (5)



12

0377

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product



13

0378

Document ID: 0.7.7168.6174-000001

Pre decisional
Deliberative
Attorney Work Product



(b) (5)

VII.     Conclusion



(b) (5)

_____

(b) (5)

14

0379

Document ID: 0.7.7168.6174-000001

**Newman, Ryan (OLP)**

| | |
|---|---|
| **From:** | Newman, Ryan (OLP) |
| **Sent:** | Friday, September 29, 2017 10:18 AM |
| **To:** | Groves, Brendan M. (ODAG); Rothenberg, Laurence E (OLP); Bolitho, Zachary (ODAG) |
| **Subject:** | RE: 50.10 memo with nits |
| **Attachments:** | 20170928 DAG Media Subpoena Policy Briefing_v.6.PPTX |

Brendan, here is the current draft.  Beth may have some additional changes later, but she's at another meeting right now.  We'll get you a final copy later today.

Ryan Newman
Principal Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, DC 20530
offic ████ (b) (6) ████ | cel ████ (b) (6) ████

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Friday, September 29, 2017 9:26 AM
**To:** Rothenberg, Laurence E (OLP ████ (b) (6) ████ >; Bolitho, Zachary (ODAG)
████ (b) (6) ████ >
**Cc:** Newman, Ryan (OLP ████ (b) (6) ████
**Subject:** RE: 50.10 memo with nits

This is to confirm that the briefing to the DAG is, in fact, at 4 pm today in the DAG's conference room.  Zac will be back in touch to confirm attendees.

Also, Ryan, can we see a copy of the slides? Thanks!

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Thursday, September 28, 2017 12:09 PM
**To:** Bolitho, Zachary (OD G ████ (b) (6) ████
**Cc:** Newman, Ryan (OLP ████ (b) (6) ████ >; Groves, Brendan M. (OD G ████ (b) (6) ████ >
**Subject:** Re: 50.10 memo with nits

Duplicative Material

0380

**Newman, Ryan (OLP)**

| | |
|---|---|
| **From:** | Newman, Ryan (OLP) |
| **Sent:** | Friday, September 29, 2017 3:15 PM |
| **To:** | Groves, Brendan M. (ODAG); Rothenberg, Laurence E (OLP); Bolitho, Zachary (ODAG) |
| **Subject:** | RE: 50.10 memo with nits |
| **Attachments:** | 20170928 DAG Media Subpoena Policy Briefing_v.6.PPTX |

Final slide package.  We'll bring copies for everyone.

Ryan Newman
Principal Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, DC 20530
offic ████ (b) (6) ████ | cel ████ (b) (6) ████

---

**From:** Newman, Ryan (OLP)
**Sent:** Friday, September 29, 2017 10:45 AM
**To:** Groves, Brendan M. (ODAG ████ (b) (6) ████ >; Rothenberg, Laurence E (OLP)
████ (b) (6) ████ >; Bolitho, Zachary (ODAG ████ (b) (6) ████
**Subject:** RE: 50.10 memo with nits

████████████ (b) (5) ████████████

Ryan Newman
Principal Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, DC 20530
offic ████ (b) (6) ████ | cel ████ (b) (6) ████

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Friday, September 29, 2017 10:33 AM
**To:** Newman, Ryan (OLP ████ (b) (6) ████ >; Rothenberg, Laurence E (OLP)
████ (b) (6) ████ Bolitho, Zachary (ODAG ████ (b) (6) ████ >
**Subject:** RE: 50.10 memo with nits

Based on a quick scan, this looks good ████████ (b) (5) ████████

Thanks very much for your work.

---

**From:** Newman, Ryan (OLP)
**Sent:** Friday, September 29, 2017 10:18 AM

**To:** Groves, Brendan M. (ODAG ███████ (b) (6) ███████>; Rothenberg, Laurence E (OLP)
████████ (b) (6) ████████; Bolitho, Zachary (ODAG ███████ (b) (6) ███████
**Subject:** RE: 50.10 memo with nits

Duplicative Material

Document ID: 0.7.7168.6186



# Review of Media Subpoena Policy

Briefing for the Deputy Attorney General
Office of Legal Policy
September 29, 2017

*Privileged | Deliberative and Predecisional*

Document ID: 0.7.7168.6186-000001

# Attorney General Sessions

### August 4, 2017

"We respect the important role that the press plays and will give them respect, but it is not unlimited…We must balance their role with protecting our national security and the lives of those who serve in our intelligence community, the armed forces, and all law-abiding Americans."

2

*Privileged | Deliberative and Predecisional*

0404

2

Document ID: 0.7.7168.6186-000001

# Working Group

- **OLP:** AAG Beth Williams, PDAAG Ryan Newman, DAAG Larry Rothenberg, and Counsel Jenn Dickey
- **ODAG:** Counsel Zachary Bolitho and Counsel Brendan Groves
- **NSD:** DAAG George Toscas and DAAG Brad Wiegmann
- **CRM:** DAAG David Rybicki
- **USAO-DC:** Criminal Chief Jon Malis
- **USAO-EDVA:** Criminal Chief Daniel Grooms
- **OPA:** Director of Public Affairs Sarah Isgur Flores
- **FBI OGC:** Counterintelligence Unit Chief [(b)(6), (b)(7)(C) per FBI]
    - Note that not all participated in every meeting and not all commented on drafts of the memo

3

*Privileged / Deliberative and Predecisional*

Document ID: 0.7.7168.6186-000001

# Evolution of the Media Policy

➢ **1970 Policy Implemented by Attorney General Mitchell**
  • Response to controversy over federal investigations of radical groups
  • Make "all reasonable attempts . . . to obtain information from non-press sources"
  • Negotiate with the press to obtain information
  • Seek only information "essential to a successful investigation"
  • Seek information only after "unsuccessfully attempt[ing] to obtain the information from alternative non-press sources"
➢ **1973 Codified the Policy at 28 C.F.R. § 50.10**
➢ **1980 Amendments Made Policy Even More Protective of Media**
  • Extended to subpoenas for telephone toll records
  • Applied to civil cases
  • Notice must be given after 90 days

4

*Privileged | Deliberative and Predecisional*

Document ID: 0.7.7168.6186-000001

# Evolution of the Media Policy
## Privacy Protection Act of 1980 (PPA)

➤ **Unlawful** to seize work product from reporters
➤ **Except if**:
- "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate," and
- "the offense consists of the receipt, possession, or communication of information relating to the national defense, classified information, or restricted data"
  - commonly referred to as the **"suspect exception"**
➤ **Result**: Media subpoenas dropped from 100s/year in '69-'70 to 9.2/year from '01-'10

Privileged | Deliberative and Predecisional

0407

5

Document ID: 0.7.7168.6186-000001

# Evolution of the Media Policy
## 2013 and 2015 Revisions by Attorney General Holder

- ➢ Prompted by controversy over the Kim and Sachtleben leak cases
- ➢ Mostly strengthened protections for the media:
  - Requires notification to news media <u>unless</u> AG determines substantial threat to investigation
  - Prohibits warrants under the PPA "suspect exception" if sole purpose is investigation of a person other than the member of the news media
  - Requires DNI certification
  - USAM requires OEO review of all requests
  - Establishes News Media Review Committee
- ➢ **But** creates exception to most requirements where a member of the news media is a "subject" or "target" of an investigation "relating to an offense committed in the course of, or arising out of, newsgathering activities"

6

*Privileged | Deliberative and Predecisional*

0408

6

Document ID: 0.7.7168.6186-000001

# Overview of Current Media Policy

- ➤ Aims to strike a balance between:
  - Protecting national security,
  - Ensuring public safety,
  - Promoting effective law enforcement, and
  - Safeguarding the free press
- ➤ Applies in both civil _and_ criminal cases
- ➤ Covers subpoenas, 2703(d) orders, 3123 orders, and search warrants for information from members of the news media and from third parties

7

_Privileged | Deliberative and Predecisional_

Document ID: 0.7.7168.6186-000001

# Overview of Current Media Policy

➢ In general, to obtain information under the current policy:
  - Must show that the information is **essential** to a successful investigation or prosecution / substantially important litigation;
  - Must make "**all reasonable attempts** to obtain the information from alternative, non-media sources;"
  - Must pursue **negotiations** with the reporter; and
  - The Director of National Intelligence must **certify** that the harm is significant, that the leaked information was properly classified, and that the IC supports the investigation or prosecution
➢ Must provide "**reasonable and timely notice**" to reporter
  - **Unless** "such notice would pose a clear and substantial threat to the integrity of the investigation, risk grave harm to national security, or present an imminent risk of death or serious bodily injury,"
  - **But** notice must be provided no later than **90 days** regardless

8

*Privileged | Deliberative and Predecisional*

Document ID: 0.7.7168.6186-000001

# Overview of Current Media Policy

➢ **"Subject or Target" Exception:**
  - If AG determines that reporter is a "**subject or target** of an investigation relating to an offense committed in the course of, or arising out of, newsgathering activities:"
    - Must balance interests
    - <u>But</u> essentiality, exhaustion, negotiation, DNI certification, and notice requirements do <u>not</u> apply
  - USAM defines "subject" as "a person whose conduct is within the scope of the grand jury's investigation"
  - Would facilitate access to <u>toll records</u>, but <u>not</u> necessarily <u>content</u>

➢ **Exigent Circumstances Exception:**
  - DAAG for CRM may authorize subpoenas and court orders for <u>toll records</u> if necessary to prevent terrorism, a significant and articulable harm to national security, death, kidnapping, substantial bodily harm, offenses against minors, or destruction of critical infrastructure

9

*Privileged | Deliberative and Predecisional*

Document ID: 0.7.7168.6186-000001

# Overview of Current Media Policy

➤ **PPA's "Suspect Exception:"**

- Can obtain warrant for <u>contents</u> of communications only if (1) probable cause exists and (2) offense involves unauthorized disclosure

➤ **Limits on PPA's "Suspect Exception" Under Media Policy:**

- May <u>not</u> obtain warrant for "work product materials or other documentary materials" of reporter under the "suspect exception" if the <u>sole purpose</u> is to further the investigation of a person <u>other than</u> the reporter

- <u>Bottom line</u>: Cannot obtain warrant for <u>contents</u> of communications <u>unless</u> government intends to investigate reporter <u>and</u> "suspect exception" is satisfied

➤ **Exigent Circumstances Exception:**

- DAAG for CRM may authorize application for warrant for <u>contents</u> of communications if "immediate seizure . . . is necessary to prevent the death of, or serious bodily injury to, a human being"

10

*Privileged | Deliberative and Predecisional*

Document ID: 0.7.7168.6186-000001



0413

Document ID: 0.7.7168.6186-000001



0414

12

Document ID: 0.7.7168.6186-000001



0415

13

Document ID: 0.7.7168.6186-000001



Document ID: 0.7.7168.6186-000001



(b) (5)

0417

15

Document ID: 0.7.7168.6186-000001


(b) (5)

0418

16

Document ID: 0.7.7168.6186-000001



(b) (5)

0419

17

Document ID: 0.7.7168.6186-000001



Document ID: 0.7.7168.6186-000001



0421

19

Document ID: 0.7.7168.6186-000001



Document ID: 0.7.7168.6186-000001

0422

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Saturday, October 28, 2017 12:56 PM |
| **To:** | Hill, John L. (ODAG) |
| **Cc:** | Groves, Brendan M. (ODAG) |
| **Subject:** | Media Policy White Paper_9.28.docx |
| **Attachments:** | Media Policy White Paper_9.28.docx; ATT00001.txt |

John,

I think this is the final version.

Best,
Zac

0423

Document ID: 0.7.7168.6310

**Simms, Donna Y. (ODAG)**

| | |
|---|---|
| **From:** | Simms, Donna Y. (ODAG) |
| **Sent:** | Tuesday, October 31, 2017 12:36 PM |
| **To:** | Bolitho, Zachary (ODAG); Frank, Michael (ODAG) |
| **Subject:** | FYSA _ WF 3917409 dojprod_Control_Sheet_DOJ_20171031_123456 |
| **Attachments:** | dojprod_Control_Sheet_DOJ_20171031_123456.rtf; 3917409.pdf |

Attached.

**Donna Simms**
U.S. Department of Justice
Office of the Deputy Attorney General
950 Pennsylvania Avenue, NW
Washingotn, DC  20530
(b) (6)
(b) (6)

0424

**RON WYDEN**
OREGON

RANKING MEMBER OF COMMITTEE ON
FINANCE

221 DIRKSEN SENATE OFFICE BUILDING
WASHINGTON, DC 20510
(202) 224-5244

**United States Senate**
WASHINGTON, DC 20510-3703

**COMMITTEES:**
COMMITTEE ON FINANCE
COMMITTEE ON BUDGET
COMMITTEE ON ENERGY & NATURAL RESOURCES
SELECT COMMITTEE ON INTELLIGENCE
JOINT COMMITTEE ON TAXATION

October 10, 2017

The Honorable Jefferson B. Sessions III
Attorney General
Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Attorney General Sessions:

I write to seek information on the Department of Justice's use of its surveillance powers to target journalists and news organizations as part of leak investigations.

