# Exhibit 2
Declaration of Michael G. Seidel

Defendants' Motion for Summary Judgment

*Reporters Committee for Freedom of the Press v. OAG*,
No. 21-cv-1294 (D.D.C.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REPORTERS COMMITTEE FOR       )
FREEDOM OF THE PRESS,         )
                              )
            Plaintiff,        )
                              )
v.                            )        Civil Action No.:  1:21-cv-01294-DLF
                              )
OFFICE OF THE DEPUTY ATTORNEY )
GENERAL, *ET AL.*             )
                              )
            Defendants.       )
_____)

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)    I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act (FOIPA) litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA) from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to September 2006 culminating in my assignment as Chief, General

1

Litigation Branch, U.S. Army Litigation Division where I oversaw FOIPA litigation for the U.S. Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 240 FBI employees, supported by approximately 90 contractors, who staff a total of ten (10) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information pursuant to the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of an incoming FOIA consultation from the U.S. Department of Justice, (DOJ), Office of Information Policy (OIP), forwarded to the FBI in response to two FOIA requests from Plaintiff to that agency. Plaintiff's first request, directed to the Office of the Attorney General and dated January 29, 2021, sought:

a.   All versions of DOJ's Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media, that have been in effect since January 21, 2017.

b.   All emails sent or received since January 21, 2017 that include proposed or enacted modifications to the Justice Department's Policy regarding obtaining information

2

from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the new media.

c.  All emails and/or email attachments sent to, from, copying, or blind copying former Acting Attorney General Matthew Whitaker, between November 7, 2018 and March 5, 2019, that include the phrase "policy regarding obtaining information from, or records of, members of the news media".

d.  All emails an/or email attachments sent to, from, copying, or blind copying Attorney General William Barr, since February 14, 2019, that include the phrase "policy regarding obtaining information from, or records of, members of the news media".

Plaintiff's second request, directed to the Office of the Deputy Attorney General and also dated

January 29, 2021, sought:

a.  All versions of DOJ's Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media, that have been in effect since January 21, 2017.

b.  All emails sent or received since January 21, 2017 that include proposed or enacted modifications to the Justice Department's Policy regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the new media.

c.  All emails and/or email attachments sent to, from, copying, or blind copying former Deputy Attorney General Rod Rosenstein, between April 25, 2017 and May 12, 2019, that include the phrase "policy regarding obtaining information from, or records of, members of the news media."

(4)     The FBI submits this declaration in support of Defendants' Motion for Summary Judgment and, in accordance with *Vaughn v. Rosen*, 424 F.2d 820 (D.C. Cir. 1973), provides the FBI's justification for withholding information in part or in full pursuant to FOIA Exemptions 6, 7(C), and 7(E), 5 U.S.C. § 552(b)(6), (b)(7)(C), and (b)(7)(E).

(5)     By e-mail dated January 31, 2022, OIP consulted with the FBI concerning 15 documents (e-mail communications and attachments thereto), consisting of 53 pages. Each document contained in the lower left-hand corner a Document ID and in the lower right-hand

3

corner a number corresponding with OIP's production to Plaintiff.[1]

(6)    By letter dated March 23, 2022, the FBI responded to OIP recommending that portions of the consulted information be withheld in part or in full pursuant to FOIA Exemptions (b)(6), (b)(7)(C) and (b)(7)(E).[2]

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(7)    The FBI processed the consulted records provided by OIP to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information. The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff. Further description of information withheld, beyond what is provided in this declaration, could identify the actual exempt information protected by the FBI. The FBI is including a *Vaughn* Index (Exhibit A) to explain wherein, within the consulted records, it recommended information be withheld in in part or in full pursuant to FOIA Exemptions (b)(6), (b)(7)(C) and (b)(7)(E).

(8)    Each instance of information withheld pursuant to a FOIA Exemption is

---

[1] The Document IDs and production numbers for each record being discussed herein are as follows:  0.7.7168.5995 and 0003; 0.7.7168.7237 and 0005 ; 0.7.7168.6003 and 0006; 0.7.7168.6006 and 0017; 0.7.7168.6014 and 0029; 0.7.7168.6015 and 0041-0042; 0.7.7168.6016 and 0054; 0.7.7168.7244 and 0067; 0.7.7168.6018 and 0079; 0.7.7168.6174 and 0365; 0.7.7168.6174-000001 and 0366-0379; 0.7.7168.6186-000001 and 0403-0422; 0.7.7168.7398 and 0572-0574; 0.7.7168.7401 and 0576; and 0.7.7168.7401-000001 and 0577-0580.