At a televised press conference on August 4, 2017 you stated that the Department of Justice (DOJ) is ramping up its investigations on leaks and reviewing its internal policies governing investigations of journalists and their sources. As you are aware, in 2015, DOJ revised its guidelines for investigations of members of the media. These revisions were made after several incidents in which DOJ abused its surveillance authority by targeting the press to identify their sources. For example, in 2013, DOJ obtained telephone call records for 20 Associated Press phone lines, including the work and personal phone numbers of individual reporters.

The 2015 revised regulations include a requirement that the Attorney General personally approve all subpoenas and applications for court orders and warrants served to or about members of the news media. This includes including legal demands for telephone and internet records, which could reveal a journalist's sources. The 2015 revisions, while an improvement, still do not go far enough. Journalists play a critical role in our democracy and the chill associated with the government obtaining their communications records in order to identify their sources cannot be overstated.

Although federal law currently permits the government to obtain historical telephone and email records without demonstrating probable cause to a judge, DOJ can and should go above and beyond what is required by statute when investigating journalists. I urge you to expand the protections in the 2015 regulations to further require that, absent an imminent threat to Americans' safety, executive branch personnel not seek a journalist's phone or email records in order to identify the source of a leak to that journalist without a search warrant.

Any further revisions to DOJ's procedure must strengthen, not compromise these essential protections. Moreover, DOJ's power to investigate members of the media should be subjected to close scrutiny by Congress and the American people. To that end, I would appreciate prompt, complete responses to the following questions by November 10, 2017.

911 NE 11TH AVENUE
SUITE 630
PORTLAND, OR 97232
(503) 326-7525

405 EAST 8TH AVE
SUITE 2020
EUGENE, OR 97401
(541) 431-0229

SAC ANNEX BUILDING
105 FIR ST
SUITE 201
LA GRANDE, OR 97850
(541) 962-7691

U.S. COURTHOUSE
310 WEST 6TH ST
ROOM 118
MEDFORD, OR 97501
(541) 858-5122

THE JAMISON BUILDING
131 NW HAWTHORNE AVE
SUITE 107
BEND, OR 97701
(541) 330-9142

707 13TH ST. SE
SUITE 285
SALEM, OR 97301
(503) 589-4555

HTTP://WYDEN.SENATE.GOV
PRINTED ON RECYCLED PAPER

0425

Document ID: 0.7.7168.7436-000001

1. For each of the past five years, how many times has DOJ used subpoenas, search warrants, national security letters, or any other form of legal process authorized by a court to target members of the news media in the United States and American journalists abroad to seek their (a) communications records, (b) geo-location information, or (c) the content of their communications? Please provide statistics for each form of legal process.
2. Has DOJ revised the 2015 regulations, or made any other changes to internal procedures governing investigations of journalists since January 20, 2017? If yes, please provide me with a copy.

If you have any additional questions about this request, please contact Chris Soghoian on my staff at (202) 224-5244.

Sincerely,

Ron Wyden
United States Senator

0426

Document ID: 0.7.7168.7436-000001

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Wednesday, November 8, 2017 2:24 PM |
| **To:** | Gauhar, Tashina (ODAG) |
| **Subject:** | FW: 50.10 - Draft Thoughts for Tomorrow's Meeting |
| **Attachments:** | Draft 50.10 Thoughts for Tomorrow's Meeting.docx |

FYSA below and attached.  Note: Zac and I did not ask for this.  Nor did we know he was coming.

Also, are you able to attend a 50.l0 follow up meeting with Rob tomorrow? Currently scheduled for 11 am.

Best,
Brendan

---

**From:** Hill, John L. (ODAG)
**Sent:** Wednesday, November 8, 2017 2:23 PM
**To:** Hur, Robert (ODAG ▮▮▮(b) (6)▮▮▮>; Bolitho, Zachary (ODAG ▮▮▮(b) (6)▮▮▮>; Groves, Brendan M. (ODAG ▮▮▮(b) (6)▮▮▮
**Subject:** 50.10 - Draft Thoughts for Tomorrow's Meeting

Gentlemen,

In preparation for tomorrow's meeting, attached is a two-page document setting forth a few ideas for advancing this project. It draws from the very informative OLP/ODAG Options Memo and from recent experience.

Look forward to talking tomorrow.

John

John L. Hill
Counsel to the Deputy Attorney General
U.S. Department of Justice
▮▮ (b) (6) ▮▮

Document ID: 0.7.7168.6476

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Thursday, November 16, 2017 4:28 PM |
| **To:** | Groves, Brendan M. (ODAG) |
| **Subject:** | ██████ (b) (5) ██████ |
| **Attachments:** | ██(b) (5)██_Draft_Markup.docx |

Brendan,

Attached is th ████ (b) (5) ████ with some potential edits as we discussed this morning.  Feel free to tinker with it.

Best,
Zac

0430

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Wednesday, November 22, 2017 11:00 AM |
| **To:** | Hill, John L. (ODAG) |
| **Cc:** | Gauhar, Tashina (ODAG); Groves, Brendan M. (ODAG) |
| **Subject:** | RE: 50.10 |
| **Attachments:** | Draf ▮(b) (5)▮_Memo.doc  ▮(b) (5)▮_Draft_Markup.docx |

Thanks, John.

Attached please find a draft that Brendan and I have worked on regardin ▮▮▮▮▮▮(b) (5)▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I am also attaching a draft "markup" that shows one option for revising th ▮▮▮(b) (5)▮▮▮. Please note the bracketed language is meant to suggest alternatives. These are, of course, just drafts. I would be happy to explain our thinking when you have a minute.

Best,
Zac

---

**From:** Hill, John L. (ODAG)
**Sent:** Wednesday, November 22, 2017 10:44 AM
**To:** Hur, Robert (ODAG ▮▮▮(b) (6)▮▮▮>
**Cc:** Gauhar, Tashina (ODA ▮▮▮(b) (6)▮▮▮>; Bolitho, Zachary (ODAG ▮▮▮(b) (6)▮▮▮
Groves, Brendan M. (ODA ▮▮▮(b) (6)▮▮▮
**Subject:** 50.10

I just met with Curtis Gannon, Henry Whitaker, and Christine Buzzard from OLC. Bottom lin ▮▮▮(b) (5)▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮

John

John L. Hill
Counsel to the Deputy Attorney General
U.S. Department of Justice
▮▮(b) (6)▮▮

0432

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Wednesday, November 22, 2017 1:50 PM |
| **To:** | Hur, Robert (ODAG) |
| **Cc:** | Groves, Brendan M. (ODAG); Hill, John L. (ODAG); Gauhar, Tashina (ODAG) |
| **Subject:** | 50.10 materials for Monday meeting |
| **Attachments:** | Draf ▆(b) (5)▆_Memo_Version_2.doc ▆(b) (5)▆_Draft_Markup_Version_2.docx |

Rob,

We are scheduled to meet with you on Monday at 11:00 a.m. to discuss the next steps regarding 50.10.  Attached please find two documents that we would like to discuss during the meeting:

1)   Rough draft o ▆▆▆▆▆▆▆▆▆▆▆▆ (b) (5) ▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆
2)   Rough draft of revisions to th ▆▆ (b) (5) ▆▆ (in red-line so that you can see the proposed changes).

We look forward to hearing your thoughts.

Have a great Thanksgiving!
Zac

0434

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Thursday, November 30, 2017 4:41 PM |
| **To:** | Groves, Brendan M. (ODAG); Hill, John L. (ODAG); Gauhar, Tashina (ODAG) |
| **Subject:** | Possible "tiers" of revisions |
| **Attachments:** | Tiers_Possible_50.10_Options.docx |

Colleagues,

Based on our discussion with Rob, I have prepared the attached document containing possible "tiers" of changes that could be made to the 50.10 policy.  I welcome your thoughts.

Best,
Zac

Document ID: 0.7.7168.6609

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, December 1, 2017 3:58 PM |
| **To:** | Bolitho, Zachary (ODAG); Hill, John L. (ODAG); Gauhar, Tashina (ODAG) |
| **Subject:** | RE: Possible "tiers" of revisions |
| **Attachments:** | Tiers_Possible_50.10_Options.docx |

All, please see minor edits in the attached, which includes language on the working group's recommendations.  If everyone agrees, should we put this in the DAG's wknd book?

**From:** Bolitho, Zachary (ODAG)
**Sent:** Thursday, November 30, 2017 4:41 PM
**To:** Groves, Brendan M. (ODAG            (b) (6)            >; Hill, John L. (ODAG            (b) (6)            >; Gauhar, Tashina (ODAG            (b) (6)            >
**Subject:** Possible "tiers" of revisions

Duplicative Material

Document ID: 0.7.7168.6655

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, December 1, 2017 5:05 PM |
| **To:** | Gauhar, Tashina (ODAG) |
| **Subject:** | FW: DAG's weekly binder |
| **Attachments:** | 50.10_Proposed_Tiers.doc (b) (5) _Draft_Markup_Version_2 (002).docx; Draf (b) (5) _Memo_Version_3.docx |

FYSA.  We added these materials to the DAG's weekend book.

---

**From:** Bolitho, Zachary (ODAG)
**Sent:** Friday, December 1, 2017 4:50 PM
**To:** Murphy, Marcia (ODAG (b) (6) >; Hill, John L. (ODAG (b) (6) >; Groves, Brendan M. (ODA (b) (6)
**Subject:** RE: DAG's weekly binder

Marcy,

Attached please find 3 documents relating to the 50.10 meeting.  Could you please put them in the DAG's binder?  Sorry for not bringing them in paper format, but I am currently traveling.

Thanks!
Zac

---

**From:** Murphy, Marcia (ODAG)
**Sent:** Friday, December 1, 2017 3:44 PM
**To:** Hill, John L. (ODAG (b) (6) ; Bolitho, Zachary (ODAG (b) (6) ; Groves, Brendan M. (ODAG (b) (6)
**Subject:** DAG's weekly binder
**Importance:** High

Rob suggested that I check with you to see if you have anything for the binder re: the 50.10 meeting on Thursday?

Marcy Murphy
Confidential Assistant to the
 Deputy Attorney General

(b) (6)

0441

Document ID: 0.7.7168.6665

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Thursday, December 7, 2017 10:01 AM |
| **To:** | Bolitho, Zachary (ODAG) |
| **Subject:** | 50.10_Proposed_Tiers |
| **Attachments:** | 50.10_Proposed_Tiers.docx |

Made some minor edits to the tiers document.

0444

Document ID: 0.7.7168.6709

**Hill, John L. (ODAG)**

---

| | |
|---|---|
| **From:** | Hill, John L. (ODAG) |
| **Sent:** | Thursday, December 7, 2017 11:03 AM |
| **To:** | Hur, Robert (ODAG); Terwilliger, Zachary (ODAG) |
| **Subject:** | FW: DAG's weekly binder |
| **Attachments:** | 50.10_Proposed_Tiers.doc ▮(b)(5)▮_Draft_Markup_Version_2 (002).docx; Draf ▮(b)(5)▮_Memo_Version_3.docx |

Just realized you guys weren't copied on this. For today's 11:30 meeting with the DAG.

---

**From:** Bolitho, Zachary (ODAG)
**Sent:** Friday, December 1, 2017 4:50 PM
**To:** Murphy, Marcia (ODAG ▮(b)(6)▮ >; Hill, John L. (ODAG ▮(b)(6)▮ >; Groves, Brendan M. (ODA ▮(b)(6)▮
**Subject:** RE: DAG's weekly binder

Duplicative Material

0446

Document ID: 0.7.7168.7610

**Bolitho, Zachary (ODAG)**

| | |
|---|---|
| **From:** | Bolitho, Zachary (ODAG) |
| **Sent:** | Thursday, December 7, 2017 1:40 PM |
| **To:** | Groves, Brendan M. (ODAG); Hill, John L. (ODAG); Gauhar, Tashina (ODAG) |
| **Subject:** | DAG revisions |
| **Attachments:** | Draf ▮(b) (5)▮_Memo_Version_4.doc  ▮(b) (5)▮_Draft_Markup_Version_3 (002).docx |

All,

I have modified the attached documents to reflect our conversation with the DAG.  I think I captured all of his edits, but please review the documents closely to make sure I didn't miss anything.

Also, I agree with Tash's suggestion that we should meet with Rob soon to get some guidance on next steps.  Should we shoot for early next week?