[2] In the course of preparing the *Vaughn* and declaration for this matter, FBI was advised that a draft version of the information released in part 0403-0422 was withheld in full pursuant to Exemption 5 at Bates 0381-0400 without consultation to FBI, and that to the extent that the document contains information withheld by the FBI in the version that was released in part at Bates 0403-0422, that such information would similarly be concurrently withheld in the draft for the same reasons set forth in FBI's declaration (namely a (b)(6)-1; and (b)(7)(C)-1 redaction on Bates 0383).

4

accompanied by a coded designation that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to FOIA Exemption 7(C) protecting against unwarranted invasions of personal privacy. The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific subcategory, such as "Name and Other Identifying Information of an FBI Special Agent."

(9)    Listed below are the categories used to explain the FOIA Exemptions the FBI asserted to withhold information:

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES | |
| --- | --- |
| CODED CATEGORIES | INFORMATION WITHHELD |
| Exemptions 6 & 7(C) | Unwarranted/Clearly Unwarranted Invasion of Personal Privacy |
| (b)(6)-1 and (b)(7)(C)-1 | Name and Other Identifying Information of an FBI Special Agent |
| Exemption 7(E) | Law Enforcement Techniques and Procedures |
| (b)(7)(E)-1 | FBI Internal E-mail Address |

**EXEMPTION 7 THRESHOLD**

(10)    Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533 and 534, Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and to further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein

5

were compiled in furtherance of the FBI's law enforcement, national security and intelligence missions.

(11)    The pertinent records were compiled and/or created in furtherance of the FBI's law enforcement, national security, and intelligence missions. To accomplish these missions, the FBI must develop policy and training to ensure efficient, effective, and lawful use of specific law enforcement and intelligence gathering techniques, procedures, and/or investigative methods. Specifically, the records at issue concern changing the U.S. Department of Justice's policy on utilizing certain law enforcement tools, including subpoenas, to obtain information from members of the media, including in the context of highly sensitive investigations of unauthorized disclosures of national defense information or classified information.

### FOIA EXEMPTIONS (b)(6) AND (b)(7)(C)
### UNWARRANTED INVASION OF PERSONAL PRIVACY

(12)    Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

(13)    Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes…[when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[3]

(14)    When withholding information pursuant to these two exemptions, the FBI is

---

[3] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions are sufficiently similar to warrant a consolidated

6

required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual, their name, or other identifying information, would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure. Utilizing this same analysis, it is also the FBI's policy not to assert privacy redactions for the names of high-ranking FBI officials in policy-making positions, as well as individuals in public positions, when acting in their official capacity. This policy is applied to the individual's position at the time of the document.

### (b)(6)-1 AND (b)(7)(C)-1: NAME AND OTHER IDENTIFYING INFORMATION OF AN FBI SPECIAL AGENT

(15)    Within FOIA Exemptions category (b)(6)-1 and (b)(7)(C)-1, the FBI protected the name and other identifying information (*e.g.* official FBI internal e-mail address) of a non-SES level FBI Special Agent (SA) GS-15 and below.[4] This FBI SA was, at the time of the records, an

---

discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

[4] The FBI's standard practice is to release the names of Senior Executive Service (SES) employees because their positions are public facing in nature and therefore, they have a

7

FBI Office of General Counsel, Counter Intelligence Unit Chief who in addition to his or her normal duties, was part of a working group responsible for reviewing and recommending to the Deputy Attorney General proposed changes to the U.S. Department of Justice's policy on obtaining information from members of the media to facilitate investigations and prosecutions of unauthorized disclosures of national defense information or classified information. Assignments of SAs to any particular investigation and working group are not by choice. Publicity adverse or otherwise, arising from a particular investigation or use of specific FBI investigative techniques, may seriously prejudice their effectiveness in conducting other investigations or performing their day-to-day work. The privacy consideration is also applied to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of investigations and investigative activities, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal and national security violation cases. The publicity associated with the release of an SA's identity in connection with a particular investigation/investigative activities or involvement in particular policy changes, could trigger hostility toward a particular SA. During the course of an investigation, an SA may engage with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. Persons targeted by such investigations/investigative activities, and/or those sympathetic to those targeted, could seek to inflict violence on an SA based on their participation in an investigation/in the deployment of certain investigative techniques or in their involvement in assessing and recommending changes to specific policies that would impact a specific group of individuals. This is because an

---

diminished privacy interest in records pertaining to the performance of official duties. The FBI generally draws the line at the non-SES level (GS-15 level employees and below) and protects those names and identifying information pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).