Thanks!!
Zac

0447

Document ID: 0.7.7168.6710

**Hodge, Jennifer (CRM)**

| | |
|---|---|
| **From:** | Hodge, Jennifer (CRM) |
| **Sent:** | Friday, January 12, 2018 3:24 PM |
| **To:** | Hill, John L. (ODAG); Sorkin, Deborah; Hulser, Raymond (CRM) |
| **Cc:** | Groves, Brendan M. (ODAG); Gauhar, Tashina (ODAG); Bolitho, Zachary (ODAG); Zerwitz, Deborah (CRM) |
| **Subject:** | RE: 50.10 |
| **Attachments:** | 50.10 OEO Redline OEO 1-12-18 (003).docx; USAM 9 13 400 redlines January 12 2018 (002).docx |

John,

I attach an initial draft of redlines to the media policy addressi ██████████ (b) (5) ██████████

██████████████████████████████████████████████ We have added comments in the redlines to explain the proposed changes.  As we were making these changes, we also talked a lot abou ████ (b) (5) ████.

We will continue to review the policy as we move forward in the process to see if there are any other potential revisions or clarifications to be made.  We look forward to working with you and the group.

Best,

Jennifer

**From:** Hill, John L. (ODAG)
**Sent:** Thursday, January 4, 2018 3:52 PM
**To:** Hodge, Jennifer (CRM ████ (b) (6) ████ >; Sorkin, Deborah ████ (b) (6) ████ >; Hulser, Raymond (CRM ████ (b) (6) ████ >
**Cc:** Groves, Brendan M. (ODAG ████ (b) (6) ████ >; Gauhar, Tashina (ODAG ████ (b) (6) ████ ; Bolitho, Zachary (ODAG ████ (b) (6) ████ ; Zerwitz, Deborah (CRM ████ (b) (6) ████
**Subject:** RE: 50.10

OEO Team,

Thank you again for meeting with us yesterday. And thank you for offering to provide proposals to addres ██ (b) (5) ██

██████████████████████████████████████████████████ . Would it be possible to get us draft language addressing those issues by next **Friday, January 12**?

In the meantime, if you have any questions, please feel free to reach out. We look forward to continued engagement with you on this going forward.

Best,
John

**From:** Hill, John L. (ODAG)
**Sent:** Thursday, December 21, 2017 6:08 PM

0449

**To:** Hodge, Jennifer (CRM ████████ (b) (6) ████████ >; Sorkin, Deborah
████████ (b) (6) ████████ >; Hulser, Raymond (CRM ████████ (b) (6) ████████ >
**Cc:** Groves, Brendan M. (ODAG ████████ (b) (6) ████████ >; Gauhar, Tashina (ODAG ████ (b) (6) ████ ;
Bolitho, Zachary (ODA ████████ (b) (6) ████████ Zerwitz, Deborah (CRM ████████ (b) (6) ████████
**Subject:** RE: 50.10

Good evening. Let's aim to reschedule this meeting for the first week of January. How does Wednesday, the 3rd, work, perhaps at 10:00 a.m.?

John

---

**From:** Hodge, Jennifer (CRM)
**Sent:** Friday, December 15, 2017 11:59 AM
**To:** Sorkin, Debora ████████ (b) (6) ████████ >; Hill, John L. (ODA ████ (b) (6) ████ >; Hulser, Raymond (CRM ████████ (b) (6) ████████ >
**Cc:** Groves, Brendan M. (ODAG ████████ (b) (6) ████████ ; Gauhar, Tashina (ODA ████████ (b) (6) ████████ ;
Bolitho, Zachary (ODAG ████████ (b) (6) ████████ ; Zerwitz, Deborah (CRM ████████ (b) (6) ████████ >
**Subject:** RE: 50.10

John,

Deborah Zerwitz, a Senior Counsel in OEO with extensive experience with 50.10 will take Deoborah Sorkin's place next week.  I have added her to this email.

Thanks very much.

Jennifer

---

**From:** Sorkin, Deborah
**Sent:** Friday, December 15, 2017 11:42 AM
**To:** Hill, John L. (ODAG ████████ (b) (6) ████████ >; Hulser, Raymond (CRM ████████ (b) (6) ████████ >;
Hodge, Jennifer (CRM ████████ (b) (6) ████████ >
**Cc:** Groves, Brendan M. (ODAG ████████ (b) (6) ████████ >; Gauhar, Tashina (ODAG ████████ (b) (6) ████████ >;
Bolitho, Zachary (ODAG ████████ (b) (6) ████████ >
**Subject:** RE: 50.10

John,

I am sorry but I am away next week and unable to make a meeting.

Deborah

---

**From:** Hill, John L. (ODAG)
**Sent:** Friday, December 15, 2017 11:12 AM
**To:** Hulser, Raymond (CRM ████████ (b) (6) ████████ ; Hodge, Jennifer (CRM)
████████ (b) (6) ████████ Sorkin, Debora ████████ (b) (6) ████████ >
**Cc:** Groves, Brendan M. (ODAG ████████ (b) (6) ████████ ; Gauhar, Tashina (ODAG ████████ (b) (6) ████████ ;
Bolitho, Zachary (ODAG ████████ (b) (6) ████████
**Subject:** 50.10

Ray/Jennifer/Deborah,

0450

Document ID: 0.7.7168.6789

Good morning. We'd like to sit down with you and discuss 50.10 next week. I'll throw out a proposed date and time, and everyone can chime in from there re: availability.

How would Tuesday at 11:00 a.m. work?

John

0451

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Wednesday, January 24, 2018 8:11 PM |
| **To:** | Bolitho, Zachary (ODAG); Hill, John L. (ODAG) |
| **Cc:** | Gauhar, Tashina (ODAG) |
| **Subject:** | Update - Policy Review Process (DELIBERATIVE // FOUO) |
| **Attachments:** | 50.10 Draft Redline 1.19.18.docx; USAM 9 13 400 redlines 1.19.18.docx |

Team,

I've updated the policy and the USAM to incorporate the changes we discussed with the DAG and certain additional proposals from OEO (only some of which we accepted).  Please find both documents attached.  You'll note that I've placed, for now, th ████████████████ (b) (5) ████████████ ████████████████ which avoids the need to create a new section.  Let me know if you have another idea.

In terms of next steps, I'd like to propose we proceed along the following course:

1. **Meet with OLP Leadership**: <mark>I've arranged a meeting with Beth, Katie, and Larry on Monday at 4:30. Please let me know if that time works for you.</mark>  During the meeting, we will brief Beth on our progress since her briefing to the DAG some months ago.  We will also discuss the way ahead, including the need to develop a process and engagement strategy (see #2 below).

2. **Develop an Internal Process and Engagement Strategy**:  Before convening the working group, we need to develop a proposal for the DAG on how our internal process will procee ███ (b) (5) ████ ████████████████████████████████████████████ ████████████████████ <mark>To prepare the proposal, I think we should convene a meeting with ODAG, OLP, OLA, and OPA next week following our meeting with Beth.</mark>

    a.  Along those lines, I think the proposal will consist of two basic components:



        i.  **Internal Process** ████████████ (b) (5) ████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████

        ii.  ████████ (b) (5) ████████:  This section may have several subparts:

            1. ████████████████ (b) (5) ████████████████
            2. ████████████████ (b) (5) ████████████████
            ████████████████████████████████████████
            ████████████████████████████████

0472



3. **Convene the OLP-led Working Group**:  Evaluate and formally recommend changes to leadership; prepare a publicly releasable report justifying those changes, etc.

Zac, if everyone agrees with this way ahead, we should probably run this plan past Rob so he's aware.  I look forward to your thoughts.

Best,
Brendan

0473

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, January 26, 2018 6:23 PM |
| **To:** | Crytzer, Katherine (OLP) |
| **Cc:** | Bolitho, Zachary (ODAG); Gauhar, Tashina (ODAG); Hill, John L. (ODAG); Rothenberg, Laurence E (OLP) |
| **Subject:** | Policy Documents (DELIBERATIVE // FOUO) |
| **Attachments:** | 50.10 Draft Redline 1.19.18.docx; USAM 9 13 400 redlines 1.19.18.docx; 50.10_Proposed_Tiers.docx |

Hi Katie,

As promised, please find attached draft redlines to the policy and the relevant USAM provisions.  We've also attached a document that breaks down potential revisions into "Tiers" of relative priority.

As we discussed, the DAG has reviewed, and is inclined to endorse, the changes identified in Tier 1, all of which are incorporated in the attached redlines.  To note, we've placed dra ▮(b) (5)▮ which the DAG has reviewed and edited ▮(b) (5)▮. We can always revisit the placement down the road.

The redlines also include certain changes recommended by OEO.  In general, those ed ▮(b) (5)▮ ▮. The DAG has *not* reviewed those potential changes; nor has he reviewed the potential changes categorized in Tiers 2-4.  Of course, before recommending any such changes, we should very carefully consider the potential costs and benefits.  That will be a key role for the working group to play.

We look forward to our discussion on Monday.  Please let me know if you need anything else in the meantime.

Best,
Brendan

0494

Document ID: 0.7.7168.7303

**Rothenberg, Laurence E (OLP)**

| | |
|---|---|
| **From:** | Rothenberg, Laurence E (OLP) |
| **Sent:** | Friday, February 9, 2018 1:08 PM |
| **To:** | Groves, Brendan M. (ODAG) |
| **Cc:** | Bolitho, Zachary (ODAG); Hill, John L. (ODAG) |
| **Subject:** | RE: Engagement Plan |
| **Attachments:** | Media Policy - Plan.Executive Summary.2018.02.09 final.docx |

Attached pls find the engagement plan. Please let me know if you'd like to discuss and/or when you want to meet with OPA and OLA to get it going.

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Friday, February 09, 2018 10:38 AM
**To:** Groves, Brendan M. (ODAG (b) (6)
**Cc:** Bolitho, Zachary (ODA (b) (6) ; Hill, John L. (ODA (b) (6)
**Subject:** RE: Engagement Plan

We will have a written plan for you by COB today. In the meantime, I do think we can plan for an ODAG/OLP/OLA/OPA meeting, say, Tuesday?  Do you want me to set that up?

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Thursday, February 08, 2018 8:06 PM
**To:** Rothenberg, Laurence E (OLP (b) (6)
**Cc:** Bolitho, Zachary (ODA (b) (6) >; Hill, John L. (ODA (b) (6)
**Subject:** Engagement Plan

Hi Larry,

I wanted to check in on the engagement plan that Beth mentioned OLP would generate.  Please let us know how that's going and whether it makes sense to schedule a meeting with OLA and OPA.

We're very grateful for your help.

Thanks very much,
Brendan

Document ID: 0.7.7168.7354

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Friday, February 9, 2018 10:46 PM |
| **To:** | Gauhar, Tashina (ODAG) |
| **Subject:** | FW: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO) |
| **Attachments:** | Media Policy - Plan.Executive Summary.2018.02.09.docx |

Realized I forgot to CC you here.   We may meet about this internally on Monday,

**From:** Groves, Brendan M. (ODAG)
**Sent:** Friday, February 9, 2018 2:15 PM
**To:** Bolitho, Zachary (ODAG)          (b) (6)          >; Hill, John L. (ODAG          (b) (6)
**Subject:** FW: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

Gents, please see my initial suggested edits.  I think we may want to discuss.  Do folks have time at 6 tonight? I have meetings before then, unfortunately.  Otherwise, we can meet on Monday.

Best,
Brendan

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Friday, February 9, 2018 1:08 PM
**To:** Groves, Brendan M. (ODAG          (b) (6)
**Cc:** Bolitho, Zachary (ODA          (b) (6)          >; Hill, John L. (ODA          (b) (6)          >
**Subject:** RE: Engagement Plan

Duplicative Material

0501

Document ID: 0.7.7168.7357

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Tuesday, February 13, 2018 2:58 PM |
| **To:** | Bolitho, Zachary (ODAG); Hill, John L. (ODAG) |
| **Subject:** | RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO) |
| **Attachments:** | Media Policy - Plan.Executive Summary.2018.02.09.docx |

I've attached my thoughts in track changes.

**From:** Groves, Brendan M. (ODAG)
**Sent:** Tuesday, February 13, 2018 12:08 PM
**To:** Bolitho, Zachary (ODAG (b) (6) ; Hill, John L. (ODAG (b) (6)
**Subject:** RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

That works.

**From:** Bolitho, Zachary (ODAG)
**Sent:** Tuesday, February 13, 2018 12:07 PM
**To:** Hill, John L. (ODA (b) (6) >; Groves, Brendan M. (ODAG (b) (6)
**Subject:** RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

3:00 is fine.