8

individual targeted by such law enforcement actions may carry a grudge against those involved with the investigation or the implementation of new policies, which may last for years. These individuals may seek revenge on SAs and other federal employees involved in a particular investigation/investigative activities or policy decisions. There is no public interest served by disclosing a SA's identity because his or her identity would not, by itself, significantly increase the public's understanding of the FBI's operations and activities. Thus, disclosure of this information would constitute a clearly unwarranted invasion of his or her personal privacy. The FBI properly withheld the name and other identifying information of an FBI SA pursuant to Exemptions 6 and 7(C).

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(16)    Exemption 7(E) protects "records of information compiled for law enforcement purposes" that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. 5 U.S.C. § 552(b)(7)(E).

(17)    Within the records responsive to Plaintiff's request, the FBI applied Exemption (b)(7)(E) to non-public investigative techniques and procedures utilized by the FBI to carry out its law enforcement function, and to non-public details about techniques and procedures that are otherwise known to the public.

### (b)(7)(E)-1: FBI INTERNAL E-MAIL ADDRESS

(18)    Within FOIA Exemption category (b)(7)(E)-1, the FBI withheld an official FBI internal e-mail address. The FBI's internal email system and the email addresses thereof are law enforcement techniques and/or procedures that the FBI uses to securely communicate regarding

9

its law enforcement and national security operations. Releasing the email addresses in this system would provide criminals with specific targets for cyber-attacks or other attacks on FBI secure communications. Considering the current cyber-security environment where hacking attempts on government systems are prevalent, it is likely that the release of this information could provide hackers with avenues to exploit the FBI's information technology system. Criminals could use this information to gain unauthorized access to FBI systems, view and manipulate sensitive investigative data, interfere with the FBI's non-public intranet protocol, and hinder the FBI's ability to enforce the law by disrupting the FBI's internal communications. Releasing this information poses substantial risks to FBI information systems, could potentially decrease the FBI's effectiveness, and could enable criminals to circumvent the law. Accordingly, the FBI properly asserted Exemption 7(E) to withhold this information.

## CONCLUSION

(19)    The FBI processed the referred records under the access provisions of the FOIA; and provided its response to OIP. Portions of information were properly withheld in the records pursuant to FOIA Exemptions 6, 7(C), and 7(E), 5 U.S.C. §552(b)(6), (b)(7)(C), and (b)(7)(E). The FBI carefully examined the responsive records and determined that the information withheld, if disclosed, would cause a clearly unwarranted invasion of personal privacy, and/or could reasonably be expected to constitute an unwarranted invasion of personal privacy; and would disclose techniques and procedures for law enforcement investigations. After extensive review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

10

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this 4th day of November 2022.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REPORTERS COMMITTEE FOR )
FREEDOM OF THE PRESS, )
 )
        Plaintiff, )
 )
v. )    Civil Action No.:  1:21-cv-01294-DLF
 )
OFFICE OF THE DEPUTY ATTORNEY )
GENERAL, *ET AL.* )
 )
        Defendants. )
 )

# EXHIBIT A

***REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS v. OFFICE OF THE ATTORNEY GENERAL, ET AL.***
**1:21-cv-01294-DLF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**CONSULTED RECORDS *VAUGHN* INDEX**

The information below relates to records the U.S. Department of Justice, Office of Information Policy (DOJ/OIP) provided to the FBI for consultation wherein the withholding of all or portions of information contained therein is being challenged by Plaintiff.