**From:** Hill, John L. (ODAG)
**Sent:** Tuesday, February 13, 2018 12:06 PM
**To:** Bolitho, Zachary (ODAG (b) (6) >; Groves, Brendan M. (ODAG (b) (6)
**Subject:** RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

Why don't we find a time that works for all 3. How about 3:00?

**From:** Bolitho, Zachary (ODAG)
**Sent:** Tuesday, February 13, 2018 12:05 PM
**To:** Groves, Brendan M. (ODAG (b) (6) >
**Cc:** Hill, John L. (ODAG (b) (6) >
**Subject:** RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

I have a meeting at 2.  But, feel free to meet and give me a back-brief.  Thanks.

**From:** Groves, Brendan M. (ODAG)
**Sent:** Tuesday, February 13, 2018 12:04 PM
**To:** Hill, John L. (ODAG (b) (6) Bolitho, Zachary (ODAG (b) (6) >
**Subject:** RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

I have another meeting at 1.  How about 2?

**From:** Hill, John L. (ODAG)

0506

**Sent:** Tuesday, February 13, 2018 11:43 AM
**To:** Bolitho, Zachary (ODAG) ███████(b) (6)███████>; Groves, Brendan M. (ODAG ███████(b) (6)███████>
**Subject:** RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

Let's chat about this. I don't understand why we can't get to the finish line a lot sooner. How about getting together for a few minutes this afternoon   perhaps 1:00?

---

**From:** Bolitho, Zachary (ODAG)
**Sent:** Tuesday, February 13, 2018 11:11 AM
**To:** Groves, Brendan M. (ODAG ███████(b) (6)███████; Hill, John L. (ODAG) ██████(b) (6)██████>
**Subject:** RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

Sorry for the delayed response. I've looked the document and over and am happy to chat today if you'd like.  Overall, I think it looks fine.  I wonder if the timeline might be pushed up.

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Monday, February 12, 2018 3:16 PM
**To:** Bolitho, Zachary (ODAG ██████(b) (6)██████>; Hill, John L. (ODAG ██████(b) (6)██████>
**Subject:** RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

In lieu of a meeting, do you all want to review the document and convey your thoughts?  It would be good to have a way ahead today if possible so we know when to schedule the meeting with OLA/OPA.

---

**From:** Hill, John L. (ODAG)
**Sent:** Friday, February 9, 2018 2:27 PM
**To:** Groves, Brendan M. (ODAG ██████(b) (6)██████
**Cc:** Bolitho, Zachary (ODAG ██████(b) (6)██████>
**Subject:** Re: Engagement Plan (DELIBERATIVE // PRIVILEGED // FOUO)

Let's do Monday.

On Feb 9, 2018, at 2:14 PM, Groves, Brendan M. (ODAG ██████(b) (6)██████ wrote:

Duplicative Material

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Tuesday, February 13, 2018 4:48 PM |
| **To:** | Rothenberg, Laurence E (OLP) |
| **Cc:** | Crytzer, Katherine (OLP); Bolitho, Zachary (ODAG); Hill, John L. (ODAG) |
| **Subject:** | RE: Engagement Plan (DELIBERATIVE // FOUO) |
| **Attachments:** | Media Policy - Plan.Executive Summary.2018.02.09.docx |

Hi Larry,

Many thanks to you and your colleagues for preparing such a helpful plan.  We appreciate it.  Please find attached our suggested edits.

In terms of next steps, would OLP be able to pull together a meeting with OLA and OLP later this week (perhaps on Thursday or Friday) to discuss the engagement plan?  We'd also like to attend that meeting.

We plan to check in with Rob on Friday afternoon.  If possible, we'd love to relay the results of the OLA/OPA/OLP meeting on the engagement plan.  In a perfect world, we'd also like for OLP to send the materials to the expanded working group (see membership list in the engagement plan) very soon    as early as Friday afternoon    and set a meeting for next Thursday or Friday.  On that note, John will work to find time that works on the calendars of the key players next week.

Thanks again, Larry  We hope you know how much we appreciate your leadership and work on this issue.

Best,
Brendan

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Friday, February 9, 2018 1:08 PM
**To:** Groves, Brendan M. (ODA ███████(b) (6)███████>
**Cc:** Bolitho, Zachary (ODAG ███████(b) (6)███████; Hill, John L. (ODAG ███████(b) (6)███████
**Subject:** RE: Engagement Plan

Duplicative Material

0512

Document ID: 0.7.7168.7385

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Wednesday, February 14, 2018 6:36 PM |
| **To:** | Rothenberg, Laurence E (OLP); Bolitho, Zachary (ODAG); Hill, John L. (ODAG) |
| **Cc:** | Freeman, Lindsey (OLP) |
| **Subject:** | RE: Engagement Plan (DELIBERATIVE // FOUO) |
| **Attachments:** | Questions for ODAG.DOCX |

Thanks, Larry:

Adding Zac and Hill.  It might be easiest to meet briefly to address the questions in the attachment.  **Are folks available at 1 pm tomorrow (Thurs)?**

The list of attendees you prepared looks great to me.  One change:  it looks like the head of OEO may represent CRM.

Thanks to you and Lindsey for your work on this.

Brendan

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Wednesday, February 14, 2018 6:24 PM
**To:** Groves, Brendan M. (ODAG        (b) (6)
**Cc:** Freeman, Lindsey (OLP        (b) (6)
**Subject:** RE: Engagement Plan (DELIBERATIVE // FOUO)

I'm making some edits to the timing on the plan, to put on dates rather than "within a week" etc. and a few other clean-ups and then I'll send out for the Friday meeting.

I also want to double-check on two items with you before that:

1)  per the  bullet under "A" on the plan, we had some questions about substance that we wanted to discuss with you, summarized in the attached. I think we should go over those before the expanded working group meets, and perhaps before the materials go out to them;

2)  I understand that John and Katie are working on scheduling the first meeting of the expanded group based on the key players' schedules, but I also want to double check with you about who would be the right reps from various components.  We put together this list, but want to check on your thoughts, esp. on the TBDs:

OAG    Rachel Tucker

ODAG    Zach Bolitho, Brendan Groves, John Hill

OLP    Beth Williams, Mark Champoux, Larry Rothenberg, Lindsey Freeman

OLC representative TBD

NSD    George Toscas and Brad Wiegmann

0517

CRM    front office representative TBD and/or OEO representative TBD

EOUSA representative TBD

USAO-DC    Jon Malis

USAO-EDVA    Daniel Grooms

OPA    Sarah Isgur Flores

FBI OG    (b)(6), (b)(7)(C) per FBI

CIV front office representative TBD

OLA representative TBD

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Wednesday, February 14, 2018 4:57 PM
**To:** Rothenberg, Laurence E (OLP [ (b) (6) ]
**Subject:** RE: Engagement Plan (DELIBERATIVE // FOUO)

Larry, I believe I sent you our edits to the plan yesterday.  Let me know if you have any questions at all.  And, if you don't mind, it would be great if you could circulate it to Friday's group.

We're so grateful for your work.

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Wednesday, February 14, 2018 12:55 PM
**To:** Rothenberg, Laurence E (OLP [ (b) (6) ]
**Cc:** Crytzer, Katherine (OLP [ (b) (6) ]>; Bolitho, Zachary (ODAG [ (b) (6) ]>; Hill, John L. (ODAG [ (b) (6) ]>
**Subject:** RE: Engagement Plan (DELIBERATIVE // FOUO)

Thanks.  Looks like the meeting will happen at 11 on Friday.  Provided OLP had no issues with our suggested edits, would you mind sending Friday's attendees the engagement plan?

Thanks so much, Larry.

---

**From:** Rothenberg, Laurence E (OLP)
**Sent:** Wednesday, February 14, 2018 11:28 AM
**To:** Groves, Brendan M. (ODAG [ (b) (6) ]
**Cc:** Crytzer, Katherine (OLP [ (b) (6) ]>; Bolitho, Zachary (ODA [ (b) (6) ]>; Hill, John L. (ODAG) [ (b) (6) ]
**Subject:** RE: Engagement Plan (DELIBERATIVE // FOUO)

Sounds good. Would 9 am or 11 am Friday for ODAG/OPA/OLP/OLA work you?

---

**From:** Groves, Brendan M. (ODAG)
**Sent:** Tuesday, February 13, 2018 4:48 PM
**To:** Rothenberg, Laurence E (OLP [ (b) (6) ]
**Cc:** Crytzer, Katherine (OLP [ (b) (6) ]>; Bolitho, Zachary (ODAG [ (b) (6) ]>; Hill,

0518

Document ID: 0.7.7168.7398

John L. (ODAG ██████ (b) (6) ██████>
**Subject:** RE: Engagement Plan (DELIBERATIVE // FOUO)

Duplicative Material

Document ID: 0.7.7168.7398

**Rothenberg, Laurence E (OLP)**

| | |
|---|---|
| **From:** | Rothenberg, Laurence E (OLP) |
| **Sent:** | Thursday, February 15, 2018 12:06 PM |
| **To:** | Boyd, Stephen E. (OLA); Flores, Sarah Isgur (OPA); Groves, Brendan M. (ODAG); Bolitho, Zachary (ODAG); Hill, John L. (ODAG); Williams, Beth A (OLP); Champoux, Mark (OLP); Freeman, Lindsey (OLP) |
| **Cc:** | Crytzer, Katherine (OLP) |
| **Subject:** | engagement plan |
| **Attachments:** | Media Subpoena Policy - Strategy 2018.02.14.docx |

Attached is the engagement plan that OLP has put together for discussion tomorrow.

If no one minds, I will call in, as Friday's are my telework day.

Laurence E. Rothenberg
Deputy Assistant Attorney General
Office of Legal Policy
U.S. Department of Justice
████ (b) (6) ████

Document ID: 0.7.7168.7401

*Pre-Decisional and Deliberative*
*Attorney Work Product*
*2/14/18*

# Process to Determine and Finalize Potential Revisions to
# Media Subpoena Policy

This memo delineates a process for: (1) determining and finalizing any proposed revisions to the Media Subpoena Policy, and (2 ████████████████████ (b) (5) regarding the proposed changes.

**A. Determine and Finalize Proposed Revisions to the Media Subpoena Policy an** ████ (b) (5) ████
████████████

- Meeting with OLA/OPA/ODAG/OLP to discus ████████ (b) (5) ████████. To be held on 2/16/2018.

- Reconvene Working Group with expanded membership: OAG, ODAG, OLP, OLC, NSD, CRM, EOUSA, USAO-DC, USAO-EDVA, OPA, FBI OGC, CIV, OLA. To be held on 2/23/2018.

- Working Group to reach <u>agreement on the proposed substantive changes to the Media Subpoena Policy</u>. Issues to consider include:

(b) (5)

  - To be completed by 3/31/2018

- OLA/OPA/ODAG/OLP (others as needed) to devise a <u>strategy for</u> (b) (5) ████████, which should include:

(b) (5)

1

0522

Document ID: 0.7.7168.7401-000001

*Pre-Decisional and Deliberative*
*Attorney Work Product*
*2/14/18*



(b) (5)

- To be completed by 3/15/2018

(b) (5)

2

Document ID: 0.7.7168.7401-000001

*Pre-Decisional and Deliberative*
*Attorney Work Product*
*2/14/18*

(b) (5)



(b) (5)

3

0524

*Pre-Decisional and Deliberative*
*Attorney Work Product*
*2/14/18*

## Summary of Decisions To Be Made By Relevant Stakeholders At Each Stage:



| | **Stage I:** Finalize Proposed Revisions to the Media Subpoena Policy an ▓(b) (5)▓ | (b) (5) |
|---|---|---|
| **Recommended timing (subject to change)** | • ▓(b) (5)▓: 3/15/2018<br>• **Finalize Proposed Revisions to the Media Subpoena Policy:** 3/31/2018 | |
| **Working Group** | • Substance of proposed Media Subpoena Policy changes<br>• ▓(b) (5)▓ | |
| **OPA/OLA** | • ▓(b) (5)▓<br>▪ ▓▓ | |
| **OPA/OLA/ ODAG/OLP** *[may include others in the Working Group]* | • ▓(b) (5)▓ | |

4

0525

Document ID: 0.7.7168.7401-000001

**Hill, John L. (ODAG)**

| | |
|---|---|
| **From:** | Hill, John L. (ODAG) |
| **Sent:** | Wednesday, February 28, 2018 11:19 AM |
| **To:** | Crytzer, Katherine (OLP) |
| **Subject:** | FW: CVE |
| **Attachments:** | 50.10_Proposed_Tiers.docx |

FYI.