| NUMBER OF DOCUMENTS BEING ADDRESSED HEREIN | OIP DOCUMENT ID | OIP's Production No. | EXEMPTIONS ASSERTED ON BEHALF OF THE FBI TO WITHHOLD INFORMATION IN THE DOJ/OIP CONSULTED RECORDS | RELEASED IN PART ("RIP"), RELEASED IN FULL ("RIF") OR WITHHELD IN FULL ("WIF") BY DOJ/OIP | DATES OF DOJ/OIP RELEASES WHEREIN RECORDS WERE ADDRESSED |
|---|---|---|---|---|---|
| 1 | 0.7.7168.5995 | 0003 | (b)(6)-1; and (b)(7)(C)-1; | RIP | June 2, 2022 |
| 2 | 0.7.7168.7237 | 0005 | (b)(6)-1; and (b)(7)(C)-1; | RIP | June 2, 2022 |
| 3 | 0.7.7168.6003 | 0006 | (b)(6)-1; and (b)(7)(C)-1; | RIP | June 2, 2022 |
| 4 | 0.7.7168.6006 | 0017 | (b)(6)-1; (b)(7)(C)-1; and (b)(7)(E)-1; | RIP | June 2, 2022 |
| 5 | 0.7.7168.6014 | 0029 | (b)(6)-1; (b)(7)(C)-1; and (b)(7)(E)-1; | RIP | June 2, 2022 |
| 6 | 0.7.7168.6015 | 0041 | None | RIP | June 2, 2022 |
| | | 0042 | (b)(6)-1; (b)(7)(C)-1; and (b)(7)(E)-1; | | |
| 7 | 0.7.7168.6016 | 0054 | (b)(6)-1; (b)(7)(C)-1; and (b)(7)(E)-1; | RIP | June 2, 2022 |
| 8 | 0.7.7168.7244 | 0067 | (b)(6)-1; (b)(7)(C)-1; and (b)(7)(E)-1; | RIP | June 2, 2022 |
| 9 | 0.7.7168.6018 | 0079 | (b)(6)-1; (b)(7)(C)-1; and (b)(7)(E)-1; | RIP | June 2, 2022 |
| 10 | 0.7.7168.6174 | 0365 | None | RIP | June 2, 2022 |
| 11 | 0.7.7168.6174-000001 | 0366 | None | RIP | June 2, 2022 |
| | | 0367 | None | | |
| | | 0368 | None | | |
| | | 0369 | None | | |
| | | 0370 | None | | |
| | | 0371 | None | | |
| | | 0372 | None | | |
| | | 0373 | None | | |
| | | 0374 | None | RIP | June 2, 2022 |
| | | 0375 | None | | |
| | | 0376 | None | | |
| | | 0377 | None | | |
| | | 0378 | None | | |
| | | 0379 | None | | |

| | | | | | |
|---|---|---|---|---|---|
| 12 [1] | 0.7.7168.6186-000001 | 0403 | None | RIP | June 2, 2022 |
| | | 0404 | None | | |
| | | 0405 | (b)(6)-1; and (b)(7)(C)-1; | | |
| | | 0406 | None | | |
| | | 0407 | None | | |
| | | 0408 | None | | |
| | | 0409 | None | | |
| | | 0410 | None | | |
| | | 0411 | None | | |
| | | 0412 | None | | |
| | | 0413 | None | | |
| | | 0414 | None | | |
| | | 0415 | None | | |
| | | 0416 | None | | |
| | | 0417 | None | | |
| | | 0418 | None | | |
| | | 0419 | None | | |
| | | 0420 | None | | |
| | | 0421 | None | | |
| | | 0422 | None | | |
| 13 | 0.7.7168.7398 | 0517 | None | RIP | June 2, 2022 |
| | | 0518 | (b)(6)-1; and (b)(7)(C)-1; | | |
| | | 0519 | None | | |
| 14 | 0.7.7168.7401 | 0521 | None | RIP | June 2, 2022 |
| 15 | 0.7.7168.7401-000001 | 0522 | None | RIP | June 2, 2022 |
| | | 0523 | None | | |
| | | 0524 | None | | |
| | | 0525 | None | | |

[1] In the course of preparing the *Vaughn* and declaration for this matter, FBI was advised that a draft version of the information released in part 0403-0422 was withheld in full pursuant to Exemption 5 at Bates 0381-0400 without consultation to FBI, and that to the extent that the document contains information withheld by the FBI in the version that was released in part at Bates 0403-0422, that such information would similarly be concurrently withheld in the draft for the same reasons set forth in FBI's declaration (namely a (b)(6)-1; and (b)(7)(C)-1 redaction on Bates 0383).