Not Responsive Records

0526

Document ID: 0.7.7168.7993

**Hill, John L. (ODAG)**

| | |
|---|---|
| **From:** | Hill, John L. (ODAG) |
| **Sent:** | Thursday, April 26, 2018 9:20 AM |
| **To:** | Hill, John (USADC) |
| **Subject:** | FW: Media Subpoena Policy |
| **Attachments:** | 50.10 Draft Redline 1.19.18.docx; USAM 9 13 400 redlines 1.19.18.docx; 50.10_Proposed_Tiers.docx |

---

**From:** Hill, John L. (ODAG)
**Sent:** Wednesday, February 14, 2018 1:57 PM
**To:** Rachael Tuck          (b) (6)                    (b) (6)
**Subject:** Media Subpoena Policy

For next Friday's meeting (time still TBD), here are the documents we'll be discussing. The first (50.10) refers to the CFR, the second (9-13.400) refers to the USAM, and the third (tiers) reflects the various options. Tier I has already been vetted through the DAG. You can ignore Tier IV.

John

John L. Hill
Senior Counsel to the Deputy Attorney General
U.S. Department of Justice
    (b) (6)

0527

**Groves, Brendan M. (ODAG)**

| | |
|---|---|
| **From:** | Groves, Brendan M. (ODAG) |
| **Sent:** | Thursday, November 29, 2018 6:23 PM |
| **To:** | Flores, Sarah Isgur (OPA) |
| **Subject:** | Documents |
| **Attachments:** | USAM 9 13 400 redlines 1.19.18.docx; 50.10 Draft Redline 1.19.18.docx |

Document ID: 0.7.7168.9771

**Flores, Sarah Isgur (OPA)**

| | |
|---|---|
| **From:** | Flores, Sarah Isgur (OPA) |
| **Sent:** | Friday, November 30, 2018 10:54 AM |
| **To:** | Groves, Brendan M. (ODAG) |
| **Subject:** | RE: Documents |
| **Attachments:** | 50.10 Draft Redline 11.30.18.docx |

Made the chance to th ▇(b) (5)▇ and changed signature line at bottom. What's your schedule like today to go bother Boyd?

\*\*\*
Sarah Isgur Flores
Senior Counsel to the Deputy Attoney General
▇(b) (6)▇

**From:** Groves, Brendan M. (ODAG ▇(b) (6)▇
**Sent:** Thursday, November 29, 2018 6:23 PM
**To:** Flores, Sarah Isgur (OPA ▇(b) (6)▇
**Subject:** Documents

Document ID: 0.7.7168.9774

**Flores, Sarah Isgur (OPA)**

| | |
|---|---|
| **From:** | Flores, Sarah Isgur (OPA) |
| **Sent:** | Monday, December 31, 2018 12:05 AM |
| **To:** | O'Callaghan, Edward C. (ODAG) |
| **Subject:** | Fwd: Documents |
| **Attachments:** | 50.10 Draft Redline 11.30.18.docx; ATT00001.htm |

Document ID: 0.7.7168.9854

(b)(6) - Gary Barnett Email Address

| | |
|---|---|
| **From:** | (b)(6) - Gary Barnett Email Address |
| **Sent:** | Wednesday, January 2, 2019 6:17 PM |
| **To:** | de la Torre, Lindsey (OAG) |
| **Subject:** | Fwd: Subpoena policy |
| **Attachments:** | 50.10 Draft Redline 11.30.18.docx; ATT00001.htm |

Begin forwarded message:

**From:** "O'Callaghan, Edward C. (ODAG)                    (b) (6)
**Date:** December 31, 2018 at 2:09:32 PM EST
**To:** "Barnett, Gary E. (OAG)              (b) (6)
**Cc:** "Peterson, Andrew (ODAG)              (b) (6)
**Subject: RE: Subpoena policy**

The attached is a redline that contains comments for some of the proposed changes.  OEO had input on areas that they would like to see changed, but we are not committed to any of these at this point.  Th      (b) (5)      change remains the key one.

Edward C. O'Callaghan
     (b) (6)

-----Original Message-----
From: Barnett, Gary E. (OAG              (b) (6)
Sent: Monday, December 31, 2018 1:54 PM
To: O'Callaghan, Edward C. (ODAG)              (b) (6)              >
Subject: Re: Subpoena policy

Following up on this. Thanks.

On Dec 28, 2018, at 11:05 AM, Barnett, Gary E. (OAG)              (b) (6)              wrote:

Ed,

Can you send me the latest version of the draft proposal?

0551

Document ID: 0.7.7168.5160

Thanks,

Gary

0552

Document ID: 0.7.7168.5160

**Kupec, Kerri (OPA)**

| | |
|---|---|
| **From:** | Kupec, Kerri (OPA) |
| **Sent:** | Friday, January 11, 2019 6:02 PM |
| **To:** | Barnett, Gary E. (OAG); de la Torre, Lindsey (OAG); Scott, McGregor (USACAE) |
| **Subject:** | FW: Per foner ... summary of my reporting so far |

See below. He plans to run this story on Monday. We should discuss.

**From:** John Solomo ████████ (b) (6) ████████
**Sent:** Friday, January 11, 2019 3:45 PM
**To:** Kupec, Kerri (OPA ████ (b) (6) ████ >; John Solomo ████ (b) (6) ████
**Subject:** Per foner ... summary of my reporting so far

For months now, the Justice Department very quietly has been working on a revision to its guidelines governing how, when and why prosecutors may obtain the records of journalists, particularly in leak cases.

The work has been supervised by Deputy Attorney General Rod Rosenstein's office, especially since former Attorney General Jeff Sessions departed, but it is not yet wrapped up.

Acting Attorney General Matt Whitaker is aware of the effort but has not yet been given a final recommendation. Sources close to Whitaker say he will await final judgment until he sees the recommendations but is skeptical both on a legal and political front about loosening the rules too much.

"After a lengthy period of turmoil and regular criticism from President Trump, DOJ has enjoyed a period of calm normalcy that has put employees' focus back on their work and not the next tweet. Matt doesn't want to disrupt that unless a strong legal case can be made," said a source close to the acting AG. "He's skeptical of the legal precedent and to date no one has delivered a recommendation or rationale yet."

The current guidelines have been in place since Bill Clinton was president and Janet Reno was attorney general and were designed to strike a balance between law enforcement investigative interests and the First Amendment rights of reporters.

In layman's terms, the current system requires prosecutors in most cases to exhaust all obvious investigative methods for identifying leaks before seeking to intrude on a journalist's free speech rights

In addition, the rules generally have required Justice to alert news organizations in advance of a possible subpoena, giving both sides a chance to negotiate before the subpoena   viewed as a nuclear button by most journalists   gets pushed.

Multiple sources familiar with the ongoing Justice review tell me there have been two main goals of the current review. The first is to lower the threshold that prosecutors must meet before requesting subpoenas for journalists' records; the second is to eliminate the need to alert a news media organization that Justice intends to issue a subpoena.

0553

Document ID: 0.7.7168.5161

With Rosenstein sending signals this week he plans to step aside in a few weeks, palace intrigue has begun to rise inside Justice about whether the rule changes will be finished and recommendations sent to Whitaker.

If not, a process begun under Sessions could drag into the tenure of a new attorney general. Trump has nominated William Barr for the job, which Barr held previously under President George H.W. Bush three decades earlier.

According to my sources, the arguments for changing the rules emanate from the stresses that a massive increase in criminal leak investigations have placed on the DOJ.

Sessions disclosed more than a year ago that there has been a three-fold increase in criminal leak probes, which have ensnared everyone from the former deputy director of the FBI Andrew McCabe to a senior Senate staffer who handled classified documents for Congress.

Advocates for the change argue that prosecutors have spent inordinate time and resources trying to find leakers that could be more easily detected via the reporting news organization's subpoenaed records.  The savings in resources could be deployed to other criminal enforcement endeavors.

The advocates also argue the current rules create journalists as a special class whose First Amendment rights are elevated above those of other Americans, something they don't believe the Founding Fathers would have intended. "The view is all men and woman were created equal and that becoming a journalist shouldn't suddenly change that equilibrium," explained one source.

Journalists, on the other hand, are certain to be alarmed by any proposed change, just like they were when the Obama administration escalated its prosecutions of leakers and targeted journalists like James Rosen for scrutiny just because of what they reported.

For a quarter century or more, the current rules have stood even as the breadth of national security leaks and the rise of professional leakers like Julian Assange and Edward Snowden have proliferated.

The Rosenstein effort, whether successful or not, is certain to foster a debate.

I, for one, have a special vantage point molded by personal experience.

As an investigative journalist for The Associated Press back at the start of George W. Bush' administration, the Justice Department and more specifically then Deputy Attorney General Robert Mueller (yes the same one now running the Russia investigation) subpoenaed my phone records without first giving AP notice.

Justice then took special steps to delay notifying me for months, a delay that allowed Mueller's nomination as FBI director to be confirmed by the Senate before lawmakers could be alerted to the intrusion on my First Amendment-protected reporting.

There was an outcry, but it didn't stop the Justice Department from further intrusion. A few months after seizing my phone records without the normal notification, the DOJ went a step further and seized by personal mail through the FBI where Mueller now was the boss.

But this time, they did not use a subpoena or warrant. Instead they used an archaic law known as

0554

Document ID: 0.7.7168.5161

border search authority to open a package coming to me from the Phillipines that included a legacy FBI lab report sent to me by a source.

The report was neither classified nor deemed sensitive. It simply was embarrassing to the FBI because it showed the bureau was aware of Al-Qaida terrorist plots targeting airliners well before the 9-11 massacres.

After finding the report, the FBI kept the document from me without seeking a warrant or subpoena, a clear and unequivocal violation of my Fpurt Amendment protections against illegal search and seizure.

When my package didn't arrive I became suspicious and eventually proved the FBI had confiscated it illegally. When confronted, the FBI admitted it had engaged in wrongdoing and the bureau, DOJ and AP lawyers worked together to put rules in place to avoid the type of abuses I had been subjected to.

My case showed even with rules in place, DOJ and FBI had the means, motive and will to trample on the First Amendment rights inherent in a free press. Furthermore, I saw the chilling effect that government's intrusion had on my professional work: well-intentioned sources were afraid to talk to me or meet with me for fear they would be caught in a dragnet.

It took months and years to recover from the harm that was done.


--
John Solomon
Executive Vice President
The Hill
██ (b) (6) ██

0555

Document ID: 0.7.7168.5161

**Kupec, Kerri (OPA)**

| | |
|---|---|
| **From:** | Kupec, Kerri (OPA) |
| **Sent:** | Friday, January 11, 2019 6:02 PM |
| **To:** | O'Callaghan, Edward C. (ODAG); Rosenstein, Rod (ODAG) |
| **Subject:** | FW: Per foner ... summary of my reporting so far |

See below    he plans to run Monday. We can weigh in.

**From:** John Solomo                      (b) (6)                      >
**Sent:** Friday, January 11, 2019 3:45 PM
**To:** Kupec, Kerri (OPA            (b) (6)            ; John Solomo            (b) (6)
**Subject:** Per foner ... summary of my reporting so far

Duplicative Material

0556

Document ID: 0.7.7168.9869

**Flores, Sarah Isgur (ODAG)**

| | |
|---|---|
| **From:** | Flores, Sarah Isgur (ODAG) |
| **Sent:** | Tuesday, January 15, 2019 12:34 PM |
| **To:** | O'Callaghan, Edward C. (ODAG) |
| **Subject:** | Fwd: Media Subpoena Policy |

A) we need to decide whethe ████████████████ (b) (5) ████████████
███████████

B ██████████████████████ (b) (5) ██████████████████
███ .

C ██████████████████████ (b) (5) ██████████████████
███████████████████████ .

Begin forwarded message:

**From:** "Laco, Kelly (OPA) ████████ (b) (6) ████████
**Date:** January 15, 2019 at 12:22:14 PM EST
**To:** "Flores, Sarah Isgur (ODAG)" ████████ (b) (6) ████████ >
**Subject: FW: Media Subpoena Policy**

**From:** Saagar Enjeti <enjeti@dailycaller.com>
**Sent:** Tuesday, January 15, 2019 12:21 PM
**To:** Laco, Kelly (OP ████████ (b) (6) ████████
**Subject:** Re: Media Subpoena Policy

"The proposed policy would adjust existing guidance which provides 45-90 days notice of intent to subpoena any third party related to a media leak investigation. The new policy would instead remove these timeline strictures on federal investigators"

Saagar Enjeti
White House Correspondent
The Daily Caller
P ████ (b) (6) ████
T: @esaagar

On Tue, Jan 15, 2019 at 11:42 AM Saagar Enjeti <enjeti@dailycaller.com> wrote:

No problem

On Tue, Jan 15, 2019 at 11:41 AM Laco, Kelly (OPA) ████████ (b) (6) ████████ > wrote:

Document ID: 0.7.7168.9883

Saagar    thanks, yes happy to connect. Can you give me a call at noon?

**Kelly Laco**
Office of Public Affairs
Department of Justice
Office ▇▇ (b) (6) ▇▇
Ce ▇▇ (b) (6) ▇▇

**From:** Saagar Enjeti <enjeti@dailycaller.com>
**Sent:** Tuesday, January 15, 2019 11:22 AM
**To:** Kupec, Kerri (OPA ▇▇▇ (b) (6) ▇▇▇
**Cc:** Laco, Kelly (OPA ▇▇▇ (b) (6) ▇▇▇ >

**Subject:** Re: Media Subpoena Policy

Hi Kelly,

As Kerri mentioned we're doing a story on the media subpoena policy based on an OTR we did with Acting AG Whitaker yesterday. We'll attribute the information to a senior DOJ official.

I want to go over some of the specifics mentioned and get the story right.

Can you talk on the phone sometime soon? I' ▇▇ (b) (6) ▇▇

Saagar Enjeti
White House Correspondent
The Daily Caller
P ▇▇ (b) (6) ▇▇
T: @esaagar

On Tue, Jan 15, 2019 at 11:17 AM Kupec, Kerri (OPA ▇▇▇ (b) (6) ▇▇▇ > wrote:

> Kelly, please work with Saagar on his media subpoena policy piece. He wants to make sure he gets it right. Thanks.
>
> **From:** Saagar Enjeti <enjeti@dailycaller.com>
> **Sent:** Tuesday, January 15, 2019 11:16 AM
> **To:** Kupec, Kerri (OP ▇▇▇ (b) (6) ▇▇▇ >
> **Subject:** Re: Media Subpoena Policy
>
> Hey Kerri, just shoot me the number of your colleague and I'll work through this.
>
> Thanks again,
>
> Saagar Enjeti
> White House Correspondent
> The Daily Caller

0558

Document ID: 0.7.7168.9883

P ████ (b) (6) ████
T: @esaagar

On Tue, Jan 15, 2019 at 11:08 AM Saagar Enjeti <enjeti@dailycaller.com> wrote:

Hi Kerri,

I just tried calling you. We would really like to report this story out now that the news is public. I believe we could characterize it in a better fashion and contextualize its effect on journalists.

Let me know soon please. Thanks!

Saagar Enjeti
White House Correspondent
The Daily Caller
P ████ (b) (6) ████
T: @esaagar

On Mon, Jan 14, 2019 at 4:10 PM Saagar Enjeti <enjeti@dailycaller.com> wrote:

Hi Kerri,

Now that The Hill has published the main contours of this policy, are we free to report on it on background purposes?

Thanks,

Saagar Enjeti
White House Correspondent
The Daily Caller
P ████ (b) (6) ████
T: @esaagar

On Fri, Jan 4, 2019 at 11:04 AM Saagar Enjeti <enjeti@dailycaller.com> wrote:

Thanks.

Saagar Enjeti
White House Correspondent
The Daily Caller
P ████ (b) (6) ████
T: @esaagar

On Fri, Jan 4, 2019 at 11:03 AM Kupec, Kerri (OPA ████ (b) (6) ████

0559

Document ID: 0.7.7168.9883

wrote:

I will, but I doubt it. There needs to be significant coordination inside the building before anything on that front is hinted at.

Sent from my iPhone

On Jan 4, 2019, at 10:59 AM, Saagar Enjeti <enjeti@dailycaller.com> wrote:

Hi Kerri,

Thanks I really appreciate you looking into this. Can you let me know sometime today if there's any movement on this?

I think we can give the considered change the proper context it needs to be written correctly.

Thanks,

Saagar Enjeti
White House Correspondent
The Daily Caller

(b) (6)

T: @esaagar

On Thu, Jan 3, 2019 at 7:37 PM Kupec, Kerri (OPA)
(b) (6)                 > wrote:

Hey, Saagar    so glad you joined us today (and great meeting you!).

I need some further clearance to mention we are considering a change. I'll circle back tomorrow.

Thanks!
Kerri

From: Saagar Enjeti <enjeti@dailycaller.com>
Sent: Thursday, January 3, 2019 4:10 PM
To: Kupec, Kerri (OPA)        (b) (6)        >
Subject: Media Subpoena Policy

Kerri,

Thanks so much for having us today! I just tried giving you a call, I'          (b) (6)

I would really like to run that media subpoena policy story if possible. Happy to agree to any attribution and to frame it in such a way that that the Department is "considering" a chance to the

0560

Document ID: 0.7.7168.9883

policy.

Let me know what you think!

Saagar Enjeti
White House Correspondent
The Daily Caller
P ███ (b) (6) ████
T: @esaagar

--
Saagar Enjeti
White House Correspondent
The Daily Caller
P ███ (b) (6) ████
T: @esaagar

Document ID: 0.7.7168.9883

**O'Callaghan, Edward C. (ODAG)**

| | |
|---|---|
| **From:** | O'Callaghan, Edward C. (ODAG) |
| **Sent:** | Thursday, June 20, 2019 8:58 AM |
| **To:** | Simms, Donna Y. (ODAG) |
| **Subject:** | Pls print in color |
| **Attachments:** | 50.10 Draft Redline 11.30.18.docx |

**Edward C. O'Callaghan**
Principal Associate Deputy Attorney General
(o ████ (b) (6) ████
( ████ (b) (6) ████

0562

Document ID: 0.7.7168.10630

**Sofer, Gregg (OAG)**

| | |
|---|---|
| **From:** | Sofer, Gregg (OAG) |
| **Sent:** | Thursday, January 30, 2020 4:06 PM |
| **To:** | Rabbitt, Brian (OAG); Levi, William (OAG) |
| **Subject:** | Media Policy White Paper_9.14.17.docx |
| **Attachments:** | Media Policy White Paper_9.14.17.docx |

Document ID: 0.7.7168.5666

**Champoux, Mark (OLP)**

| | |
|---|---|
| **From:** | Champoux, Mark (OLP) |
| **Sent:** | Tuesday, February 4, 2020 5:03 PM |
| **To:** | Hovakimian, Patrick (ODAG) |
| **Subject:** | FW: policy |
| **Attachments:** | Media Policy White Paper_9.28.docx; 20170928 DAG Media Subpoena Policy Briefing_v.6.PPTX |

FYI, from the weekend.  If this is something folks are interested in, a meeting to provide background and history is a good idea.  Thanks.

MC

⬛ (b) (6) ⬛

---

**From:** Champoux, Mark (OLP)
**Sent:** Saturday, February 1, 2020 10:00 AM
**To:** Rosen, Jeffrey A. (ODAG ⬛ (b) (6) ⬛
**Cc:** Williams, Beth A (OL ⬛ (b) (6) ⬛; DuCharme, Seth (ODA ⬛ (b) (6) ⬛
**Subject:** RE: policy

Attached are (1) the Sept. 2017 OLP memo discussing potential options to change the Department's media subpoena policy and (2) a slide deck summarizing all of the essential information from the memo.

Best bang for your buck time-wise is the slide deck.  We are happy to brief you to give you any other details about the background of this work, the discussions in 2017 and 2018 about whether to move forward, and anything else.

MC

⬛ (b) (6) ⬛

---

**From:** Rosen, Jeffrey A. (ODAG ⬛ (b) (6) ⬛
**Sent:** Friday, January 31, 2020 6:54 PM
**To:** Champoux, Mark (OLP ⬛ (b) (6) ⬛>
**Cc:** Williams, Beth A (OLP ⬛ (b) (6) ⬛>; DuCharme, Seth (ODAG ⬛ (b) (6) ⬛>
**Subject:** policy

Mark,  I am told that there was a 2017 OLP memo about considering changes to the Department' ⬛ (b) (5) ⬛ issuance of subpoenas to the media.   I would like to obtain a copy of that.  Could you locate and send?  Thanks.

Jeff

# Exhibit F

Reporters Committee for Freedom of the Press v. U.S. Department of Justice
Civil Action No. 21-cv-1294
U.S. District Court for the District of Columbia

Office of Information Policy (OIP) Vaughn Index

This Vaughn Index addresses withholdings made by OIP pursuant to FOIA Exemptions 5 and 6 in its June 2, 2022 final response.[1]  Pages containing records are organized and accounted for by whole/entire email chain for logistical purposes, i.e., where an entry contained in the release in part sections in the below Vaughn Index may identify that a Bates range containing information withheld pursuant to Exemption 5, potentially only one withholding was made in the whole/entire email chain.  For clarity of presentation, the records in this Vaughn Index are keyed to document categories which are discussed in detail in the accompanying OIP declaration. The descriptions of each record within this Vaughn Index are meant to be read in tandem with the OIP declaration, which provides a more fulsome explanation of the basis for withholding the information at issue.  The document categories, which relate to withholdings made pursuant to Exemption 5 unless otherwise noted, are as follows:

Records Released in Part

1. *Deliberative Memorandum Containing Proposed Options for Changing News Media Policy*
2. *Deliberative Briefing Slides Containing Proposed Options for Changing News Media Policy*
3. *Deliberative Discussions Regarding Drafting Memorandum*
4. *Deliberative Discussions Regarding Drafting Briefing Slides*
5. *Proposed Options Relating to Changing News Media Policy*
6. *References Which Would Disclose Withheld Deliberative Options*
7. *Deliberative Engagement Strategy*
8. *Potential Policy Modifications Being Pursued by Criminal Division*
9. *Deliberative Discussion Regarding Potential Response to Press Inquiry*
10. *Deliberative Legal Advice Regarding Potential Modification to News Media Policy*
11. *Departmental Contact Information* (Exemption 6)
12. *Third Party Contact Information* (Exemption 6)

---

[1] The Federal Bureau of Investigation (FBI) will separately provide a Vaughn Index and accompanying declaration addressing its withholdings made in OIP's June 2, 2022 final response pursuant to Exemptions 6, 7(C), and 7(E).

1

Records Withheld in Full

1. *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy*
2. *Draft Deliberative Briefing Slides Containing Options for Changing News Media Policy*
3. *Proposed Options Relating to Changing News Media Policy*
4. *Draft Deliberative Engagement Strategy*

**FOIA Exemption / Privileges Cited:**

Exemption (b)(5):  Deliberative Process Privilege (DPP); Attorney-Client Privilege (ACP)
Exemptions (b)(6):  Personal Privacy

Acronyms Used:

OAG:          Office of the Attorney General
ODAG:         Office of the Deputy Attorney General
OLA:          Office of Legislative Affairs
OLP:          Office of Legal Policy
OPA:          Office of Public Affairs
CRM:          Criminal Division
OEO:          Office of Enforcement Operations (CRM)
NSD:          National Security Division
FBI:          Federal Bureau of Investigation
USACAE:       United States Attorney's Office for the Eastern District of California

A. **Release in Part**

| Bates Number(s) | Date | Sender/Recipient/Subject OR Identifying Document Information | Withholding Category | Privilege(s) / Exemption(s) |
|---|---|---|---|---|
| 0001-0002 | 6/1/2017[2] | **From:** Jennifer Hodge (CRM) **To:** Zachary Terwilliger (ODAG) **Cc:** Raymond Hulser (CRM) **Subject:** OEO Projects | *Potential Policy Modifications Being Pursued by Criminal Division* | 5 (DPP) <br><br> 6 |
| 0006 | 8/16/2017 | **From:** Laurence Rothenberg (OLP) | *Departmental Contact Information* | 6 |

---

[2]  Note:  the date stamp and sender/recipient/subject information are provided for the top email of the referenced email chain.

2

| | | **To:** Zachary Bolitho (ODAG), Brendan Groves (ODAG), George Toscas (NSD), Brad Wiegmann (NSD), Jonathan Malis (USADC), Daniel Grooms (USAVAE), David Rybicki (CRM), Sarah Isgur Flores (OPA), [(b)(6, (b)(7)(C)] per FBI<br>**Cc:** Ryan Newman (OLP), Jennifer Dickey (OLP)<br>**Subject:** draft options memo | | |
|---|---|---|---|---|
| 0017 | 8/17/2017 | **From:** Jonathan Malis (USADC)<br>**To:** Laurence Rothenberg (OLP), Zachary Bolitho (ODAG), Brendan Groves (ODAG), George Toscas (NSD), Brad Wiegmann (NSD), Daniel Grooms (USAVAE), David Rybicki (CRM), Sarah Isgur Flores (OPA), [(b)(6), (b)(7)(C)] (OGC) (FBI)<br>**Cc:** Ryan Newman (OLP), Jennifer Dickey (OLP)<br>**Subject:** RE: draft options memo | *Departmental Contact Information* | 6 |
| 0029 | 8/18/2017 | **From:** Brad Wiegmann (NSD)<br>**To:** Jonathan Malis (USADC), Laurence Rothenberg (OLP), Zachary Bolitho (ODAG), Brendan Groves (ODAG), George Toscas (NSD), Daniel Grooms (USAVAE), David Rybicki (CRM), Sarah Isgur Flores (OPA), [(b)(6), (b)(7)(C)] (OGC) (FBI)<br>**Cc:** Ryan Newman (OLP), Jennifer Dickey (OLP)<br>**Subject:** RE: draft options memo | *Departmental Contact Information* | 6 |
| 0041-0042 | 8/20/2017 | **From:** Brendan Groves (ODAG)<br>**To:** Laurence Rothenberg (OLP) | *Departmental Contact Information* | 6 |

3

| | | Cc: Zachary Bolitho (ODAG)<br>Subject: RE: draft options memo | | |
|---|---|---|---|---|
| 0054 | 8/23/2017 | From: Brendan Groves (ODAG)<br>To: Tashina Gauhar (ODAG)<br>Subject: Fwd: revised version of the media subpoena policy options paper | *Departmental Contact Information* | 6 |
| 0067 | 8/24/2017 | From: Zachary Bolitho (ODAG)<br>To: Laurence Rothenberg (OLP)<br>Subject: RE: revised version of the media subpoena policy options paper | *Departmental Contact Information* | 6 |
| 0079 | 8/24/2017 | From: Brad Wiegmann (NSD)<br>To: Laurence Rothenberg (OLP), Beth Williams (OLP), Brendan Groves (ODAG), Zachary Bolitho (ODAG), George Toscas (NSD), Daniel Grooms (USAVAE), Jonathan Malis (USADC), [(b)(6), (b)(7)(C)] (OGC) (FBI), Sarah Isgur Flores (OPA), David Rybicki (CRM)<br>Cc: Ryan Newman (OLP), Jennifer Dickey (OLP)<br>Subject: RE: draft options memo | *Departmental Contact Information* | 6 |
| 0093 | 9/4/2017 | From: Brendan Groves (ODAG)<br>To: Zachary Bolitho (ODAG)<br>Subject: Fwd: Media Policy White Paper | *Departmental Contact Information* | 6 |
| 0107-0108 | 9/4/2017 | From: Zachary Bolitho (ODAG)<br>To: Brendan Groves (ODAG)<br>Subject: FW: hey Zac can you confirm there is no DAG staff meeting at 11:30? | *Departmental Contact Information* | 6 |
| 0123 | 9/5/2017 | From: Ryan Newman (OLP) | *Departmental Contact Information* | 6 |

4

| | | To: Zachary Bolitho (ODAG), Brendan Groves (ODAG) **Subject:** RE: Media Policy White Paper | | |
|---|---|---|---|---|
| 0124 | 9/5/2017 | **From:** Brendan Groves (ODAG) **To:** Tashina Gauhar (ODAG) **Subject:** Fwd: Media Policy White Paper | *Departmental Contact Information* | 6 |
| 0125 | 9/11/2017 | **From:** Brendan Groves (ODAG) **To:** Zachary Bolitho (ODAG) **Subject:** For Review | *Departmental Contact Information* | 6 |
| 0140 | 9/12/2017 | **From:** Zachary Bolitho (ODAG) **To:** Brendan Groves (ODAG) **Subject:** RE: For Review | *Departmental Contact Information* | 6 |
| 0156-0160 | 9/14/2017 | **From:** Brendan Groves (ODAG) **To:** Tashina Gauhar (ODAG) **Subject:** FW: Update (Deliberative / FOUO) | *Departmental Contact Information* | 6 |
| 0176 | 9/15/2017 | **From:** Brendan Groves (ODAG) **To:** Zachary Bolitho (ODAG) **Subject:** FW: final draft of options paper | *Deliberative Discussions Regarding Drafting Memorandum*<br><br>*Departmental Contact Information* | 5 (DPP)<br><br>6 |
| 0191-0192 | 9/15/2017 | **From:** Brendan Groves (ODAG) **To:** James Crowell (ODAG) **Cc:** Marcia Murphy (ODAG), Zachary Bolitho (ODAG) **Subject:** RE: Scheduling – Briefing on the Review of DOJ's Media Subpoena Policy | *Departmental Contact Information* | 6 |
| 0207 | 9/15/2017 | **From:** Brendan Groves (ODAG) **To:** Ryan Newman (OLP), Katherine Crytzer (OLP), Laurence Rothenberg (OLP) **Cc:** Zachary Bolitho (ODAG) **Subject:** RE: final draft of options paper | *Departmental Contact Information* | 6 |

5

| 0208 | 9/15/2017 | **From:** Brendan Groves (ODAG)<br>**To:** Tashina Gauhar (ODAG)<br>**Cc:** Zachary Bolitho (ODAG)<br>**Subject:** Options Memo | *Departmental Contact Information* | 6 |
|---|---|---|---|---|
| 0210 | 9/21/2017 | **From:** Zachary Bolitho (ODAG)<br>**To:** Katherine Crytzer (OLP), Ryan Newman (OLP), Laurence Rothenberg (OLP)<br>**Cc:** Brendan Groves (ODAG)<br>**Subject:** FW: Scanned document | *Departmental Contact Information* | 6 |
| 0255 | 9/22/2017 | **From:** Brendan Groves (ODAG)<br>**To:** Zachary Bolitho (ODAG)<br>**Subject:** RE: Media Policy White Paper_9.22.17 – DELIBERATIVE – FOUO | *Deliberative Discussions Regarding Drafting Memorandum*<br><br>*Departmental Contact Information* | 5 (DPP)<br><br>6 |
| 0318 | 9/27/2017 | **From:** Brendan Groves (ODAG)<br>**To:** Zachary Bolitho (ODAG)<br>**Subject:** FW: 50.10 memo with nits | *Departmental Contact Information* | 6 |
| 0334 | 9/28/2017 | **From:** Zachary Bolitho (ODAG)<br>**To:** Brendan Groves (ODAG)<br>**Subject:** RE: FYI… | *Departmental Contact Information* | 6 |
| 0349-0350 | 9/28/2017 | **From:** Brendan Groves (ODAG)<br>**To:** Zachary Bolitho (ODAG)<br>**Subject:** FW: 50.10 memo with nits | *Deliberative Discussions Regarding Drafting Memorandum*<br><br>*Departmental Contact Information* | 5 (DPP)<br><br>6 |
| 0365 | 9/28/2017 | **From:** Brendan Groves (ODAG)<br>**To:** Laurence Rothenberg (OLP), Zachary Bolitho (ODAG)<br>**Subject:** RE: 50.10 memo with nits | *Departmental Contact Information* | 6 |
| 0366-0379 | Undated | Memorandum titled "Options for Changes to the DOJ Policy on Obtaining Information from Members of the Media" | *Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) |
| 0380 | 9/29/2017 | **From:** Ryan Newman (OLP) | *Departmental Contact Information* | 6 |

6

| | | | | |
|---|---|---|---|---|
| | | **To:** Brendan Groves (ODAG), Laurence Rothenberg (OLP), Zachary Bolitho (ODAG) **Subject:** RE: 50.10 memo with nits | | |
| 0401-0402 | 9/29/2017 | **From:** Ryan Newman (OLP) **To:** Brendan Groves (ODAG), Laurence Rothenberg (OLP), Zachary Bolitho (ODAG) **Subject:** RE: 50.10 memo with nits | *Deliberative Discussions Regarding Drafting Briefing Slides* *Departmental Contact Information* | 5 (DPP) 6 |
| 0403-0422 | 9/29/2017 | Power Point presentation titled "Review of Media Subpoena Policy;" "Briefing for the Deputy Attorney General;" "Office of Legal Policy;" "September 29, 2017" | *Deliberative Briefing Slides Containing Proposed Options for Changing News Media Policy* | 5 (DPP) |
| 0424 | 10/31/2017 | **From:** Donna Simms (ODAG) **To:** Zachary Bolitho (ODAG), Michael Frank (ODAG) **Subject:** FYSA_WF3917409 dojprod_Control_Sheet_DOJ_ 20171031_123456 | *Departmental Contact Information* | 6 |
| 0427 | 11/8/2017 | **From:** Brendan Groves (ODAG) **To:** Tashina Gauhar (ODAG) **Subject:** FW: 50.10 – Draft Thoughts for Tomorrow's Meeting | *Departmental Contact Information* | 6 |
| 0430 | 11/16/2017 | **From:** Zachary Bolitho (ODAG) **To:** Brendan Groves (ODAG) **Subject:** [    (b)(5)    ] | *References Which Would Disclose Withheld Deliberative Options* | 5 (DPP) |
| 0432 | 11/22/2017 | **From:** Zachary Bolitho (ODAG) **To:** John Hill (ODAG) **Cc:** Tashina Gauhar (ODAG), Brendan Groves (ODAG) **Subject:** RE: 50.10 | *References Which Would Disclose Withheld Deliberative Options* *Deliberative Legal Advice Regarding Potential Modification to News Media Policy* *Departmental Contact Information* | 5 (DPP) 5 (DPP / ACP) 6 |
| 0434 | 11/22/2017 | **From:** Zachary Bolitho (ODAG) **To:** Robert Hur (ODAG) | *References Which Would Disclose Withheld Deliberative Options* | 5 (DPP) |

7

| | | | | |
|---|---|---|---|---|
| | | **Cc:** Brendan Groves (ODAG), John Hill (ODAG), Tashina Gauhar (ODAG)<br>**Subject:** 50.10 materials for Monday meeting | | |
| 0438 | 12/1/2017 | **From:** Brendan Groves (ODAG)<br>**To:** Zachary Bolitho (ODAG), John Hill (ODAG), Tashina Gauhar (ODAG)<br>**Subject:** RE: Possible "tiers" of revisions | *Departmental Contact Information* | 6 |
| 0441 | 12/1/2017 | **From:** Brendan Groves (ODAG)<br>**To:** Tashina Gauhar (ODAG)<br>**Subject:** FW: DAG's weekly binder | *References Which Would Disclose Withheld Deliberative Options*<br><br>*Departmental Contact Information* | 5 (DPP)<br><br>6 |
| 0446 | 12/7/2017 | **From:** John Hill (ODAG)<br>**To:** Robert Hur (ODAG), Zachary Terwilliger (ODAG)<br>**Subject:** FW: DAG's weekly binder | *References Which Would Disclose Withheld Deliberative Options*<br><br>*Departmental Contact Information* | 5 (DPP)<br><br>6 |
| 0447 | 12/7/2017 | **From:** Zachary Bolitho (ODAG)<br>**To:** Brendan Groves (ODAG), John Hill (ODAG), Tashina Gauhar (ODAG)<br>**Subject:** DAG revisions | *References Which Would Disclose Withheld Deliberative Options* | 5 (DPP) |
| 0449-0451 | 1/12/2018 | **From:** Jennifer Hodge (CRM)<br>**To: John Hill** (ODAG), Deborah Sorkin (CRM), Raymond Hulser (CRM)<br>**Cc:** Brendan Groves (ODAG), Tashina Gauhar (ODAG), Zachary Bolitho (ODAG), Deborah Zerwitz (CRM)<br>**Subject:** RE: 50.10 | *References Which Would Disclose Withheld Deliberative Options*<br><br>*Proposed Options Relating to Changing News Media Policy*<br><br>*Departmental Contact Information* | 5 (DPP)<br><br>5 (DPP)<br><br>6 |
| 0472-0473 | 1/24/2018 | **From:** Brendan Groves (ODAG)<br>**To:** Zachary Bolitho (ODAG), John Hill (ODAG) | *References Which Would Disclose Withheld Deliberative Options* | 5 (DPP) |

8

| | | | | |
|---|---|---|---|---|
| | | **Cc:** Tashina Gauhar (ODAG) **Subject:** Update – Policy Review Process (DELIBERATIVE // FUOU) | *Deliberative Engagement Strategy* | 5 (DPP) |
| 0494 | 1/26/2018 | **From:** Brendan Groves (ODAG) **To:** Katherine Crytzer (OLP) **Cc:** Zachary Bolitho (ODAG), Tashina Gauhar (ODAG), John Hill (ODAG), Laurence Rothenberg (OLP) **Subject:** Policy Documents (DELIBERATIVE // FOUO) | *References Which Would Disclose Withheld Deliberative Options* | 5 (DPP) |
| 0496 | 2/9/2018 | **From:** Laurence Rothenberg (OLP) **To:** Brendan Groves (ODAG) **Cc:** Zachary Bolitho (ODAG), John Hill (ODAG) **Subject:** RE: Engagement Plan | *Departmental Contact Information* | 6 |
| 0501 | 2/9/2018 | **From:** Brendan Groves (ODAG) **To:** Tashina Gauhar (ODAG) **Subject:** FW: Engagement Plan (DELIBERATIVE // PRIVILEGED // FUOU) | *Departmental Contact Information* | 6 |
| 0506-0507 | 2/13/2018 | **From:** Brendan Groves (ODAG) **To:** Zachary Bolitho (ODAG), John Hill (ODAG) **Subject:** RE: Engagement Plan (DELIBERATIVE // PRIVILEGED // FUOU) | *Departmental Contact Information* | 6 |
| 0512 | 2/13/2018 | **From:** Brendan Groves (ODAG) **To:** Laurence Rothenberg (OLP) **Cc:** Katherine Crytzer (OLP), Zachary Bolitho (ODAG), John Hill (ODAG) **Subject:** RE: Engagement Plan (DELIBERATIVE // FUOU) | *Departmental Contact Information* | 6 |
| 0517-0519 | 2/14/2018 | **From:** Brendan Groves (ODAG) | *Departmental Contact Information* | 6 |

9

| | | | | |
|---|---|---|---|---|
| | | **To:** Laurence Rothenberg (OLP), Zachary Bolitho (ODAG), John Hill (ODAG)<br>**Cc:** Lindsey Freeman (OLP)<br>**Subject:** RE: Engagement Plan (DELIBERATIVE // FUOU) | | |
| 0521 | 2/15/2018 | **From:** Laurence Rothenberg (OLP)<br>**To:** Stephen Boyd (OLA), Sarah Isgur Flores (OPA), Brendan Groves (ODAG), Zachary Bolitho (ODAG), John Hill (ODAG), Beth Williams (OLP), Mark Champoux (OLP), Lindsey Freeman (OLP)<br>**Cc:** Katherine Crytzer (OLP)<br>**Subject:** engagement plan | *Departmental Contact Information* | 6 |
| 0522-0525 | 2/14/2018 | Document titled "Process to Determine and Finalize Potential Revisions to Media Subpoena Policy" | *Deliberative Engagement Strategy*<br><br>*Proposed Options Relating to Changing News Media Policy* | 5 (DPP)<br><br>5 (DPP) |
| 0527 | 4/26/2018 | **From:** John Hill (ODAG)<br>**To:** John Hill (USADC)<br>**Subject:** FW: Media Subpoena Policy | *Departmental Contact Information* | 6 |
| 0529 | 11/30/2018 | **From:** Sarah Isgur Flores (OPA)<br>**To:** Brendan Groves (ODAG)<br>**Subject:** RE: Documents | *References Which Would Disclose Withheld Deliberative Options*<br><br>*Departmental Contact Information* | 5 (DPP)<br><br>6 |
| 0551-0552 | 1/2/2019 | **From:** Gary Barnett (OAG)<br>**To:** Lindsey de la Torre (OAG)<br>**Subject:** Fwd: Subpoena policy | *References Which Would Disclose Withheld Deliberative Options*<br><br>*Departmental Contact Information* | 5 (DPP)<br><br>6 |
| 0553-0555 | 1/11/2019 | **From:** Kerri Kupec (OPA)<br>**To:** Gary Barnett (OAG), Lindsey de la Torre (OAG), Scott McGregor (USACAE) | *Departmental Contact Information*<br><br>*Third Party Contact Information* | 6<br><br>6 |

10

| Bates Number(s) | Date | Sender/Recipient/Subject OR Identifying Document Information | Description of Withheld Material | Privilege(s) |
|---|---|---|---|---|
| | | **Subject:** FW: Per foner … summary of my reporting so far | | |
| 0556 | 1/11/2019 | **From:** Kerri Kupec (OPA) **To:** Edward O'Callaghan (ODAG), Rod Rosenstein (ODAG) **Subject:** FW: Per foner … summary of my reporting so far | *Departmental Contact Information* *Third Party Contact Information* | 6 6 |
| 0557-0561 | 1/15/2019 | **From:** Sarah Isgur Flores (ODAG) **To:** Edward O'Callaghan (ODAG) **Subject:** Fwd: Media Subpoena Policy | *Deliberative Discussion Regarding Potential Response to Press Inquiry* *Departmental Contact Information* *Third Party Contact Information* | 5 (DPP) 6 6 |
| 0562 | 6/20/2019 | **From:** Edward O'Callaghan (ODAG) **To:** Donna Simms (ODAG) **Subject:** Pls print in color | *Departmental Contact Information* | 6 |
| 0579 | 2/4/2020 | **From:** Mark Champoux (OLP) **To:** Patrick Hovakimian (ODAG) **Subject:** FW: policy | *References Which Would Disclose Withheld Deliberative Options* *Departmental Contact Information* | 5 (DPP) 6 |

### B. <u>Withheld in Full</u>

| Bates Number(s) | Date | Sender/Recipient/Subject OR Identifying Document Information | Description of Withheld Material | Privilege(s) |
|---|---|---|---|---|
| 0004 | Undated | Attachment to calendar item at Bates 0003; Word document titled "OLP list.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0007-0016 | 8/16/2017 | Attachment to email at Bates 0006; Word document titled "options memo.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0018-0028 | 8/17/2017 | Attachment to email at Bates 0017; Word document titled | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |

| | | "OLP options memo DRAFT 8-16-17 (jmm).docx" | | |
|---|---|---|---|---|
| 0030-0040 | 8/18/2017 | Attachment to email at Bates 0029; Word document titled "options memo (003).docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0043-0053 | 8/20/2017 | Attachment to email at Bates 0041-0042; Word document titled "options memo (004)_bmg.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0055-0066 | 8/23/2017 | Attachment to email at Bates 0054; Word document titled "options paper OLP 8_23.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0068-0078 | 8/24/2017 | Attachment to email at Bates 0067; Word document titled "options memo_ZCB_edits.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0080-0092 | 8/24/2017 | Attachment to email at Bates 0079; Word document titled "options paper OLP 8_23.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0094-0106 | 9/4/2017 | Attachment to email at Bates 0093; Document titled "Media Policy White Paper_9.4.2017.pdf" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0109-0122 | 9/4/2017 | Attachment to email at Bates 0107-0108; Word document titled "options paper OLP 8_23.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0126-0139 | 9/11/2017 | Attachment to email at Bates 0125; Word document titled "Media Policy White Paper_9.4.2017_ODAG.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0141-0155 | 9/12/2017 | Attachment to email at Bates 0140; Word document titled | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |

12

| | | "Media Policy White Paper_9.4.2017_ODAG.docx" | | |
|---|---|---|---|---|
| 0161-0175 | 9/14/2017 | Attachment to email at Bates 0156-0160; Word document titled "Media Policy White Paper_9.4.2017_ODAG.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0177-0190 | 9/15/2017 | Attachment to email at Bates 0176; Word document titled "Media Policy White Paper_9.15.17 pm.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0193-0206 | 9/15/2017 | Attachment to email at Bates 0191-0192; Word document titled "Media Policy White Paper_9.15.2017 Final.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0211-0224 | 9/21/2017 | Attachment to email at Bates 0210; Document titled "Options for Changes to the DOJ Policy on Obtaining Info. from Media.pdf" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0226-0239 | 9/22/2017 | Attachment to email at Bates 0225; Word document titled "Media Policy White Paper_9.15.17 Final (002).docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0241-0254 | 9/22/2017 | Attachment to email at Bates 0240; Word document titled "Media Policy White Paper_9.22.17.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0256-0269 | 9/22/2017 | Attachment to email at Bates 0255; Word document titled "Media Policy White Paper_9.22.17.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0271-0285 | 9/25/2017 | Attachment to email at Bates 0270; Word document titled | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |

13

| | | "Media Policy White Paper_9.22.17 (004).docx" | | |
|---|---|---|---|---|
| 0287-0301 | 9/26/2017 | Attachment to email at Bates 0286; Word document titled "Media Policy White Paper_9.26.17.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0303-0317 | 9/27/2017 | Attachment to email at Bates 0302; Word document titled "Media Policy White Paper_9.26.17(005).docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0319-0333 | 9/27/2017 | Attachment to email at Bates 0318; Word document titled "Media Policy White Paper_9.26.17(005) OLP.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0335-0348 | 9/28/2017 | Attachment to email at Bates 0334; Word document titled "Media Policy White Paper_9.26.17(006) OLP.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy.* | 5 (DPP) - In Full |
| 0351-0364 | 9/28/2017 | Attachment to email at Bates 0349-0350; Word document titled "Media Policy White Paper_9.28.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |
| 0381-0400 | 9/29/2017 | Attachment to email at Bates 0380; Document titled "20170928 DAG Media Subpoena Policy Briefing_v.6.PPTX" | *Draft Deliberative Briefing Slides Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full[3] |
| 0428-0429 | 11/8/2017 | Attachment to email at Bates 0427; Word document titled | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |

[3] In the course of preparing the <u>Vaughn</u> Index for this matter, OIP advised the FBI that this draft version of the briefing slides, which was released in part at Bates 0403-0422 in their final form, was withheld in full pursuant to Exemption 5 without consultation to FBI. To the extent that this draft document contains information withheld by FBI in the version that was released in part at Bates 0403-0422, such information would similarly be concurrently withheld in this draft for the same reasons set forth in FBI's declaration.

| | | "Draft 50.10 Thoughts for Tomorrow's Meeting.docx" | | |
|---|---|---|---|---|
| 0431 | 11/16/2017 | Attachment to email at Bates 0430; Word document titled "[(b)(5)]_Draft_Markup.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0433 | 11/22/2017 | Attachment to email at Bates 0432; Word document titled "[(b)(5)]_Draft_Markup.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0435 | 11/22/2017 | Attachment to email at Bates 0434; Word document titled "[(b)(5)]_Draft_Markup_ Version_2.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0437 | 11/30/2017 | Attachment to email at Bates 0436; Word document titled "Tiers_Possible_50.10_ Options.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0439-440 | 12/1/2017 | Attachment to email at Bates 0438; Word document titled "Tiers_Possible_50.10_ Options.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0442-0443 | 12/1/2017 | Two attachment to email at Bates 0441; Word documents titled "50.10_Proposed_Tiers.docx and "[(b)(5)]_Draft_Markup_ Version_2 (002).docx," respectively | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0445 | 12/7/2017 | Attachment to email at Bates 0444; Word document titled "50.10_Proposed_Tiers.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0448 | 12/7/2017 | Attachment to email at Bates 0447; Word document titled "[(b)(5)]_Draft_Markup_ Version_3 (002).docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0452-0471 | 1/12/2018 | Attachment to email at Bates 0449-0451; Word document | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |

| | | titled "50.10 OEO Redline OEO 1-12-18 (003).docx" | | |
|---|---|---|---|---|
| 0474-0493 | 1/24/2018 | Attachment to email at Bates 0472-0473; Word document titled "50.10 Draft Redline 1.19.18.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0495 | 1/26/2018 | Attachment to email at Bates 0494; Word document titled "50.10_Proposed_Tiers.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
| 0497-0500 | 2/9/2018 | Attachment to email at Bates 0496; Word document titled "Media Policy – Plan.Executive Summary.2018.02.09 final.docx" | *Draft Deliberative Engagement Strategy*<br><br>*Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full<br><br>5 (DPP) – In Part |
| 0502-0505 | 2/9/2018 | Attachment to email at Bates 0501; Word document titled "Media Policy – Plan.Executive Summary.2018.02.09.docx" | *Draft Deliberative Engagement Strategy*<br><br>*Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full<br><br>5 (DPP) – In Part |
| 0508-0511 | 2/13/2018 | Attachment to email at Bates 0506-0507; Word document titled "Media Policy – Plan.Executive Summary.2018.02.09.docx" | *Draft Deliberative Engagement Strategy*<br><br>*Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full<br><br>5 (DPP) – In Part |
| 0513-0516 | 2/13/2018 | Attachment to email at Bates 0512; Word document titled "Media Policy – Plan.Executive Summary.2018.02.09.docx" | *Draft Deliberative Engagement Strategy*<br><br>*Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full<br><br>5 (DPP) – In Part |
| 0520 | 2/14/2018 | Attachment to email at Bates 0517-0519; Word document titled "Questions for ODAG.DOCX" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |

| 0530-0549 | 11/30/2018 | Attachment to email at Bates 0529; Word document titled "50.10 Draft Redline 11.30.18.docx" | *Proposed Options Relating to Changing News Media Policy* | 5 (DPP) - In Full |
|---|---|---|---|---|
| 0564-0578 | 1/30/2020 | Attachment to email at Bates 0563; Word document titled "Media Policy White Paper_9.14.17.docx" | *Draft Deliberative Memorandum Containing Proposed Options for Changing News Media Policy* | 5 (DPP) - In Full |